# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC,<br><br> Plaintiffs,<br><br> v.<br><br>TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston,<br><br> Defendants. | Civil Action No. 1:25-cv-00088-MRD-PAS<br><br>DECLARATION OF KELLEY M. SALVATORE |

## DECLARATION OF KELLEY M. SALVATORE

KELLEY M. SALVATORE declares as follows:

1. I am an attorney licensed to practice law in this Court, and all the courts of the State of Rhode Island.

2. I have personal knowledge of the matters contained herein, unless otherwise indicated, and am competent to testify thereto.

3. I am one of the lawyers in this case for the Plaintiffs, SCLS Realty, LLC, and Sixty Three Johnson, LLC.

4. My clients own the fee simple interest in 31 acres of real property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property").

5. I was retained to assist my clients in developing their property, the Santoro Property, with multiple affordable housing units.

6. Currently, the Town of Johnston has less than 8% affordable housing. The State of Rhode Island recently passed a Low and Moderate Income Housing Statute, which, in part, encourages all of Rhode Island's localities to reach a 10% minimum affordable housing threshold.

7. In April 2023, my clients and preceding legal counsel, met with Town officials, including Mayor Joseph Polisena Jr. ("Polisena") to discuss the potential affordable housing development.

8. During the meeting, Polisena vocally opposed my clients' development.

9. Nevertheless, I met with the Town Planner, Thomas Deller and his staff to discuss a 216-unit, 100% affordable housing proposal. Mr. Deller agreed we should prepare a proposal for a pre-application meeting.

10. On October 25, 2024, my clients and I submitted a description of their affordable housing project, including a conceptual site plan, density analysis, and request for a pre-application conference to the Town's Planning Department.

11. The proposal was for a 254-unit affordable housing development across five different buildings. A pre-application meeting was scheduled for December 3, 2024.

12. At the meeting, a letter written by Polisena addressed "To Whom It May Concern" was read aloud by the counsel for the Planning Board and formally made part of the record. The letter disparaged the Santoro Property project as "destructive."

13. Polisena's letter threatened to "fight back" against the Santoro Property project but also said that if my clients abandoned their project and agreed instead to build expensive single-family homes, the Town would "roll out the red carpet[.]"

14. At that same meeting, other planning board members vocally came out against the project.

15. On January 27, 2025, I was contacted by several reporters who told me that Polisena was posting on social media that he intended to take the Santoro Property by eminent domain for a new municipal campus.

16. Prior to his announcement, I had never heard of the Town of Johnston needing or preparing to develop a new municipal campus. I also never heard of the Town looking at any property other than the Santoro Property to develop a municipal complex. I have found no active budget for the Town to fund such a project – other than the money the Town has threatened to take from the funds allocated for redeveloping the local high school. I also was unable to find any

valid legal authority for the Town to take the Santoro Family's property since the Town has never established a Municipal Public Buildings Authority.

17. At the town council meeting, on January 28, 2025, the Town Council adopted Resolution 2025-10, which formally stated the Town of Johnston should proceed with eminent domain to take the Santoro Property.

18. The Town then, a month later, passed Resolutions 2025-17 and 2025-18, which created a procedure for taking the Santoro Property and supposedly empowered the Town to take the property.

19. Despite these resolutions, I have found no Rhode Island state statute permitting the Town to utilize eminent domain in this manner. Instead, the Resolutions unconstitutionally (and purportedly) permit the Town to take ownership of the Santoro Property without any pre-transfer notice and permits the Town to record itself as the owner of the Santoro Property by merely passing a resolution, description of the land, and a plat in the Town's Land Record Office. The Resolutions also set forth no procedures for providing notice, and opportunity to respond, appear at a hearing, contest a taking, or object to the seizure or "just" compensation estimate.

20. After the Town's adoption of Resolutions 2025-10, 2025-17, and 2015-18, I, along with co-counsel, filed suit, on behalf of our clients, against the Town for an unconstitutional taking in the federal District Court of Rhode Island. We asserted claims for violations of the Fifth Amendment's Public Use Clause, the Fourteenth Amendment's Due Process Clause, the federal Civil Rights Act of

1871 (42 U.S.C. § 1983), the Rhode Island Constitution's Public Use Clause, and a claim that the Town has not been delegated the authority under Rhode Island law to use eminent domain to forcibly acquire the Santoro Property and its actions are *ultra vires*.

21. Two days later, unbeknownst to myself, my co-counsel, or my clients, the Town, on March 12, 2025, filed in its land evidence record office a copy of Resolution 2025-17, a description of the land, a plat, and a statement that it had gone ahead and taken the land.

22. Co-counsel Robert H. Thomas took a screenshot of the Town's Land Evidence Record on March 14, 2025, and informed me of the Town's actions.

23. Neither the Town nor its attorneys provided notice to me that they had altered the public record and that in their view, my clients no longer owned the Santoro Property.

24. Instead, on March 12, 2025, the Town filed its own condemnation action in state court. The petition requested permission to deposit $775,000 into the court registry. A sum of money the Town considered adequate just compensation for the Santoro Property.

25. In the petition, the Town, for the first time, also said it was taking the Santoro Property for economic development under the Rhode Island Home & Business Protection Act of 2008.

26. The Town has failed to comply with any of the Rhode Island Home & Business Protection Act's statutory requirements. Namely, the Town has never provided myself or my clients with advanced notice of their acquisition, provided my clients the opportunity to sell the

property, or agreed to compensate my clients at the 150% fair market value of the property as required by law.

27. The Town also never provided me with notice of its filing of the Deposit Petition or notice of the hearing it requested on its petition.

28. Instead, the Town had an ex parte hearing, without providing any notice, on whether it could deposit the $775,000 into the court's registry on March 14, 2025.

29. Neither the Town's Deposit Petition nor Motion to Deposit Money referenced transferring the Santoro Property into the Town's name. The sole request was to allow the Town to deposit the $775,000 into the court's registry.

30. I learned late Friday afternoon that the state court had granted the Town's Deposit Petition, ordering the Town could make its deposit.

31. The court did not order the condemnation of the Santoro Property or allow the Town to take possession or title.

32. As before, I received no notice of any of these actions until late Friday afternoon.

33. Later that evening, I received a letter via email from the Town's attorney, William J. Conley, informing me that the Town had recorded itself as the new owner of the Santoro Property, that the Town had filed the Deposit Petition, that the state court had granted the Town's Petition, and that the Town now viewed itself, not the Santoro Family, as the true owner of the Santoro Property.

34. The letter also informed me that the Santoro Family had until March 21, 2025, to remove all of their belongings from the property or they would face trespass notices.

35. I do not believe the Town has effectively acquired my client's property. Instead, my client's affordable housing development proposal remains valid and the Santoro Property remains in their ownership absent any effective court order transferring ownership.

36. In preparation for filing this Temporary Restraining Order to stop the Town from unconstitutionally taking my client's property, I emailed, called and texted counsel for the Town, in an effort to provide actual notice, so that the Defendants might respond.

I declare under penalty of perjury under the laws of the State of Rhode Island that the foregoing is true and correct.

Executed this 17th day of March, 2025.

_____
KELLEY M. SALVATORE