# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-00088-MRD-PAS |
| TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston, | |
| Defendants. | |

## TEMPORARY RESTRAINING ORDER

This matter came before the Court for hearing by Zoom at 3:30PM on March 28, 2025. Appearing for Plaintiffs SCLS REALITY, LLC and SIXTY THREE JOHNSTON, LLC (jointly, "Santoro Family"), were Kathryn Valois, Stacy Thomsen, Kelly Salvatore, and Austin Waisanen, and appearing for Defendants TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their

1

official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston, were Sarah O'Toole and Mario Martone.

Having considered Plaintiffs' Motion for Temporary Restraining Order and the exhibits submitted therewith and the arguments of counsel, the Court concludes, pursuant to Fed. R. Civ. P. 65(b) and LR Cv 9, that Plaintiffs' Motion for Temporary Restraining Order is GRANTED as necessary to protect the status quo, and this Court accordingly issues this Temporary Restraining Order ("TRO").

The legal standard for a TRO mirrors that of a preliminary injunction, and requires a court to weigh these four factors:

  1. likelihood of success on the merits;

  2. potential for irreparable injury;

  3. balance of the relevant equities; and

  4. effect on the public interest if the Court grants or denies the TRO.

*Planned Parenthood League v. Belotti*, 641 F.2d 1006, 1009 (1st Cir. 1981) *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001) (same).

Pursuant to Fed. R. Civ. P. 65(d), the Court hereby states the reasons why this TRO is being issued in specific terms.

# I. Success on the Merits

## A. First Claim for Relief (Public Use Clause)

The Plaintiffs are likely to suceed on the merits of their first claim for relief. The Town's assertion that the taking of Plaintiffs' private property, identified as 178

and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property"), for a new municipal campus likely violates the Public Use Clause because the Town's real reason is to stop affordable housing. The Fifth Amendment to the United States Constitution, which limits the power of States and their instrumentalities such as the Town under the Fourteenth Amendment, prohibits the taking of private property unless the taking is "for public use." U.S. Const. amend. V ("... nor shall private property be taken for public use, without just compensation") ("Public Use Clause"). A taking of property must be "for public use"—or at least for "a public purpose"—and thwarting the rightful owners' lawful use of their private property is not a public use or purpose.

Even where the Town's stated use, purpose, and necessity supporting an exercise of eminent domain may appear to be a public use or purpose, courts may inquire into the Town's actual use, purpose, necessity, and motives. *Cnty. of Hawaii v. C & J Coupe Fam. Ltd. P'ship*, 119 Haw. 352, 375, 198 P.3d 615, 638 (2008) ("[T]he *Kelo* majority opinion, consistent with our prior decisions, allows courts to look behind an eminent domain plaintiff's asserted public purpose under certain circumstances."). Here, the Town's actions and its purported taking of the Santoro Property is an extremely unusual and aberrant exercise of government power that raises overwhelming evidence that a non-public purpose is afoot; this Court must view it with a skeptical eye. *See, e.g., 99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F.Supp.2d 1123 (C.D. Cal. 2001), *cited in Kelo v. City of New London*, 545

U.S. 469, 487 n.17 (2005). The taking here by the Town appears to be unusual and aberrant for the following reasons:

1.     The history and tradition of eminent domain is that taking private property is the *last* step in the process not the first. Here, the Town did not first determine it needed and could afford a new municipal campus, then look for and study sites that might be suitable, determine whether the owners might voluntarily sell their land, and only if the owner refused then exercise the drastic power of eminent domain to forcibly seize the property.

2.     The Town is doing this in reverse—determining first to take the Santoro Property to block an affordable housing development and only then trying to justify its reasons for doing so. The Town's stated use and purposes are likely *post-hoc* and pretextual. *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771, 776-77, 506 N.E.2d 1152, 1157 (1987) (Where the town was "concerned only with blocking the plaintiffs' development," pretext claims are "not limited to action taken solely to benefit private interests."). The Town's reversal of the usual eminent domain process leads to a very plausible inference that its stated reasons for taking the Santoro Property are false. *Middletown Twp. v. Lands of Stone*, 595 Pa. 607, 617, 939 A.2d 331, 338 (2007) ("the government is not free to give mere lip service to its authorized purpose or to act precipitously and offer retroactive justification.").

3.     The mayor's public statements and actions are inconsistent with the Town's claimed use or purpose. Some members of the public expressed opposition to the Santoro Family's proposed affordable housing. At the December 3, 2024, board

meeting, other planning board members came out against the project. *see also Rhode Island planning board member faces backlash over housing comment*" (Dec. 4, 2024), https://tinyurl.com/mwzayfb5. One member, Robert Pingitore, opined the Santoro Family's project would be "the next Chad Brown" of Johnston, derogatorily referencing a Providence housing development known as home to many minority residents. *Id.* The Town's exercise of eminent domain likely violates the Public Use Clause because it is in bad faith, and is based on spite, animus, and ill will. *See Earth Mgmt., Inc. v. Heard Cnty.*, 248 Ga. 442, 446, 283 S.E.2d 455, 459 (1981) ("[A] condemning authority may not act in bad faith in the exercise of the right of eminent domain.").

4.    There appears to be a lack of a nexus between the property interests sought and the Town's claimed purpose. The Town's stated use, purpose, and necessity for the taking are atypical of long-range policy decisions for public projects.

5.    The Town likely engaged in bad faith efforts to compel or coerce changes in, or abandonment of, the Santoro Family's affordable housing plans before deciding to use eminent domain. *New England Ests., LLC v. Town of Branford*, 294 Conn. 817, 854, 988 A.2d 229, 252 (2010) ("a government actor's bad faith exercise of the power of eminent domain is a violation of the takings clause[.]").

6.    The Town's stated use, purpose, and necessity for the taking are likely inconsistent with and violate State law. But even assuming the Town has the authority in the absence of express delegation of eminent domain power from the State to adopt its own procedures and standards (including the ability to obtain ownership of property *ex parte* and without payment of just compensation, the Town adopted the

condemnation process by resolution, which it cannot do. *See* Resolution 2025-17. Under Rhode Island law, resolutions are not "law," but merely "an expression of opinion or mind or policy concerning some particular item of business coming within the legislative body's official cognizance,[ ] ordinarily ministerial in character[.]" *5750 Post Road Med. Offs., LLC v. E. Greenwich Fire Dist.*, 138 A.3d 163, 169 (R.I. 2016) (quoting 5 Eugene McQuillin, *The Law of Municipal Corporations* § 15:2 at 97–105 (Rev. 3d ed. 2013)).

7.    The Town proposes to pay for the proposed municipal campus by shifting monies previously slated for building a new high school, contrary to the Town's already-approved plans to build a new high school. Prior to its eminent domain announcement, the Town never mentioned needing a new municipal complex. Instead, the Town's publicly stated high priority was building a new high school, which was approved by the Rhode Island Department of Education. *See* https://tinyurl.com/y2dsu6cs (May 29, 2024). Only when the Santoro Family formally announced plans for developing that property with affordable housing did the Town through Mayor Polisena vow to "use all the power of government," including the power of eminent domain, to stop the development and abruptly disregard the planned high school construction to redirect the money to stopping the Santoro project.

For all these reasons, Plaintiffs are likely to prevail on their Public Use claim to invalidate the Town's bad faith exercise of eminent domain.

**B.    Second Claim for Relief (Due Process Clause)**

Plaintiffs are likely to succeed on their second claim for relief. The Fourteenth Amendment to the U.S. Constitution, which limits the power of States and their instrumentalities such as the Town, provides, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV ("Due Process").

The Santoro Family is likely to succeed on its procedural due process claim because on its face, the Town's made-up eminent domain procedures do not come close to the most basic requirements of due process—the right to notice designed to actually inform someone that their property is about to be seized by eminent domain, and the opportunity to be heard prior to having their property taken. *See Jones v. Flowers*, 547 U.S. 220, 239 (2006) (government must make extra efforts to inform property owners before it takes property).

Review of the procedures adopted by the Town reveals the glaring absence of any of the due process procedures which condemnors follow when taking property for a true public use, purpose, or necessity. The unusual no-notice, *ex parte* process the Town adopted in Resolution 2025-17 is *ad hoc* (it was adopted only after the Santoro Family moved forward with its affordable housing plans, and it purports only to govern the Santoro Property taking). *See* Town of Johnston, Resolution 2025-17. It purports to permit the Town to take *ownership* (not just possession) of the property without any pre-transfer notice whatsoever to the Santoro Family. *Id*. It purports to

allow the Town without notice to seize immediate ownership of the property and record the Town as the owner of the Santoro Property merely by filing a copy of a Town resolution, a description of the land, and a plat in the Town's Land Records office. *Id*. It sets forth no procedures whereby the Santoro Family is afforded notice, an opportunity to respond, to appear at any hearing, to contest the taking or object to the seizure, or the Town's unilateral and unverified "estimate" about the amount of Just Compensation the Town must provide. *Id*. There's *zero* judicial process recognized, with the Rhode Island court's only role to confirm that the Town made a deposit. No response, no motions, no hearing, no trial. And nothing even resembling a *jury* trial to determine the amount of just compensation the Town is obligated to provide. Only after the seizure is complete and *fait accompli* and ownership and title already transferred, does the Resolution say that the Santoros are to be given any sort of notice, apparently too late in the view of the Town, to do anything about it. *Id*. During the hearing on this Motion, counsel for the Defendants could not state the authority by which the Town purported to take the Santoro Property,

*Brody v. Vill. of Port Chester*, 434 F.3d 121, 132 (2d Cir. 2005), illustrates the essential necessity of notice in eminent domain. There New York law required an owner challenging a taking under the Public Use Clause object in a special procedure to do so within 30 days. The Second Circuit held "where, as here, a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane [v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950)] and its progeny. ... '[R]easonable notice'

under these circumstances must include mention of the commencement of the thirty-day challenge period." *Brody*, 434 F.3d at 132. *Brody* also held that the notice must contain a "conspicuous mention" of the challenge period. *Id*. None of those minimal requirements were present in the Town's purported eminent domain process.

The Town's execution of the attempted condemnation makes it even more likely Plaintiffs will prevail on their due process claim: the Town and its attorneys affirmatively and purposefully withheld notifying the Santoros and their lawyers about the seizure of the Santoro property, even though the Town and its lawyers know exactly who owned it, and that they are represented by counsel. This Court may infer that the Town and its attorneys' purposeful withholding of notice was designed to keep the Santoro Family in the dark to prevent them from objecting until Town's the taking was a "done deal," too late in the Town's view for anyone, including this Court, to do anything about it. *Id*. In *Brody*, the property owners at least had actual and constructive notice (which the court held irrelevant because the focus in due process analysis is what efforts the government undertook to provide notice, not what the owner may have known). Here, the Town affirmatively hid the facts from the Santoro Family.

The Town very likely violated the Santoro Family's procedural due process rights because each of the *Mathews* factors cuts in the family's favor. *Lee v. Rhode Island*, 942 F.Supp. 750, 755 (D.R.I. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Roberts v. Maine*, 48 F.3d 1287, 1292 (1st Cir.1995).

First, fundamental property interests are at stake. The Santoro Family has been deprived of private property—land held in fee simple absolute—not merely some government entitlement. Here, the family has been stripped of title and ownership of their land, and the attendant rights to exclude, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) ("The right to exclude is 'one of the most treasured' rights of property ownership."), and to enjoy the profits thereof. *See* 1 Edward Coke, *Institutes*, ch. 1, § 1 (1st Am. ed. 1812) ("[F]or what is the land but the profits thereof[?]"); *Green v. Biddle*, 21 U.S. 1, 74-75 (1823) ("The common law of England was, at that period, as it still is, the law of that State; and we are informed by the highest authority, that a right to land, by that law, includes ... [the right] to receive the issues and profits arising from it."); *Ashness v. Burr's Lane Assocs.*, 640 A.2d 522, 523 (R.I. 1994) (full ownership includes "profits of the land"); *Stackpole v. Healy*, 16 Mass. 33, 34 (1819) (the common law rights of property owners include "every use to which the land may be applied, and all the profits which may be derived from it"). The private property interests put at risk by the Town weigh heavily in the Santoro Family's favor.

Similarly, the risk of erroneous deprivation due to the Town's failure to provide pre-deprivation notice and an opportunity to be heard is great. *Lee*, 942 F. Supp. at 755. Resolution 2025-17 on its face reflects zero pre-deprivation notice to the Santoro Family or any type of pre-deprivation hearing. Town of Johnston, Resolution 2025-17. The way the Town put the Resolution's process into action also shows that it purposely withheld notice and an opportunity to be heard, and created the maximum risk the Santoros would be wrongly deprived of their property.

The final *Mathews* factor also weighs heavily in favor of the Santoro Family: A hearing would have exposed the fact that the Town's attempt to exercise eminent domain doesn't even meet the standards required by the very statute the Town claims authorizes the taking. Predeprivation notice and a hearing would have given the Santoros the opportunity to point out that the Town's state court Deposit Petition asserts that the Rhode Island Home and Business Protection Act of 2008 (R.I. Gen. Laws § 42-64.12), provides authority for the seizure, but the Town has not complied with any of the statute's requirements, such as having a preexisting pre-taking "plan for the proposed development," advance notice, or the "opportunity to sell the property for a negotiated, mutually agreed upon price." Gen. Laws § 42-64.12-7(b), (c). Nor did the Town deposit at least 150% of its estimate of the fair market value of the property being seized, nor has it provided costs including relocation costs. R.I. Gen. Laws § 42-64.12-8(1)-(3). Conversely, any burdens on the Town of providing predeprivation notice and hearing would be minimal. A letter, email, or phone call would have sufficed for notice; and if the Town had time for an *ex parte* hearing, it had time for a noticed hearing with all parties present.

## C. Third Claim for Relief: 42 U.S.C. § 1983

Plaintiffs are also likely to succeed on the merits of their third claim for relief, violation of the Civil Rights Act of 1871, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The Town and the other defendants are "persons" and at all times relevant herein acted under color of state law within the meaning of those terms in 42 U.S.C. § 1983. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) ("municipalities and other bodies of local government are 'persons' within the meaning of this statute").

The Santoro Family possess rights, privileges, or immunities secured by the Constitution and laws of the United States, namely the right, privilege, or immunity to possess and keep their private property and not have it seized or threatened by unconstitutional and illegal assertions of eminent domain, and the right, privilege, or immunity to make legal and reasonable use of their land, free of coercion and the arbitrary and capricious exercise of government power.

The likelihood of success on the merits of the section 1983 is equally strong in favor of the Santoro Family for the reasons set forth above, as the Town's liability for civil rights violations substantially mirror its liability for violating the Constitution, the primary difference being in relief: in addition to an injunction and declaration, under the Civil Rights Act of 1871, the Santoro Family are entitled to damages, and a jury. *See, e.g.*, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("We hold that a § 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment [jury guarantee].").

**D.      Fourth Claim for Relief: R.I. Public Use Clause**

Plaintiffs are likely to succeed on the merits of their fourth claim for relief, for violation of the Rhode Island Constitution's Public Use Clause. Article I of the Rhode Island Constitution ("Declaration of Certain Constitutional Rights and Principles") prohibits the Town from taking private property except "for public uses." "Private property shall not be taken for public uses, without just compensation." R.I. Const. art. I, § 16 ("R.I. Public Use Clause").

Without proper and authorized public use, the Town cannot exercise eminent domain to take private property. *See Rhode Island Econ. Dev. Corp. v. The Parking Co., L.P.*, 892 A.2d 87, 96 (R.I. 2006) ("Although a state's eminent domain authority is not derived from a specific constitutional grant, its exercise is limited by the Constitution. ... These constitutional boundaries are textually imbedded in the Takings Clause, which presupposes governmental power to take private property, but imposes two limitations on the authority: (1) private property may be taken only for public uses; and (2) the taking must be accompanied by just compensation."). A municipal corporation lacks authority to purchase real estate as a tool to compel a taxpayer to abandon or compromise his litigation with the municipality. *Place v. City of Providence*, 12 R.I. 1, 4 (1876) (a legitimate purpose must be the "*sole*" purpose of a city's acquisition of land).

The Town's taking of the Santoro Property likely is arbitrary, capricious, or in bad faith, and is void under the R.I. Public Use Clause. *Id.* at 103 ("This Court is mindful of the extreme grant of power that rests in an agency vested with eminent

domain authority; and if confronted with a showing that the 'agency has exceeded its delegated authority by an arbitrary, capricious or bad faith taking of private property, we unhesitatingly will declare it void.'") (citing *Romeo v. Cranston Redevelopment Agency*, 254 A.2d 426, 443 (R.I. 1969)); *Union Station Assocs. v. Rossi*, 862 A.2d 185, 187 (R.I. 2004) (abuse of governmental power to gain bargaining advantage rejected as "municipal thuggery").

### E.    Fifth Claim for Relief: *Ultra Vires* Taking

Plaintiffs are likely to succeed on their fifth claim for relief, a claim that under Rhode Island law, the Town lacks the authority to take the Santoro Property. The Town may not exercise the power of eminent domain unless that power has been expressly and specifically delegated to it and authorized and enabled by the State of Rhode Island. The Town has no power or authority independent of state law to take private property for any use, purpose, or necessity. State law must expressly delegate that authority to local municipalities or agencies. *Balsamo v. Providence Redevelopment Agency*, 84 R.I. 323, 328 (1956). If a local government exceeds that delegated authority, an unconstitutional taking occurs. *See Tech. Invs. v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I. 1997) ("As a general rule a municipality may not enact an ordinance that is inconsistent with a state statute."); *Cahoon v. Shelton*, 647 F.3d 18, 27 (1st Cir. 2011) (without necessary authorization, city's payments were *ultra vires*).

The limited public uses or purposes for which the Town may exercise the delegated power of eminent domain are not coterminous with the scope and extent of

the State of Rhode Island's eminent domain or police powers and are limited to the uses and purposes which are identified by state law and expressly delegated to the Town by state law. *Buckhout v. City of Newport*, 68 R.I. 280, 27 A.2d 317, 320 (1942) ("In this state we recognize the distinction between the governmental functions of a city or town and its proprietary functions. In the exercise of the first, the city acts merely as the agent of the state"). The Town may only exercise any ability to take property by eminent domain consistent with the laws of Rhode Island, and consistent with other restrictions and limitations established by law, rule, regulation, or ordinance. *See O'Neill v. City of E. Providence*, 480 A.2d 1375, 1379-80 (R.I. 1984) (where municipality's eminent domain procedures differ from state statutes, the state statutes control).

The State's delegation to the Town of the power to own property and make contracts in R.I. Gen. Laws § 45-2-4 is not a general delegation of the power of eminent domain to the Town, nor is it a delegation or authorization to take the Santoro Property. R.I. Gen. Laws § 45-2-4 establishes no procedures or standards by which cities and towns may take private property by eminent domain.

**1.    Town Has Not Complied with the Rhode Island Home and Business Protection Act, the Statute Which it Claims Authorized the Taking**

The Rhode Island Home and Business Protection Act of 2008 ("R.I. Home and Business Protection Act") restricts how political subdivisions of the state such as the Town may exercise any delegated power of eminent domain. The R.I. Home and

Business Protection Act sets out the permissible uses of eminent domain powers, and the restricted use of eminent domain. R.I. Gen. Laws § 42-64.12.

The R.I. Home and Business Protection Act restricts the exercise of eminent domain for economic development by subjecting such exercises to certain statutory limitations. R.I. Gen. Laws § 42-64.12-7. The Town's stated public use, purpose, or necessity supporting the taking of the Santoro Property is not economic development.

The Town claims it is taking the Santoro Property under the authority of the Rhode Island Home and Business Protection Act of 2008 (R.I. Gen. Laws § 42-64.12). To the Court, this appears to have been the Town's reaction to the Santoros' federal court complaint, with the Town shifted its rationale supporting the taking from seizing land for public municipal buildings, to economic development.

But the Town did not comply—and even now has not complied with—the requirements of the statute authorizing a town to take property for economic development. *See* R.I. Gen. Laws § 42-64.12-3 ("The purposes of this chapter are to set forth permissible uses of eminent domain power and to define, limit, and restrict the use of eminent domain for economic development purposes."). The Town has not complied with the major requirements of the Home and Business Protection Act. For example, the statute requires the Town have "a plan for the proposed development, which shall be approved by the governing body of the entity prior to the initiation of eminent domain proceedings[.]" R.I. Gen. Laws § 42-64.12-7(b) (also setting forth the required elements of the pre-taking "plan"). The statute requires "advance notice" to the property owner. R.I. Gen. Laws § 42-64.12-7(c) ("The entity shall give the owner(s)

16

of property that may be acquired by eminent domain advanced notice of the potential taking …"). The statute requires the Town to "provide the [owner the] opportunity to sell the property for a negotiated, mutually agreed upon price." *Id.* Moreover, the statute requires that takings pursuant to R.I. Gen. Laws § 42-64.12 (as the Town asserted it is doing) be compensated at "[a] minimum of one hundred fifty percent (150%) of the fair market value of the real property" plus costs incurred by the property owners, including relocation expenses. *See* R.I. Gen. Laws § 42-64.12-8(1)-(3). The Town's own Resolutions and the Deposit Petition show on their face and in the Town's own words that it has only deposited what it estimates as the fair market value of the Santoro Property, without the 50% increase and with nothing for owner costs or relocation expenses.

### 2. Town May Only Take for Public Municipal Buildings After First Forming a Public Municipal Building Authority, Which it Has Not Done

Plaintiffs are also likely to succeed on this claim because the R.I. Home and Business Protection Act also states that eminent domain may be used to acquire property for "public ownership and use," provided doing so is "consistent with other restrictions and limitations established by law, rule, regulation, or ordinance[.]" R.I. Gen. Laws § 42-64.12-6.

One such restriction and limitation is set forth in Rhode Island General Laws Title 45, Chapter 50 ("Municipal Public Buildings Authorities Law"), which delegates the power to take private property for the use or purpose of construction or operation of judicial, administrative, educational, residential, civic facility, rehabilitative,

medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide effective governmental, health, safety, and welfare services in the municipality, from the State of Rhode Island exclusively to a town's Municipal Public Building Authority. R.I. Gen. Laws § 45-50-13. One purpose of the Municipal Public Buildings Authorities Law is to authorize "alternative financing techniques" for the acquisition of property to build municipal public buildings, to avoid municipalities such as the Town from seizing property by eminent domain without any ability, plan, or budget to satisfy a just compensation judgment or pay for a project. R.I. Gen. Laws § 45-50-3.

The Municipal Public Buildings Authorities Law establishes the exclusive procedures by which the Town, acting through a legally constituted Municipal Public Buildings Authority may acquire land, or any interest in it, including development rights, by the exercise of the power of eminent domain, whenever it is determined by the authority that the acquisition of the land, or interest, is necessary for the construction or the operation of any "project." R.I. Gen. Laws § 45-50-13.

The Municipal Public Buildings Authorities Law defines "project" as:

(11) The word "project" means any public facility or public equipment which the authority is authorized to construct, improve, equip, furnish, maintain, acquire, install, or operate under the provisions of this chapter, to provide for the conduct of the executive, legislative, and judicial functions of government, and its various branches, departments, and agencies. These projects may include, but need not be limited to, judicial, administrative, educational, residential, civic facility, rehabilitative, medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide

18

effective governmental, health, safety, and welfare services in the municipality.

R.I. Gen. Laws § 45-50-9.

The Town's stated public use, purpose, or necessity is for the development of civic facilities, *viz.*, municipal public buildings for uses such as "administrative, educational, residential, civic facility, rehabilitative, medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide effective governmental, health, safety, and welfare services in the municipality[,]" and constitute a "project." R.I. Gen. Laws § 45-50-9.

Only a Municipal Public Buildings Authority may exercise the delegated power of eminent domain to take property to be used for municipal public buildings. R.I. Gen. Laws § 45-50-13. *See Mitola v. Providence Pub. Buildings Auth.*, 273 A.3d 618, 621 (R.I. 2022) (showing condemnation following proper procedures under the statute). The Municipal Public Buildings Authorities Law prohibits the Town from exercising the delegated power of eminent domain to take property for the construction of municipal public buildings "unless and until" the town council, by resolution, declares that there is a need for an authority to function in the Town, and the State of Rhode Island's public finance management board approves the creation of the Town's Municipal Public Buildings Authority. R.I. Gen. Laws § 45-50-3.

The Town has never declared, by resolution, that there is a need for the municipal public building authority to function, and the State's public finance management board has not approved the creation of a Town Municipal Public

19

Buildings Authority. The Municipal Public Buildings Authorities Law establishes the exclusive procedures by which private property may be taken by eminent domain for a project. R.I. Gen. Laws § 45-50-13 ("Eminent domain proceedings").

The Town, by purporting to use eminent domain to take the Santoro Property is exercising a power delegated by the State of Rhode Island exclusively to a Municipal Public Buildings Authority, without legal authority to do so. The Town Charter[1] does not authorize and empower the Town to take the Santoro Property absent an express delegation of eminent domain power by the State, which the State has not done. The Town's Charter neither establishes nor contains procedures or standards by which the Town may take private property by eminent domain.

The Town Charter does not authorize and empower the Town or the Town Council to create, by resolution or otherwise, eminent domain procedures and rules that must be recognized or followed by a court or any party in an eminent domain lawsuit by the Town. If the Town's Charter authorizes and empowers the Town to create eminent domain procedures and rules, the Town's Charter violates Rhode Island law.

Resolution 2025-17 violates Rhode Island law as its procedure is inconsistent with the State's delegation of eminent domain authority for acquiring land to develop municipal buildings. R.I. Gen. Laws § 45-50-13. The Town's attempt to take the Santoro Property, including but not limited to Resolution 2025-10, Resolution 2025-

---

[1] Available at https://tinyurl.com/3j5xnhxt.

17, and Resolution 2025-18, is beyond the delegated powers the Town may exercise, and are void *ab initio*.

## II.    Irreparable Harm

Denying the TRO will result in irreparable harm. *See New York v. Trump*, No. 25-CV-39-JJM-PAS, 2025 WL 357368, at *3 (D.R.I. Jan. 31, 2025) (the plaintiffs "have put forth sufficient evidence at this stage that they will likely suffer severe and irreparable harm if the Court denies their request"). In the span of the few days after the Santoro Family filed its Complaint, in an affront to this Court's jurisdiction, the Town rushed to strip the Santoro Family of its land and property rights by a process that was already being challenged. The irreparable harms the family is suffering because of the Town's actions include a 100% deprivation of its most essential private property rights, including the right to exclude others (including the government) from its property. *See Cedar Point*, 594 U.S. at 149 ("The right to exclude is 'one of the most treasured' rights of property ownership.") (citation omitted). By its post-Complaint actions, the Town has turned that right on its head: it has informed the Santoros they are subject to prosecution if they dare enter their own land. The Santoros have also been deprived of their fundamental right to keep and own their own land. *See*, *e.g.*, *Town of Eaton v. Bouslog*, 292 P.2d 343, 344 (Colo. 1956) (en banc) (the power to condemn contravenes "the common right to own and keep property[,] and must be strictly construed against the condemnor); Donald J. Kochan, *Keepings*, 23 N.Y.U. Envt'l L. J. 355, 356 (2015) ("Property law has developed based on the presumption that, more often than not, individuals want to keep what they own."). *See also*

21

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582–83. (1952) (owners challenged President's seizure of steel mills on the grounds that the seizures were "not authorized by an act of Congress or by any constitutional provisions."). The owners sought preliminary and permanent injunctions. *Id*. at 583. The Supreme Court rejected the government's argument that the President's unconstitutional order did not inflict irreparable harm and affirmed the district court's issuance of a preliminary injunction. *Id*. at 584–85, 589.

The injuries to the Santoros and their property rights are irreparable and cannot be remedied after the fact. *See Knick v. Twp. of Scott*, 588 U.S. 180, 189 (2019) ("A bank robber might give the loot back, but he still robbed the bank. The availability of a subsequent compensation remedy for a taking without compensation no more means there never was a constitutional violation in the first place than the availability of a damages action renders negligent conduct compliant with the duty of care."). Having the Town seize ownership, possession, and title of their land, the Santoro Family obviously cannot continue to move forward with what were their ongoing plans to build affordable housing. In development projects, timing is essential. *Id*. Things like government land use approvals, the schedules of the development and construction professionals such as land use planners, architects, engineers, land use attorneys, contractors, suppliers, and construction workers (and the costs associated with these professionals) all depend on timing. And the timing of when a development project is planned to come to market is absolutely essential in making a development project financially feasible. Especially in an unsettled

regulatory climate where employment and labor uncertainties may affect a construction project. Timing of the market is especially critical in low-profit, narrow-margin developments like the 100% low- to moderate-income housing such as the Santoro Family is planning. Obviously, all of this has been derailed by the Town's unconstitutional and *ultra vires* seizure of the Santoro Family's property.

Moreover, where, as here, there is a deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) (Where there is a "likely constitutional violation, the irreparable harm factor is satisfied" and the remaining factors "favor" a temporary restraining order.). "[I]f a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005).

The irreparable harm factor weighs heavily in the Santoro Family's favor.

## III.    Balancing the Equities

The public is in no way harmed by the issuance of a temporary restraining order that prevents the Town from further acting unconstitutionally and without legal authority, and in violation of state law. *See Tirrell v. Edelblut*, 747 F.Supp.3d 310, 319 (D. N.H. 2024) ("The State 'has no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the

United States Constitution.'") (citing *Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of P.R.*, 437 F.Supp.3d 119, 137 (D. P.R. 2020)). This is especially true where the Town's actions would permanently deprive owners of their private property.

Permitting the Santoro Family to keep what they own and preventing the Town from actively using eminent domain to take the Santoro Family's property without due process during this action harms nobody. The Santoro Family's affordable housing development application remains working its way through the Town's local processes. There is no risk to the Town that the Santoro Family would actively develop the property without the necessary permits and approvals. *Id*. In contrast, the Town is acting without any legal authority to actively acquire the Santoro Family's property. The Santoro Family seeks only to maintain the status quo to prevent the loss of their property until the courts have an opportunity to rule on the important constitutional claims raised by this suit. Meanwhile, the Town has yet to commence even the most preliminary steps toward the potential construction of a new municipal campus. No one has been harmed or will be harmed, by allowing the Santoro Family to maintain ownership while they pursue this civil rights lawsuit. And even if a TRO is issued, the Town will remain free to exercise its other legal functions, including compliance with the Municipal Public Buildings Authority statute, if it so desires.

The equities tip heavily in favor of leaving the property with the Santoro Family during the course of litigation designed to vindicate the Santoro Family's private property rights. The substantial allegations that the Town's abhorrent and

unconstitutional use of eminent domain in this case raises numerous constitutional questions that deserve judicial resolution. That resolution would be significantly chilled, if not made impossible, by allowing the Town to acquire and degrade the property before resolution.

## IV.   A TRO Serves the Public Interest

The public interest is at its height when preserving this Court's ability to review a constitutional and civil rights challenge to very plausible allegations the Town is abusing of sovereign government powers. The public interest is also served by ensuring that the federal constitutional and statutory restrictions and limitations of the Town's authority, and federal remedies, are not being mooted by the Town's post-Complaint machinations. *See Berge*, 107 F.4th at 39 n.9 ("Suits involving obviously unlawful acts do not land on our docket every day. So a plaintiff will have a harder time finding factually similar caselaw in that scenario than in one involving closer legal questions. And it would be more than a little strange 'if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.'") (citations and quotations omitted).

## TEMPORARY RESTRAINING ORDER

Consistent with the findings above, and the keep the status quo, the Court hereby ORDERS that a TEMPORARY RESTRAINING ORDER is entered in this case until this Court rules on the Plaintiffs' forthcoming motion for a preliminary injunction, which the Plaintiffs shall file expeditiously. The Court hereby ORDERS the following persons bound by this, who shall receive actual notice of the TRO by

personal service: Defendants TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with the Defendants.

The court orders such persons to be restrained from taking any action to implement, carry out, enable, execute, or perform under the purported authority of Resolution 2025-10, Resolution 2025-17, Resolution 2025-18, or to undertake any other actions to condemn or use the power of eminent domain to seize the Plaintiffs' property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as Lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property"), including but not limited to:

1.    Taking any action to prevent or otherwise interfere with the Santoro Family entering, using, and occupying the Santoro Property, or which are consistent and in accord with the Santoro Family's rights as the lawful owners of the Santoro Property; and

2.    Taking any action to enter, use, occupy, transfer, convey, encumber, or trespass upon the Santoro Property; and taking any action inconsistent with or in contravention of the Santoro Family's rights as the lawful owners of the Santoro Property; and

3.      The Defendant Vincent P. Baccari, Jr., in his official capacity as Town Clerk, is hereby ordered to certify that the Town's March 12, 2025, recording or submission in the Town of Johnston Land Evidence Records above has been removed, revoked, and deleted within one business day of the State of Rhode Island's Superior Court's entry of an order returning the property to the Santoro Family; and

4.       Taking any other action to further alter, substitute, amend, change, or otherwise affect the registered or title owner from the Santoro Family to the Town on the title to the Santoro  Property registered with the Town of Johnston Land Evidence Records, or taking any action in contravention of or inconsistent with the Santoro Family's rights as the lawful title owners and owners of record; and

5.      Undertaking any other action that alters the status quo as of the date and time this Court enters a temporary restraining order, until the forthcoming motion "for preliminary injunction can be fully briefed, heard, and resolved[,]" or until further order of this Court.

IT IS SO ORDERED.


_____                    _____
Hon. Melissa A. Dubose                                              DATE
United States District Judge



Copies:

mmartone@conleylawri.com

sotoole@conleylawri.com
KValois@pacificlegal.org
AWaisanen@pacificlegal.org
ksalvatore@darroweverett.com
sthomsen@darroweverett.com