**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC, <br><br>     Plaintiffs, <br><br>     v. <br><br> TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston;; VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston, <br><br>     Defendants. | **No. 1:25-cv-00088-MRD-PAS** <br><br> JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT FOR VIOLATION OF
CONSTITUTIONAL AND CIVIL RIGHTS**

1.      SCLS Realty, LLC, and Sixty Three Johnston, LLC, family-owned homebuilders whose members are Lucille Santoro, Salvatore Compagnone, Ralph Santoro, and Suzanne Santoro (the plaintiff LLCs are referred to herein jointly as "Santoro Family"), bring this action to vindicate the family's constitutional and civil rights, threatened by an outrageous abuse of government powers—a sham taking— by the Town of Johnston, Rhode Island ("Town") and its officials. The Town claims it needs to use eminent domain to build a new municipal campus. But this is false. The real reason the Town is forcibly depriving the Santoro Family of its land is to stop the

1

building of over 250 desperately-needed affordable homes.

2.     Rhode Island is deep in what the State's elected leaders have accurately called an affordable housing crisis. The Town, a suburb of neighboring capital-city Providence, is not immune, and less than eight percent (8%) of housing within its jurisdiction is considered "affordable" for the average Rhode Islander. The Santoro Family recognized this critical need and began planning to build affordable housing on its property. As far back as 2004, the Town's Comprehensive Community Plan identified the Santoro Family's property for affordable housing. In October 2024—in accordance with a state statute which required a streamlined approval process for development of low-to-moderate income housing—the Santoro Family began the process of obtaining the Town's approvals.

3.     Instead of embracing the Santoro Family's use of its private property for affordable housing, the Town's mayor, Defendant Joseph M. Polisena, Jr. ("Polisena"), publicly vowed to "use all the power of government that I have to stop it." He stated the Town opposed affordable apartments, but that if the Santoro Family would instead propose building a smaller number of less-affordable suburban-style residences, then, "the town w[ould] roll out the red carpet to glide you through the planning process and see the project to completion."

4.     The Santoro Family refused to buckle under this intimidation and declined to withdraw or alter its plans to build affordable housing. In response, for the non-public purpose of thwarting affordable housing, the Town, in bad faith and with spite and actual animus, exercised eminent domain to force the Santoro Family

2

into a choice: either alter or halt the affordable housing plans, or be deprived of the family's land by government force.

5.     On January 28, 2025, the Town, acting through its town council, officially resolved that the Town "should proceed with eminent domain … for the public purpose of constructing a municipal campus[.]" Prior to vowing to stop the Santoro Family, the Town had never expressed a need for, and had no plans to build, a new municipal campus. The Town's Comprehensive Community Plan shows no plans for new municipal public buildings. The Town has never held any public discussions or hearings regarding a new municipal campus. It has no building or other actual plans for a new municipal campus. It has not considered other locations or evaluated whether the current location of the Town's municipal complex is suitable for redevelopment. The Town never formed a municipal public buildings authority under R.I. Gen. L. § 45-50-12(16), a prerequisite to the use of eminent domain to acquire property for municipal public buildings. It has not set aside money or budgeted for a new municipal campus (instead, the Town asserts it will shift money already earmarked for the construction of a new high school to fund this fraudulent exercise of eminent domain).

6.     After the Town adopted two additional resolutions furthering its scheme to take the Santoro Property on March 10, 2025, the Santoro Family instituted the present action in this Court. In response, the Town rushed to alter the status quo. Unbeknownst to the Santoro Family and its counsel—because neither the Town nor its lawyers bothered to tell them—on March 12, 2025, the Town on the purported

authority of Resolution 2025-17, recorded with the Town's Land Evidence Records a copy of the resolution and other documents, and a statement that the land is taken. The Town had physically seized the Santoro Property and announced to the world, via a Twitter post, that it was the record title owner, without providing notice to the Santoro Family that in the Town's view (and in the public record) the Santoro Family no longer owned their land, and it "belonged" to the Town. Given the lack of any notice, obviously, no Just Compensation was adjudicated, much less actually paid. The Santoro Family only learned of the Town's seizure of their land, and their ousting two days later when the Town's lawyer demanded they remove their belongings and threatened them with trespass if they entered upon their own land.

7.      The power of eminent domain is the government's most potent civil power. It forces property owners who may not want to sell to do so, at a price the owners don't necessarily agree to. The Constitution and law recognize that such overwhelming government power is readily subject to abuse. Thus, when government paints an eminent domain target on a property owner's back and asserts the owner's property is to be seized for what the government claims is a public use or purpose, the courts have an essential role in ensuring that the government's *stated* use and purpose is the government's *actual* use or purpose. In short, the taking must be actually "for public use," and not bogus—or a pretext to some secret motive. Both the U.S. and Rhode Island Constitutions bar the Town from concealing or colluding to hide its real reasons for taking the Santoro Property. Eminent domain cannot be employed to stop property owners from using their land in legal ways, under the guise

4

of a public use or purpose. Defendants are abusing the eminent domain power to block affordable housing for low-to-moderate-income families, simply because they don't want that kind of thing in their town.

## PARTIES

### Plaintiffs

8.     Plaintiff SCLS Realty, LLC, is a family-owned limited liability company organized and operating under the laws of Rhode Island, whose members are Lucille Santoro, Salvatore Compagnone, Ralph Santoro, and Suzanne Santoro. Plaintiff SCLS Realty, LLC's principal place of business, is the State of Rhode Island.

9.     Plaintiff Sixty Three Johnston, LLC, is a family-owned limited liability company organized and operating under the laws of Rhode Island, whose sole member is Ralph Santoro. Plaintiff Sixty Three Johnston, LLC's principal place of business is the State of Rhode Island.

### Defendants

10.     Defendant Town is a town organized and operating under, and subject to, the Towns and Cities Laws, chapter 45 of Rhode Island General Laws, R.I. Gen. L. §§ 45-1, *et seq*.

11.     Defendant Polisena is the Mayor of the Town and is sued in his official capacity.

12.     Defendants Linda L. Folcarelli, Lauren Garzone, Alfred T. Carnevale, Robert V. Russo, and Robert J. Civetti (collectively "Council") are members of the town council and are sued in their official capacities.

13.    Defendant Vincent P. Baccari, Jr., is the Town Clerk and is sued in his official capacity.

## JURISDICTION

14.    This Court has subject-matter jurisdiction under 42 U.S.C. § 1331 (civil actions arising under the Constitution and laws of the United States), and 28 U.S.C. § 1343 (civil action to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States).

15.    Plaintiffs have a personal stake in the outcome and have been, and continue to be, actually, concretely, and personally injured-in-fact and have suffered, and are suffering, an actual or threatened injury that can be fairly traced to the challenged actions of the Defendants, and these injuries are likely to be redressed by a favorable decision.

16.    There is an actual controversy between the parties such that this Court may declare the rights and other legal relations of the Plaintiffs pursuant to 28 U.S.C. § 2201 (Federal Declaratory Judgment Act), whether or not further relief is or could be sought.

17.    The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, because these claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

18.    Venue is proper in the District of Rhode Island under 28 U.S.C. § 1391(b).

19.    Defendant Town is a Rhode Island town located within this judicial district and is a resident of this district.

20.    Defendants Polisena, Folcarelli, Garzone, Carnevale, Russo, Civetti, and Baccari reside in the State of Rhode Island.

21.    All or a substantial part of the events or omissions giving rise to the claims asserted herein occurred, and a substantial part of property that is the subject of this action is situated, within this judicial district.

## ALLEGATIONS COMMON TO
## ALL CLAIMS FOR RELIEF

### The Town recognizes the Santoro Property as a
### planned location for affordable housing

22.    Plaintiffs are the owners in fee simple absolute of an approximately 31-acre undeveloped property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together the "Santoro Property"). This map shows the location and approximate configuration of the Santoro Property.



23.    The predecessor in interest and title of the Santoro Property was Waterman Chenango, LLC, whose members were Lucille Santoro, Salvatore Compagnone, Ralph Santoro, and Suzanne Santoro, and were identified as AP 37 Lots 1-10, 193, and AP Lot 35-2.

24.    The Santoro Property is undeveloped, with the exception of the site of the former "Vito's" nightclub.

25.    The Santoro Property is designated as being within three (3) zoning districts (R-15, R-40, and B-1), *i.e.*, is zoned by the Town for medium-to-high-density residential development.

26.    One of the goals in the Town's Comprehensive Community Plan is to "[p]rovide adequate and affordable housing to the Town's low- and moderate-income

8

population and increase the quantity of affordable, well-constructed, and well-maintained housing stock in the Town." Goal 2, *Comprehensive Community Plan, Town of Johnston, Rhode Island*, at 59 (2004).

27. One of the strategies identified in the Town's Comprehensive Community Plan for accomplishing the affordable housing goal is to "[t]arget specific Low-Moderate Income Sites in appropriate areas throughout the Town for larger-sized Affordable Housing developments that are sized 10 units or more." *Id.*

28. The Town's Comprehensive Community Plan designates the Santoro Property for affordable housing. "Strategy 2-A-4" in the Town's Comprehensive Community Plan identifies the Santoro Property as "targeted for large-scale affordable housing development that are sized 10 units or more." *Id.* at 60.

29. The Town's Comprehensive Community Plan states:

4)    **<u>George Waterman Road – former "Vito's"</u>**

> This site contains an aggregate of approximately 20 acres of which approximately 50% contains wetlands (mill pond). The property vicinity includes other multi-family housing, including a large apartment facility as well as a condominium project. The vacant targeted site has access to public sewer and water. The site also possesses access to RIPTA Bus Route 27 (Providence/Manton Line). This property is not located in a FEMA delineated flood plain or the flood plain of the Woonasquatucket River. At a conservative estimate of 10 units per acre for the wetlands free portion of the property at a market total of 100 units of which at least 25% would be affordable, it is projected that at least 25 affordable units would be created with the development of these parcels.
>
> **Number of Low-and-Moderate-Income ("LMI") Units created: 25 units for <80% Area Median Income ("AMI"), family, elderly, and/or special needs rental**

30.    The Santoro Property is not blighted.

31.    The Santoro Property is not included in a redevelopment area.

32.    The Santoro Property is not identified as a proposed site for redevelopment in the Town's Comprehensive Community Plan.

33.    The Santoro Property is not part of a redevelopment plan.

### Rhode Island's affordable housing crisis and the State's response

34.    Rhode Island suffers from an extreme shortage of low-and-moderately priced housing, a situation Rhode Island's Governor accurately described as a "housing crisis." *See Press Release, Governor McKee Signs Housing Legislative Package into Law* (Aug. 29, 2024) (https://governor.ri.gov/press-releases/governor-mckee-signs-housing-legislative-package-law) ("Thanks to Speaker Shekarchi's steadfast commitment and leadership, the bill sponsors, and our entire legislature, Rhode Island is in a better position to continue addressing the housing crisis.").

35.    This shortage of affordable housing prompted numerous State-level legislative responses, including H 6081 Substitute A, which became law in 2023 and which amended Chapter 53 ("Low and Moderate Income Housing") of Title 45 (Towns and Cities) of Rhode Island General Laws. R.I. Gen. Laws § 45-53-4 (https://webserver.rilegislature.gov/Statutes/TITLE45/45-53/45-53-4.HTM) ("Low and Moderate Income Housing statute").

36.    The Low and Moderate Income Housing statute establishes a "[p]rocedure for approval of construction of low- or moderate-income housing[,]" and requires, among other things, towns to streamline their approval process for

developers of low-to-moderate income housing. *See Press Release, Governor McKee Signs Housing Legislative Package into Law* (Aug. 29, 2024) (https://governor.ri.gov/press-releases/governor-mckee-signs-housing-legislative-package-law) ("I'm proud to sign these bills which will streamline production and cut through the red tape to spur more development across Rhode Island.").

37.    The Low and Moderate Income Housing statute authorizes a statutory density bonus, whereby a private developer proposing to build affordable housing would be allowed more units than might otherwise be permitted. *See* R.I. Gen. Laws § 45-53-4(b)(1)(iii).

38.    One of the driving reasons for the Low and Moderate Income Housing statute is to "clarify the circumstances under which a municipality can limit accepting and hearing development applications and limit building permits related to the development of housing, and specifies the timeframes in which those limitations can be in place." *See* Governor Dan McKee, *Press Release, Governor McKee Signs Housing Legislative Package into Law* (Aug. 29, 2024) (https://governor.ri.gov/press-releases/governor-mckee-signs-housing-legislative-package-law); R.I. Gen. Laws § 45-53-4(d)-(f).

**The Santoro Family's
affordable housing project**

39.    In 2023, the Santoro Family began planning to use its property as the site for a housing project comprised entirely of low-to-moderate-income housing units.

40.    Based on the Santoro Property's existing zoning for dense residential development, and Santoro Family's proposal to build affordable housing, the Low and

11

Moderate Income Housing statute's density bonus authorized 12 more affordable units per acre than would otherwise be allowed.

41.    In April 2023, the Santoro Family met with Town officials, including Mayor Polisena, to discuss the proposed affordable housing development plans. During the meeting, Polisena expressed his opposition to the Santoro Family's affordable housing plans.

42.    On September 17, 2024, counsel for the Santoro Family met with the Town Planner, Thomas Deller ("Deller"), and his staff to discuss a 216 unit, 100% low- and moderate-income housing development proposal. Deller and counsel agreed that an application for a pre-application meeting should be submitted to Deller for additional review.

43.    On October 25, 2024, the Santoro Family submitted a description of a proposed affordable housing project including a conceptual site plan and density analysis, along with a request for a pre-application conference, to the Town's Planning Department.

44.    The proposed development included an apartment complex consisting of 216 units in five buildings, across the 31-acre Santoro Property, with one-hundred percent (100%) of the units proposed to be built devoted to low- to moderate-income housing under the Low and Moderate Income Housing statute.

45.    On November 17, 2024, counsel for the Santoro Family met with Deller and his staff to review the pre-application materials. At that time, Deller scheduled the pre-application meeting to be heard by the Planning Board on December 3, 2025.

12

46.     Plans were further revised and were submitted on or about November 20, 2024, to include 254 dwelling units. The 254 dwelling units proposed are consistent with the bonus density requirements of R.I. Gen. Laws § 45-53-4(b)(1)(iii), where the Santoro Family was proposing 100% low- and moderate-income housing.

47.     On December 3, 2024, in accordance with the Town's Land Development & Subdivision Regulations, a pre-application meeting was held before the Town's planning board regarding the Santoro Family's plans.

### Mayor threatened to "use all the power of government that I have to stop" affordable housing

48.     That same day, December 3, 2024, prior to the meeting, Mayor Polisena wrote a letter addressed "To Whom It May Concern" which he authored on Town letterhead ("Executive Chambers") and which he signed as "Mayor Joseph M. Polisena, Jr." ("Mayor's Dec. 3, 2024 Letter"). He sent the letter to the planning board for its consideration during the meeting with the Santoro Family. A copy of the letter was accepted into the record of and read aloud during the Town's planning board. A true and correct copy of the Mayor's Dec. 3, 2024 Letter is attached hereto as Exhibit "A."

49.     The Mayor's Dec. 3, 2024 Letter lambasted the Santoro Family's plans as "destructive," asserted that building affordable housing will cause "[i]ncreased traffic, drainage problems, and a sudden influx of new students overwhelming our school system," and "amounts to a trifecta of chaos." Mayor's Dec. 3, 2024 Letter at 1.

50.     The Mayor's Dec. 3, 2024 Letter recognized the Santoro Family's right to use and develop its private property, then asserted the Town's "right to fight back,"

13

incorrectly asserting that there has been "no dialogue, no collaboration, just an apparent plan to bulldoze ahead under the protection of a state law designed to force-feed towns like ours ill-fitting developments. Sure, it's your right to do so, but it is also our right to fight back." Mayor's Dec. 3, 2024 Letter, at 1.

51.     The Mayor's Dec. 3, 2024 Letter threatened that the Town would "fight back" by using "all the power of government" to stop the Santoro Family from building affordable housing:

> So let me be crystal clear: If you insist on moving forward with the current proposed project, I will use all the power of government that I have to stop it.

Mayor's Dec. 3, 2024 Letter, at 1.

52.     The Mayor's Dec. 3, 2024 Letter informed the Santoro Family and the public that the Mayor and the Town would use the Town's land use procedures and the Rhode Island Superior Court's Land Use Calendar to delay, halt, or otherwise interfere with ("grind this project to a halt") the affordable housing project:

> If you think you'll breeze though the newly created Land Use Calendar in Superior Court, I will be forced to challenge the constitutionality of the low-to-moderate income housing law itself and seek an injunction to grind this project to a halt while the courts deliberate on the statute's constitutionality.
>
> If you're assuming I won't follow through because the statute has gone unchallenged for 30 years, you clearly don't know me—or the people of Johnston, whom I proudly represent. I am willing to use every resource necessary to support the will of the residents and have zero care of who I may offend in the process.

Mayor's Dec. 3, 2024 Letter, at 1.

53.     The Mayor's Dec. 3, 2024 Letter stated that things would be vastly different if the Santoro Family abandoned its affordable housing plans and instead

14

agreed to build a suburban-style single-family development. If the Santoro Family altered its plans, the Town would "roll out the red carpet to guide you through the planning process" –

> To be clear, no one expects this land to sit idle forever. We're more than willing to support reasonable development, and single-family homes, which are much needed and sought after, remain an excellent option. If you pivot in that direction, I can assure you the town will roll out the red carpet to guide you through the planning process and see the project to completion.

Mayor's Dec. 3, 2024 Letter, at 2.

54.    The Mayor's Dec. 3, 2024 Letter concluded with an ultimatum to the Santoro Family: surrender your constitutional rights to use your private property as protected by the Constitution and laws, and which is authorized by state and local law, or "be prepared to fight a town with 30,000 people."

> The choice is yours. Bulldoze ahead with your current plan and be prepared to fight a town of 30,000 people in the process. Or, withdraw it and work with us to create something the town can and will support.

Mayor's Dec. 3, 2024 Letter, at 2.

55.    During the December 3, 2024, Planning Board meeting, Planning Board member Robert Pingitore opined, "this project is the next Chad Brown project of Johnston," referencing a Providence housing development that is known as home to many minority residents. See NBC 10 WJAR, *Rhode Island planning board member faces backlash over housing comment*" (Dec. 4, 2024) https://www.youtube.com/watch?v=Cc8uwwbWYJk.

56.    On December 4, 2024, Polisena published the Mayor's Dec. 3, 2024 Letter on the "Mayor Joseph Polisena Jr." account on Facebook.

57.     The Facebook post was accompanied by Polisena's renewed threat to

"use every lever of government I have, including a court challenge on the low-income

housing statute itself" to stop the Santoro Family:

> For those not there last night, this is my letter submitted to the planning
> board regarding the 252 [sic] low-income apartment units off George
> Waterman. If the developer is unwilling to compromise, I will use every
> lever of government I have, including a court challenge on the low-
> income housing statute itself. Johnston will not be force-fed a
> development through a state law that will immediately add anywhere
> from 600-800 people, which is anywhere between 2% - 3% of our total
> population now, a massive number for one development, without a fight.

A true and correct screenshot of Polisena's Facebook post is attached hereto as

Exhibit "B."

### Mayor announced eminent domain to prevent affordable housing

58.     On January 27, 2025, Polisena issued a press release which is published

on Facebook, in which he stated:

> As many of you are aware, there is a 252 [sic] unit 100% low-income
> housing project being proposed off George Waterman Road. The
> developer is using state law to usurp town zoning, ultimately rendering
> the town powerless to stop the project. This project would cost our
> current taxpayers millions, with at least $2 million to educate the kids
> in our school system. With that being said, I am hereby announcing the
> taking of all 31 acres of that land by eminent domain. Instead of 252
> low-income apartments, we will take the land by eminent domain and
> construct a new municipal complex consisting of a police station, a fire
> station, and municipal hall.

Town of Johnston, Rhode Island, *Mayor Joseph Polisena, Jr. Announces Taking of 31-*

*Acre Low-Income Housing Site by Eminent Domain for Public Safety Complex* (Jan.

27, 2025). A true and correct copy of the press release is attached as Exhibit "C."

59.     The press release explained that to build this new municipal complex,

the Town would use funds slated to build a new high school, and that "to fund this project [the new municipal campus], we are going to back to our original intention of renovating the high school."

60.     The Town previously approved a plan to build a new high school, and to *not* renovate the existing Johnstown Senior High School. *See* Rory Schuler, *Two New Johnstown Schools Expected by 2027*, Johnstown Sunrise (Feb. 7, 2024) ("On Tuesday night, during a special joint Johnston School Committee and School Building Committee meeting, the members of both boards present voted unanimously to send a $128,791,940 plan (Stage II) to build a new Johnston Senior High School to the Rhode Island Department of Education (RIDE).") https://johnstonsunrise.net/stories/two-new-johnston-schools-expected-by-2027,240513; Dan McGowan, *"R.I. mayor aims to seize affordable housing site for public safety complex – and pay for it by canceling new high school,"* Boston Globe (Jan. 28, 2025) https://www.bostonglobe.com/2025/01/28/metro/affordable-housing-eminent-domain-joseph-polisena-johnston-ri/.

61.     On January 28, 2025, Polisena met with a local television reporter and delivered a message to the Santoro Family, "[g]ive me two million dollars to pay for the citizens that are going to live there and I will not block the project." Kaitlin Gehlhaus, *Johnston mayor to use eminent domain to buy land for new public safety complex*, ABC 6 Providence Now (Jan. 28, 2025) https://www.abc6.com/johnston-mayor-to-use-eminent-domain-to-buy-land-for-new-public-safety-complex/.

17

**The Town claims the taking is for
municipal public buildings**

62.    On January 28, 2025, the Town Council convened a special meeting to consider and adopt Resolution 2025-10 to use eminent domain to take the Santoro Property for "the development and construction of a campus for Public Safety Headquarters and a Town Hall[.]"

63.    Resolution 2025-10 states, *inter alia*:

a.    the current Town Fire Department headquarters "is in need of significant upgrades";

b.    "[t]he Police Department Headquarters is in need of significant upgrades and improvements";

c.    "[t]he Town Hall building is in need of significant rehabilitation";

d.    "[s]ignificant economic and operational efficiencies may be achieved by creating a central campus for Fire Department Headquarters, Police Department Headquarters, and a Town Hall";

e.    "[t]he administration has been reviewing sites for such a campus";

f.    "[t]he administration has initiated review of 178-200 George Waterman Road … to determine if it is an appropriate site for the location and construction of a municipal campus";

g.    "[i]t has been determined after review by Police Chief Mark Vieira and Fire Chief David Iannuccili that it is an excellent location for public safety purposes";

h.    "[t]he administration tasked DiPrete Engineering to review the property to determine if it is an appropriate site for the development of" a campus for new municipal public buildings"; and

i.    "[s]aid review has confirmed that it is an appropriate site for the development and construction of a campus for Public Safety Headquarters and a Town Hall[.]"

Resolution 2025-10, at 1-2 (italics in original removed).

18

64.    Resolution 2025-10 concludes:

Now Therefore, the Town Council for the Town of Johnston hereby resolves that the Town of Johnston should proceed with eminent domain through the exercise of condemnation as provided for in § 1-3 of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 for the public purpose of constructing a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building.

Resolution 2025-10, at 2 (italics in original removed).

65.    On January 28, 2025, Resolution 2025-10 was adopted by the Town Council, with four members voting "Aye to adopt," and one member, Robert Civetti, noted as "Absent." The Town Clerk attested. Resolution 2025-10 is published on the Town's website: https://clerkshq.com/Content/Johnston-ri/books/resolutions/res_tc2025.htm. A true and correct copy of Resolution 2025-10 is attached hereto as Exhibit "D."

66.    By resolving that the Town "proceed with eminent domain through the exercise of condemnation as provided for in § 1-3 of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193," the Town is purportedly exercising a limited power of eminent domain which the State of Rhode Island has delegated to the Town.

**The Town's actual use and purpose for eminent domain**

67.    The use, purpose, and necessity stated in Resolution 2025-10 is not the actual use and purpose of the taking.

68.    The actual uses and purposes of the taking include, *inter alia*:

19

a.  pressuring the Santoro Family into altering its development plans for affordable housing, and instead build single-family residences for higher income families;

b.  delaying, halting, interfering with, or otherwise forcing the Santoro Family to "grind … to a halt" its affordable housing project;

c.  if such threats are not successful, to deprive the Santoro Family of its private property and its right to make a permitted and lawful use of private property to build affordable housing;

d.  stopping low- to moderate-income property owners and tenants from residing in the Town.

69.    The Town has no actual plan to develop and construct a campus for Public Safety Headquarters and a Town Hall.

70.    The Town has no actual plan to seize the Santoro Property by eminent domain.

71.    The Town has no plan for budgeting for and paying just compensation (the fair market value of the property at its highest and best use) to the Santoro Family.

72.    The Town has not initiated review to determine if the Santoro Property is an appropriate site for the location and construction of a municipal campus.

73.    The Police Chief has not determined after review by that it is an excellent location for public safety purposes.

74.     No engineering firm has reviewed the property to determine if it is an appropriate site for the development of a campus.

75.    DiPrete Engineering has not confirmed that it is an appropriate site for the development and construction of a campus for Public Safety Headquarters and a

Town Hall.

**The Town had no plans to relocate its municipal public buildings**

76.    Until the Santoro Family planned to build affordable housing, the Town had no plans to construct a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building, and the Town never considered using eminent domain to take the Santoro Property.

77.    The Town's exercise of eminent domain lacks the usual indicia of democratic and public processes, comprehensive planning, and open consideration and public deliberations which the Supreme Court held in *Kelo v. City of New London*, 545 U.S. 469 (2005), would insulate the government's stated public use and purpose supporting a taking from judicial scrutiny. Before October 2024 when the Santoro Family's affordable housing plans became known, the Town had not:

a.    publicly proposed building a municipal campus;

b.    determined if private property would need to be acquired for a municipal complex;

c.    informed the public or publicly discussed the use of eminent domain to acquire any property for a municipal campus;

d.    budgeted or set aside money or otherwise planned to budget for a municipal campus;

e.    sought the public's input on whether monies slated to be used to build a new high school were to be used instead to build a municipal campus, and the Town's existing high school only renovated;

f.    undertaken studies to determine the financial feasibility of building a municipal campus, or whether a municipal campus would burden the Town's taxpayers;

g.    created a Municipal Public Building Authority, a prerequisite to the use

21

of eminent domain to acquire property for a municipal public building. R.I. Gen. L. § 45-50-12(16);

h.  held any public hearings regarding a new municipal campus;

i.  created or commissioned any building plans or other plans for a municipal campus;

j.  formulated a land use plan or any similar long range plans showing a new municipal campus or evincing an intent to acquire property for a new municipal campus;

k.  considered whether any other locations or properties may be suited for a municipal campus;

l.  considered whether repair and redevelopment of the Town's existing facilities was feasible or desirable; and

m.  considered whether relocating existing municipal services from their central location to the edge of the Town was sensible, and desirable to the public.

78.  The Town's taking of the Santoro Property is not part of other exercises of the State of Rhode Island's or the Town's power to implement urban planning and development.

79.  The Town is prepared to forego a new municipal campus to allow development of single family homes on the Santoro Property.

80.  The Town has not coordinated, and has no plans to coordinate, a variety of commercial, residential, and recreational uses of land.

81.  The Town has not invoked a state statute that specifically authorizes the use of eminent domain for public municipal buildings.

82.  The Town has no plan—comprehensive or otherwise—adopted after thorough deliberation, that includes use of the Santoro Property for public municipal

22

buildings or a government campus. To the contrary, the Town's Comprehensive Community Plan identifies the Santoro Property as an appropriate and desirable site for the development of affordable housing.

83.    The Town would not have exercised eminent domain if the Santoro Family had caved-in to Polisena's and the Town's threats and agreed to build single-family residences instead of affordable housing. As Polisena stated, if the Santoro Family abandoned its affordable housing plans, "the town will roll out the red carpet."

**The Town made up eminent domain procedures**

84.    On March 10, 2025, the Town adopted Resolution 2025-17, which states:

    a.    The administration has initiated a review of 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 1 aka Lot 193 to determine if it is an appropriate site for the location and construction of a municipal campus for the Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

    b.    If the Town determines that this location is suitable for condemnation then it must follow the process for condemnation contained in this resolution; and

    c.    The Town of Johnston Charter authorizes and empowers the Town to take property by condemnation in accordance with Section 1-3 and State Law; and

    d.    The Town shall pass a resolution authorizing the taking of the property for public use and find that it is necessary and in the public interest; and

    e.    The Town shall file in the records of land evidence of the Town, a copy of the adopted resolution, a description of the land, a plat thereof, and a statement that the land is taken pursuant to the provisions of section 1-3 of the Town Charter, which description and statement shall be signed by the president of the Town Council and the Mayor and certified by the Town Clerk; and

    f.    The Town shall file in the Providence County Superior Court a statement of the sum of money estimated by the Town, using a state-

23

certified general real estate appraiser, to be just compensation for the property taken; and

g.  The Town shall deposit in Providence County Superior Court, to the use of person(s) entitled to it, the sum established in the statement; and

h.  After filing said documents in the land evidence records and depositing said sum in the Court, the Town shall serve notice of the taking upon the owner(s) and person(s) having an estate or interest in such property by the Town Sergeant, any town police office or any constable of the town, by leaving a true and attested copy of such resolution, description, plat and statement with each of such owner(s) or person(s) personally, or at their last and usual place of abode in the State of Rhode Island with some person living there, and in case such owner or person is absent from the State of Rhode Island, and has no last and usual place of abode therein occupied by any person, or in case the whereabout of any such person is unknown to the person making service, such copy shall be left with person(s), if any, in charge of having possession of such property taken, and another copy thereof shall be mailed to address of such absent owner or person if the same is known to the person making service; and

i.  The person making service shall attest upon a true copy of the resolution, description, plat and statement the manner in which the notice was given or attempted to be given; and

j.  After filing of the resolution, description, plat and statement, the town clerk for the Town shall cause a copy of the resolution, description, plat and statement to be published in a newspaper of general circulation in Providence County for three (3) consecutive weeks;

k.  Now, Therefore, The Town Council for the Town of Johnston hereby resolves that the process contained in this resolution conforms with the Town Charter and State Law and should be followed if it is determined that the above referenced property should be condemned for public use.

Resolution 2025-17 (Mar. 10, 2025) (italics in original removed). A true and correct

copy of Resolution 2025-17 is attached hereto as Exhibit "E."

**The Town attempts to find pretextual reasons to justify its acquisition**

85.  On March 10, 2025, the Town adopted Resolution 2025-18, which states:

24

a. The headquarters for the Johnston Fire Department located at 1520 Atwood Avenue was built in 1968; and

b. The Johnston Fire Department headquarters is in need of significant upgrades including but not limited to the electrical system, the plumbing and HVAC system, the roof, fire sprinkler system, the dispatch and communications system, as well as other infrastructure and building integrity improvements; and

c. The Johnston Fire Department deserve headquarters that support and enhance their mission, and the citizens of the Town of Johnston deserve a 21st century Fire Protection and Emergency Medical Services; and

d. The Johnston Police Department headquarters were built in 1978 at 1651 Atwood Avenue and was originally designed for 34 officers and civilians; and

e. The Police Department now has 79 officers and civilians working in the same headquarters; and

f. The Police Department Headquarters is in need of significant upgrades and improvements including but not limited to the electrical system, the plumbing system, the HVAC system, the roof, the fire alarm and sprinkler system, and the dispatch and communications system; and

g. The Police Department Headquarters building is now prone to repeated flooding issues during significant rain events; and

h. It is in further need of various infrastructure and building integrity improvements; and

i. The Johnston Police Department deserves headquarters that support and enhance its mission and the citizens of the Town of Johnston deserve 21st century Police Department services; and

j. The Town Hall now located at 1385 Hartford Avenue was built in 1939; and

k.  The Town Hall building is in need of significant rehabilitation including but not limited to the electrical system, the plumbing system, the HVAC system, the fire alarm and fire sprinkler system; and

l.  There is a need to provide greater access for disabled citizens to Town Hall services; and

m.  The Town Hall is critical to providing access to municipal services to citizens; and

n.  The citizens of the Town of Johnston deserve a Town Hall that can provide 21st century municipal services and accessibility; and

o.  Significant economic and operational efficiencies may be achieved by creating a central campus for Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

p.  The administration has been reviewing sites for such a campus to provide economic and operational efficiencies and 21st century services to the citizens of the Town of Johnston; and

q.  The administration has initiated a review of 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 1 aka Lot 193 to determine if it is an appropriate site for the location and construction of a municipal campus combining the Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

r.  It has been determined after review by Police Chief Mark Vieira and Fire Chief David Iannuccilli that it is an excellent location for public safety purposes and

s.  The administration tasked DiPrete Engineering to review the property to determine if it is an appropriate site for the development of such structures; and

t.  Said review has confirmed that it is an appropriate site for the development and construction of a campus for Public Safety

26

Headquarters and a Town Hall;

u.  The Town has engaged Thomas S. Andolfo of Andolfo Appraisal Associates, Inc., a state certified appraiser, to determine the fair market value of the property; and

v.  Andolfo Appraisal Associates, Inc., has determined that the fair market value of the property is seven hundred and seventy-five thousand dollars ($775,000); and

w.  Now Therefore, the Town Council for the Town of Johnston hereby resolves that the Town of Johnston should proceed with eminent domain through the exercise of condemnation as provided for in § 1-3 of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 1 aka Lot 193 for the public purpose of constructing a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building; and

x.  Be it further resolved, that for the foregoing reasons this taking is necessary and in the public interest.

Resolution 2025-18 (Mar. 10, 2025) (italics in original removed). A true and correct copy of Resolution 2025-17 is attached hereto as Exhibit "F."

86.  On March 10, 2025, the Santoro Family instituted this action by filing in this Court the Complaint for Constitutional and Civil Rights Violations (ECF 1).

**The Town Physically Seized the Santoro Property
Without Due Process or Just Compensation, and Registered
Itself as the Owner**

87.  Unbeknownst to the Santoro Family and its counsel, on March 12, 2025, the Town, under the purported authority of Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18, and acting by and through Defendant Baccari, recorded with

27

Town's Land Evidence Records office a copy of Resolution 2025-17, a legal description of the Santoro Property, a plat, and a statement that the land was taken.

88. The Town's Land Evidence Records publicly reflected, as of March 12, 2025, at 8:52 a.m. Eastern Daylight Time, the Town as the record title owner of the Santoro Property with the recording of the title transfer accomplished by the Town as both "Grantor" and "Grantee."

89. Neither the Defendants nor their lawyers notified the Santoro Family or their lawyers of the purported change in ownership and title to the Santoro Property.

90. The Santoro Family had no actual or constructive notice of the Town's actions.

91. Additionally, unbeknownst to the Santoro Family and their lawyers, also on March 12, 2025, at 4:58 p.m. Eastern Daylight Time, Defendants acting through their agents, counsel, and attorneys, filed, *ex parte*, a Petition seeking the permission of a Rhode Island Superior Court "to deposit into the Registry of the Court, a sum of money not less that [than] the appraisal of the fair market value of the Property[.]" A true and correct copy of the Petition, *In re: 178-200 George Waterman Road*, No. PM–2025–01368 (R.I. Super. Mar. 12, 2025) ("Deposit Petition") with the exhibits attached thereto, is attached hereto as Exhibit "G."

92. Neither the Defendants nor their lawyers notified the Santoro Family or their lawyers of the filing of the Deposit Petition.

93. In the Deposit Petition, the Town does not ask the Superior Court to

28

condemn property, to adjudicate the public use, purpose, or necessity of any action by the Town, to determine just compensation or adjudicate any question or issue. It solely sought the court's permission to deposit funds with the court "for the benefit of [Plaintiffs], or any other person making a valid claim for the funds[.]" Deposit Petition at 1.

94.     The Town stated in the Deposit Petition that it was brought "pursuant to its authority under sections 42-64.12 [economic development under the Rhode Island Home and Business Protection Act of 2008 (R.I. Gen. Laws § 42-64.12)] and 45-2 of the Rhode Island General Law and section 1-3 of the Johnston Town Charter and all laws appertaining thereto[.]" Deposit Petition at 1.

95.     Attached to the Deposit Petition was a copy of Resolution 2025-18, a Statement and Description of Taking including a map, issued by Defendant Baccari, signed by Defendant Polisena and Defendant Russo, and attested as a true copy on March 12, 2025 by Defendant Baccari, which states "[t]he Town of Johnston has taken title to the real property commonly known as 178-200 George Waterman Road, Johnston, Rhode Island … in fee simple absolute free and clear of all encumbrances pursuant to Title 42, Chapter 64.12 and Title 45, Chapter 2 of the Rhode Island General Law and Section 1-3 of the Johnston Town Charter, described more particularly below, for public use." *See* Exhibit "H" hereto.

96.     The Santoro Family had no actual or constructive notice of the Town's filing of the Deposit Petition.

97.     The following day, March 13, 2025, at 3:42 p.m. Eastern Daylight Time,

29

Defendants, acting through their agents, counsel, and attorneys, filed with the Rhode Island court the Town's *ex parte* "Motion to Deposit Money Into Registry" which moved "for an order pursuant to the provisions of Super.R.Civ.P. 67, to deposit into the Registry of the Superior Court, the sum of seven hundred and seventy five thousand dollars ($775,000) based on an appraisal hereto …" A true and correct copy of the Motion to Deposit Money Into Registry, *In re: 178-200 George Waterman Road*, No. PM–2025–01368 (R.I. Super. Mar. 13, 2025) is attached hereto as Exhibit "I."

98.    "Super.R.Civ.P. 67" is not an eminent domain or condemnation procedural rule or a freestanding rule which permits the deposit of funds into a Rhode Island court, but rather a rule that generally governs how parties in lawsuits may deposit monies into a court "[i]n an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all of any part of such sum or thing." R.I. Super. Ct. R. Civ. P. 67(a).

99.    The Town's Deposit Petition was not "an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery[.]" R.I. Super. Ct. R. Civ. P. 67(a).

100.    The Santoro Family had no actual or constructive notice of the Town's Motion to Deposit Money Into Registry.

101.    *Ex parte*, the Town sought, and apparently was granted, an *ex parte*

Hearing on Motion for Deposit on March 14, 2025, at 9:30 a.m. Eastern Daylight Time.

102.    At or after this *ex parte* hearing, the Superior Court appears to have granted the Town's Motion to Deposit Money Into Registry.

103.    An Order dated "3/14/25" states: "This matter came before this Court on March 14, 2025, the Honorable Judge Christopher Smith presiding, on Petitioner's Motion to Deposit Money into the Registry of the Court, in the amount of seven hundred and seventy five thousand dollars ($775,000) based on the appraisal submitted to the Court and pursuant to Rule 67 of this Honorable Court. After hearing thereon and consideration thereof, it is hereby: ORDERED, ADJUDGED, AND DECREED 1. Petitioners' motion is GRANTED. … Presented by William J. Conley, [Jr.] Esq (#2149)[.]" A true and correct copy of the Order, *In re: 178-200 George Waterman Road*, No. PM–2025–01368 (R.I. Super. Mar. 13, 2025) is attached hereto as Exhibit "J."

104.    The Santoro Family had no actual or constructive notice of the Town's *ex parte* hearing, or the Superior Court's granting, *ex parte*, the Town's Motion to Deposit Money Into Registry.

105.     Neither the Town, nor any other Defendant, nor any of the Town's agents, counsel, or attorneys provided, or attempted to provide, notice of any of the above to the Santoro Family or its attorneys, despite knowing the precise identity of the owners of the Santoro Property and their attorneys, and having their email addresses, physical addresses, and their telephone numbers.

31

106.    Defendant Polisena, however, posted on social media (X fka Twitter) as follows:



Defendant's Polisena's post reads: "At 10:40 a.m. today, through a petition in Providence Superior Court, the Town of Johnston officially acquired ownership of the property at 178-200 George Waterman Road by eminent domain."

Joe Polisena Jr. ("1990s. RIC/RWU Law/PC alum. Current: Syracuse [emoji]. Mayor of Johnston, RI. #RaysUP [emoji], #VegasBorn [emoji]", X (Twitter) (Mar. 14, 2025).

107.    The Santoro Family had no actual or constructive notice of the Town's *ex parte* hearing, or the Superior Court's granting, *ex parte*, the Town's Motion to Deposit Money Into Registry.

32

108. The Santoro Family only started to become aware that the Town claimed to "have taken" their land *ex parte* and without notice days earlier, when a few hours later, at 2:39 p.m. a reporter called one of the Santoro Family's lawyers and asked for comment.

109. A few hours later, an attorney for the Santoro Family received two letters via email from the Town's lawyer in which he finally informed the Santoros and their lawyers about the Town's recording itself as the new owner of the property, the filing of the Deposit Petition, the Rhode Island court's order granting the Town's request to deposit, and stated that the Town views itself, not the Santoro Family, the owner of the property. A true and correct copy of the letter from William J. Conley, Jr. to Kelley Morris Salvatore (Mar. 14, 2025) is attached as Exhibit "K."

110. The letter demanded that the Santoro Family remove their belongings from the Town's land immediately, and threatened to prosecute the Santoros if they did not do so in a week:

> Dear Attorney Morris Salvatore:
>
> Enclosed please find a copy of the Petition that was filed in the Providence County Superior Court and an Order which was entered by Judge Christopher K. Smith this morning regarding the condemnation of property formerly owned by your clients SCLS Realty, LLC and Sixty Three Johnston, LLC. Also enclosed please find a copy of the Statement of Taking which was recorded in the Town of Johnston Land Evidence Records on March 12, 2025 at 8:53 AM in Book 3294 Page 223.
>
> Now that title to the above-referenced property has vested with the Town of Johnston, please instruct your clients to remove all vehicles and other personal belongings from the property immediately. If your client's belongings remain on the property by Friday, March 21, 2025, we will have no choice but to serve your clients with a no trespass notice.

Yours truly,

/s/ William J. Conley, Jr.
William J. Conley, Jr.
wconley@conleylawri.com

111.    On March 19, 2025, this Court issued a Temporary Restraining Order which temporarily restrained Defendants from altering the status quo, and ordering Defendant Baccari to certify to this Court within one business day of the Rhode Island court's entry of the order returning the property to the Santoro Family.

**FIRST CLAIM FOR RELIEF**
**Sham Taking**
**Public Use Clause**
**(Fifth & Fourteenth Amendments,**
**U.S. Constitution)**

112.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

113.    The Fifth Amendment to the United States Constitution, which limits the power of States and their instrumentalities such as the Town under the Fourteenth Amendment, prohibits the taking of private property unless the taking is "for public use." U.S. Const. amend. V ("… nor shall private property be taken for public use, without just compensation") ("Public Use Clause").

114.    The Public Use Clause and the Fourteenth Amendment are self-executing limitations on the Town's power to take private property by eminent domain, and this claim for relief arises directly under the U.S. Constitution without need for a statutory cause of action or claim for relief, or any federal or state legislative recognition of a cause of action or claim for relief.

115.    The Santoro Property identified by the Town for eminent domain is

34

private property owned by Plaintiffs. Ownership of that private property vests the Santoro Family with rights protected by the U.S. and Rhode Island Constitutions to make lawful and beneficial uses of that private property. The Santoro Property is designated by the Town for high-density development, and building affordable housing is a permitted and lawful use of the land. Moreover, the Low and Moderate Income Housing statute confirms that building affordable housing is a publicly-beneficial use of private property.

116.    The Town's stated uses, purposes, and necessity for the taking are not its actual uses, purposes, or necessity.

117.    The Town's exercise of eminent domain violates the Public Use Clause because it is taking private property for a public amenity as a pretext for defeating the Santoro Family's plans for another use.

118.    The U.S. Constitution does not contain a "Sham Town Campus Exception" to the Public Use Clause. A taking of property must be "for public use"—or at least for "a public purpose"—and thwarting the rightful owners' lawful use of their private property is not a public use or purpose.

119.    Plaintiffs do not contest that a municipal campus is, generally speaking and in the absence of evidence of another use, purpose, or necessity, a public use.

120.    Even where the Town's stated use, purpose, and necessity supporting an exercise of eminent domain appears to be a public use or purpose, courts may inquire into the Town's actual use, purpose, necessity, and motives.

121.    The Town's taking of the Santoro Property is an unusual and aberrant

exercise of government power and raises a suspicion that a non-public purpose is afoot that this Court must view with a skeptical eye. *See, e.g., 99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (C.D. Cal. 2001), *cited in Kelo v. City of New London*, 545 U.S. 469, 487 n.17 (2005). The taking is unusual and aberrant for the following reasons, *inter alia*:

a. The history and tradition of eminent domain is that taking private property is the *last* step in the process not the first. Here, the Town did not first determine it needed and could afford a new municipal campus, then look for and study sites that might be suitable, determine whether the owners might voluntarily sell their land, and only if the owner refused then exercise the drastic power of eminent domain to forcibly seize the property.

b. The Town is doing this in reverse—determining first to take the Santoro Property and only then trying to "retcon" its reasons for doing so. *See* "*retcon*," Merriam-Webster's Dictionary ("the act, practice, or result of changing an existing fictional narrative by introducing new information in a later work that recontextualizes previously established events, characters, etc.") https://www.merriam-webster.com/dictionary/retcon; Colin Clark, Ass't U.S. Att'y, *Retcon: How a Comic Book Word Can be Used as a Handy Rhetorical Weapon*, 69 DOJ J. Fed. L. & Prac. 255, 255-266 (2021) (defining "retcon" as a "portmanteau (derived from 'retroactive continuity')" that "occurs when a later author introduces new information involving an earlier work about the same event or character in a manner that changes the meaning of the earlier work, usually without contradicting it") (footnotes omitted). The Town's stated use and purposes are *post-hoc* and pretextual.

c. The Town's reversal of the usual eminent domain process leads to a very plausible inference that its stated reasons for taking the Santoro Property are false.

d. Defendant Polisena's statements and actions are inconsistent with the stated condemnation use or purpose set forth in Resolution 2025-10, Resolution 2025-17, Resolution 2025-18, and the Town's Deposit Petition.

e. None of the Town's resolutions had stated the Town was taking the Santoro Property for economic development under the Rhode Island

Home and Business Protection Act of 2008, and the Deposit Petition was the first time the Town first time asserted this use, purpose, or necessity purportedly supporting eminent domain.

f.    The Town appears to have shifted or abandoned its rationale supporting the taking from seizing land for public municipal buildings to economic development (even as its real reason—stop the Santoros—remained unchanged).

g.    This makes little sense given the limited purpose of the Rhode Island Home and Business Protection Act of 2008. *See* R.I. Gen. Laws § 42-64.12-3 ("The purposes of this chapter are to set forth permissible uses of eminent domain power and to define, limit, and restrict the use of eminent domain for economic development purposes."). The statute does not contemplate the construction of municipal buildings as economic development. *See* R.I. Gen. Laws § 42-64.8-6 (listing improvements in utilities, roads, sidewalks, sewers; projects to arrest blight and decay, improvements to enhance municipal tax bases and to attract and retain employers).

h.    There is a lack of a nexus between the property interests sought and the Town's claimed purpose.

i.    The Town engaged in bad faith efforts to compel or coerce changes in, or abandonment of, the Santoro Family's affordable housing plans before deciding to use eminent domain.

j.    The Town's stated use, purpose, and necessity for the taking are atypical of long-range policy decisions for public projects.

k.    The Town's stated use, purpose, and necessity for the taking are inconsistent with and violate State law.

l.    Some members of the public expressed opposition to the Santoro Family's proposed affordable housing.

m.    The Town proposes to pay for the proposed municipal campus by shifting monies previously slated for building a new high school, contrary to the Town's already-approved plans to build a new high school.

122.    By its actions set forth above, the Town is violating the Public Use

Clause because the Town's stated uses, purposes, and necessity for the taking are

37

false and a sham and a pretense or pretext to some undeclared or secret use or purpose, including, *inter alia*, non-public or private purposes. The Public Use Clause prohibits any taking for a use or purpose that is illegitimate or unstated, even if the stated use, purpose, or necessity is not pretextual to a *private* use, purpose, or benefit.

123.   It is not a public use, purpose, or necessity supporting an exercise of eminent domain for the Town to falsely state pretextual uses, purposes, or necessity.

124.   The Town's exercise of eminent domain violates the Public Use Clause because it is in bad faith, and is for spite, animus, and ill will.

125.   The Public Use requirement is not coterminous with the scope of the sovereign's police power, and the Town's determination or statement of public interest, use, or purposes is not conclusive. The Town's exercise of eminent domain and stated public use, purpose, and necessity supporting the taking of the Santoro Property is not amenable to judicial deference or rational basis review, and the Town cannot hide its actual interest, use, purpose, and necessity for the Town's exercise of eminent domain. Plaintiffs acknowledge the U.S. Supreme Court may have concluded otherwise, *see Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984); *Berman v. Parker*, 348 U.S. 26 (1954), and to the extent that Plaintiff's claims are not warranted by existing law, Plaintiffs in good faith are asserting a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and are preserving such arguments for appeal if necessary.

## SECOND CLAIM FOR RELIEF
### Unlawful Taking
### Due Process Clause
### (Fourteenth Amendment, U.S. Constitution)

126.  Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

127.  The Fourteenth Amendment to the U.S. Constitution, which limits the power of States and their instrumentalities such as the Town, provides, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV ("Due Process Clause").

128.  "[T]he Due Process Clause, like its forebear in the Magna Carta was intended to secure the individual from the arbitrary exercise of the powers of government…." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citations omitted).

129.  Plaintiffs are "persons" as that term is used in the Due Process Clause.

130.  The Santoro Family owns and possesses "property," and the Santoro Property is "property," as that term is used in the Due Process Clause.

131.  By the actions set forth above, Defendants have deprived Plaintiffs of property without due process of law, arbitrarily, oppressively, and in a manner which shocks the conscience.

132.  This claim for relief is made in the alternative, if this Court concludes that the Sham Taking claim is not cognizable under the Public Use Clause. *See D.A. Realestate Inv., Inc. v. City of Norfolk*, 126 F.4th 309, 318 (4th Cir. 2025) (denying

property owner a remedy to challenge an allegedly pretextual taking "doesn't mean [the owner] had no remedy for what he claims is the city's wrongful conduct. … Or he could have brought a timely § 1983 due process claim for an unlawful taking.") (citing *Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 234-35 (1897); *Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 270 n.3 (11th Cir. 1987)).

**THIRD CLAIM FOR RELIEF**
**Physical and Title Taking Without Just Compensation**
**Takings Clause**
**(Fifth & Fourteenth Amendments,**
**U.S. Constitution)**

133.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

134.    The Fifth Amendment to the United States Constitution, which limits the power of States and their instrumentalities such as the Town under the Fourteenth Amendment, prohibits the taking of private property unless the taking is with "just compensation." U.S. Const. amend. V ("… nor shall private property be taken for public use, without just compensation") ("Takings Clause").

135.    The Takings Clause and the Fourteenth Amendment are self-executing limitations on the Town's power to take private property, and this claim for relief arises directly under the U.S. Constitution without need for a statutory cause of action or claim for relief, or any federal or state legislative recognition of a cause of action or claim for relief. *DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("We have explained that 'a property owner acquires an irrevocable right to just compensation immediately upon a taking' '[b]ecause of 'the self-executing character' of the Takings

40

Clause 'with respect to compensation.") (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 192 (2019); *First English Evangelical Lutheran Church v. Los Angeles Cnty*, 482 U.S. 304, 315 (1987) ("We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of "the self-executing character of the constitutional provision with respect to compensation. . . .'") (citations omitted)).

136. The Town claimed to own the Santoro Property—and public records reflected that the Town owned the property—after *ex parte* seizing it from the Santoro Family.

137. The Town registered itself as the title owner in the Land Evidence Records. A search of the public record for who owns the Santoro Property would reflect that the Town, not the Santoro Family, owns it by "condemnation," since "3/12/2025."

138. The Town purported to be the owner of the fee simple absolute of the Santoro Property, an estate in property which recognizes an owner's complete dominion and control over the land to the exclusion of others.

139. The Town purported to exercise a property owner's right to exclude: it threatened the Santoro Family with trespass if they did not remove their belongings from the Town's property.

140. The Town seized the Santoro Property and claimed fee simple absolute ownership of the property, thereby taking from the Santoro Family the entirety of every "stick" in the bundle of rights associated with the ownership of private property, including, but not limited to, the right to exclude others; the right to possess; the right

41

to alienate; the right to transfer; the right to gift; the right to sell; the right to devise; the right to bequeath; the right to lease; the right to use; the right to develop or to not develop; the right to keep; and the dignity, pride, and sense of self-worth that comes with owning private property.

141.   By the actions set forth above, the Town has taken private property owned and possessed by the Santoro Family without public use, and without providing just compensation.

**FOURTH CLAIM FOR RELIEF**
**Deprivation of Constitutional Private Property Rights**
**Federal Civil Rights Act of 1871**
**(42 U.S.C. § 1983)**

142.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

143.   The Civil Rights Act of 1871 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

144.   Defendant Town is a "person" and at all times relevant herein acted under color of state law within the meaning of those terms in 42 U.S.C. § 1983.

145.   Defendants Polisena, Folcarelli, Garzone, Carnevale, Russo, Civetti, and Baccari are each a "person," and in their official capacities at all times relevant herein each acted under color of state law within the meaning of those terms in 42

42

U.S.C. § 1983.

146.    Plaintiffs possess rights, privileges, or immunities secured by the Constitution and laws of the United States, *viz.*, the right, privilege, or immunity to possess and keep their private property and not have it seized or threatened by unconstitutional and illegal assertions of eminent domain; the right, privilege, or immunity to be provided just compensation if their private property is taken; the right, privilege, or immunity to federal relocation expenses if any federal monies are involved; and the right, privilege, or immunity to make legal and reasonable use of their land, free of coercion and the arbitrary and capricious exercise of government power.

147.    By the actions set forth above, Defendants have deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws. Resolution 2025-10, Resolution 2025-17, Resolution 2025-18, and the other actions of the Town and its officials have deprived, and are depriving, Plaintiffs of rights secured by the United States Constitution, that is, the guarantee in the Fifth Amendment that government may only take property by eminent domain "for public use" and upon provision of just compensation, and that no State shall deprive any person of property without due process of law.

**FIFTH CLAIM FOR RELIEF**
**Bad Faith Taking**
**R.I. Public Use Clause**
**(Article I, § 16, Rhode Island Constitution)**

148.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

149.   Article I of the Rhode Island Constitution ("Declaration of Certain Constitutional Rights and Principles") prohibits the Town from taking private property except "for public uses."

> Private property shall not be taken for public uses, without just compensation.

R.I. Const. art. I, § 16 ("R.I. Public Use Clause").

150.   The Town's taking of the Santoro Property is arbitrary, capricious, or in bad faith, and is void under the R.I. Public Use Clause. *Rhode Island Econ. Dev. Corp. v. The Parking Co., L.P.*, 892 A.2d 87, 103 (R.I. 2006) ("This Court is mindful of the extreme grant of power that rests in an agency vested with eminent domain authority; and if confronted with a showing that the "agency has exceeded its delegated authority by an arbitrary, capricious or bad faith taking of private property, we unhesitatingly will declare it void."); *Union Station Assocs. v. Rossi*, 862 A.2d 185, 187 (R.I. 2004) (abuse of governmental power to gain bargaining advantage rejected as "municipal thuggery").

44

**SIXTH CLAIM FOR RELIEF**
**Ultra Vires Taking**
**Lack of Delegated Eminent Domain Authority,**
**Failure to Comply With State Law Prerequisites,**
**(R.I. Home and Business Protection Act,**
**R.I. Municipal Public Buildings Authorities Law)**

151.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs.

152.   The Town may not exercise the power of eminent domain, unless that power has been expressly and specifically delegated to it and authorized and enabled by the State of Rhode Island.

153.   The Town has no power or authority independent of state law to take private property for any use, purpose, or necessity.

154.   The limited public uses or purposes for which the Town may exercise the delegated power of eminent domain are not coterminous with the scope and extent of the State of Rhode Island's eminent domain or police powers and are limited to the uses and purposes which are identified by state law and expressly delegated to the Town by state law. The Town may only exercise any ability to take property by eminent domain consistent with the laws of Rhode Island, and consistent with other restrictions and limitations established by law, rule, regulation, or ordinance.

155.   The State's delegation to the Town of the power to own property and make contracts in R.I. Gen. Laws § 45-2-4 is not a general delegation of the power of eminent domain to the Town, nor is it a delegation or authorization to take the Santoro Property.

156.   R.I. Gen. Laws § 45-2-4 establishes no procedures or standards by which

45

cities and towns may take private property by eminent domain.

157.    The Rhode Island Home and Business Protection Act of 2008 ("R.I. Home and Business Protection Act") restricts how political subdivisions of the state such as the Town may exercise any delegated power of eminent domain. The R.I. Home and Business Protection Act sets out the permissible uses of eminent domain powers, and the restricted use of eminent domain. R.I. Gen. Laws § 42-64.12.

158.    The R.I. Home and Business Protection Act states that a permissible use of eminent domain is to acquire property for transportation infrastructure such as roads, highways, bridges, and associated ramps. R.I. Gen. Laws § 42-64.12-6.

159.    The Town's stated public use, purpose or necessity supporting the taking of the Santoro Property is not transportation infrastructure such as roads, highways, bridges, and associated ramps.

160.    The R.I. Home and Business Protection Act states that a permissible use of eminent domain is to acquire property for public utilities, such as telecommunications or common carriers. R.I. Gen. Laws § 42-64.12-6.

161.    The Town's stated public use, purpose or necessity supporting the taking of the Santoro Property is not public utilities, such as telecommunications or common carriers.

162.    The R.I. Home and Business Protection Act states that a permissible use of eminent domain is to acquire property for eliminating an identifiable public harm and/or correcting conditions adversely affecting public health, safety, morals, or welfare, such as the elimination and prevention of blighted and substandard areas,

46

correcting conditions of environmental contamination that pose a significant risk to the public health, correcting and repairing facilities and correcting conditions from damages resulting from a declared disaster. R.I. Gen. Laws § 42-64.12-6.

163.   The Town's stated public use, purpose or necessity supporting the taking of the Santoro Property is not eliminating an identifiable public harm and/or correcting conditions adversely affecting public health, safety, morals, or welfare, such as the elimination and prevention of blighted and substandard areas, correcting conditions of environmental contamination that pose a significant risk to the public health, correcting and repairing facilities and correcting conditions from damages resulting from a declared disaster.

164.   The R.I. Home and Business Protection Act states that a permissible use of eminent domain is to acquire property for providing good and marketable title that is free and clear of liens and encumbrances when property is to be acquired or is to be conveyed for any of purposes set forth in paragraphs 158 through 163, above. R.I. Gen. Laws § 42-64.12-6.

165.   The Town's stated public use, purpose or necessity supporting the taking of the Santoro Property is not to provide good and marketable title that is free and clear of liens and encumbrances.

166.   The R.I. Home and Business Protection Act restricts the exercise of eminent domain for economic development by subjecting such exercises to certain statutory limitations. R.I. Gen. Laws § 42-64.12-7.

167.   The Town's stated public use, purpose or necessity supporting the taking

47

of the Santoro Property is not economic development.

168. The R.I. Home and Business Protection Act states that eminent domain may be used to acquire property for "public ownership and use," provided doing so is "consistent with other restrictions and limitations established by law, rule, regulation, or ordinance[.]" R.I. Gen. Laws § 42-64.12-6.

169. One such restriction and limitation is set forth in Rhode Island General Laws Title 45, Chapter 50 ("Municipal Public Buildings Authorities Law"), which delegates the power to take private property for the use or purpose of construction or operation of judicial, administrative, educational, residential, civic facility, rehabilitative, medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide effective governmental, health, safety, and welfare services in the municipality, from the State of Rhode Island exclusively to a town's Municipal Public Building Authority. R.I. Gen. Laws § 45-50-13.

170. One purpose of the Municipal Public Buildings Authorities Law is to authorize "alternative financing techniques" for the acquisition of property to build municipal public buildings, to avoid municipalities such as the Town from seizing property by eminent domain without any ability, plan, or budget to satisfy a just compensation judgment or pay for a project. R.I. Gen. Laws § 45-50-3.

171. The Municipal Public Buildings Authorities Law establishes the exclusive procedures by which a legally constituted Municipal Public Buildings Authority may acquire land, or any interest in it, including development rights, by

48

the exercise of the power of eminent domain, whenever it is determined by the authority that the acquisition of the land, or interest, is necessary for the construction or the operation of any "project." R.I. Gen. Laws § 45-50-13.

172. The Municipal Public Buildings Authorities Law defines "project" as:

(11) The word "project" means any public facility or public equipment which the authority is authorized to construct, improve, equip, furnish, maintain, acquire, install, or operate under the provisions of this chapter, to provide for the conduct of the executive, legislative, and judicial functions of government, and its various branches, departments, and agencies. These projects may include, but need not be limited to, judicial, administrative, educational, residential, civic facility, rehabilitative, medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide effective governmental, health, safety, and welfare services in the municipality.

R.I. Gen. Laws § 45-50-9.

173. The Town's stated public use, purpose or necessity is for the development of civic facilities, *viz.*, municipal public buildings for uses such as "administrative, educational, residential, civic facility, rehabilitative, medical, police, fire and public safety, recreation, transportation, public water supply system, public sewer system, parks, and other projects that the authority is requested to initiate to provide effective governmental, health, safety, and welfare services in the municipality[,]" and constitute a "project." R.I. Gen. Laws § 45-50-9.

174. Only a Municipal Public Buildings Authority may exercise the delegated power of eminent domain to take property to be used for municipal public buildings. R.I. Gen. Laws § 45-50-13.

175. The Municipal Public Buildings Authorities Law prohibits the Town

49

from exercising the delegated power of eminent domain to take property for the construction of municipal public buildings "unless and until" the town council, by resolution, declares that there is a need for an authority to function in the Town, and the State of Rhode Island's public finance management board approves the creation of the Town's Municipal Public Buildings Authority. R.I. Gen. Laws § 45-50-3.

176.    The Town has never declared, by resolution, that there is a need for the municipal public building authority to function, and the State's public finance management board has not approved the creation of a Town Municipal Public Buildings Authority.

177.    The Municipal Public Buildings Authorities Law establishes the exclusive procedures by which private property may be taken by eminent domain for a project. R.I. Gen. Laws § 45-50-13 ("Eminent domain proceedings").

178.    The Town, by purporting to use eminent domain to take the Santoro Property is exercising a power delegated by the State of Rhode Island exclusively to a Municipal Public Buildings Authority, without legal authority to do so.

179.    The Town Charter does not authorize and empower the Town to take the Santoro Property absent an express delegation of eminent domain power by the State, which the State has not done.

180.    The Town's Charter neither establishes nor contains procedures or standards by which the Town may take private property by eminent domain.

181.    The Town Charter does not authorize and empower the Town or the Town Council to create, by resolution or otherwise, eminent domain procedures and

50

rules that must be recognized or followed by a court or any party in an eminent domain lawsuit by the Town.

182.    If the Town's Charter authorizes and empowers the Town to create eminent domain procedures and rules, the Town's Charter violates Rhode Island law.

183.    Resolution 2025-17 violates Rhode Island law as its procedure is inconsistent with the State's delegation of eminent domain authority for acquiring land to develop municipal buildings. R.I. Gen. Laws § 45-50-13.

184.    Town's attempt to take the Santoro Property, including but not limited to Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18, is beyond the delegated powers the Town may exercise, and are void *ab initio*.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request this Court grant the following relief:

1.     **Declaratory Judgment—Sham Taking, Unlawful Taking, Uncompensated Taking, Bad Faith Taking:** Issue a declaratory judgment pursuant to 28 U.S.C. § 2211 and Fed. R. Civ. P. 57, that the Town's taking of the Santoro Property by a purported exercise of eminent domain violates the Public Use Clause, the Due Process Clause, the Takings Clause, and the R.I. Public Use Clause.

2.     **Declaratory Judgment— Deprivation of Constitutional Private Property Rights:** Issue a declaratory judgment pursuant to 28 U.S.C. § 2211 and Fed. R. Civ. P. 57, that the Defendants have deprived, and are depriving, Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws, in violation of 42 U.S.C. § 1983.

3.     **Declaratory Judgment—*Ultra Vires* Taking:** Issue a declaratory judgment pursuant to 28 U.S.C. § 2211 and Fed. R. Civ. P. 57, that the Town's attempt to take the Santoro Property, including but not limited to Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18, and all actions taken by Defendants in furtherance thereof, are beyond the delegated powers the Town may exercise, and are void *ab initio*.

4.     **Injunction—All Claims:** Issue a temporary and permanent injunction pursuant to Fed. R. Civ. P. 65, that enjoins Defendants and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with the Defendants from exercising eminent domain to take the

52

Santoro Property under the purported authority of Resolution 2025-10, Resolution 2025-17, or other process not in accordance with the law.

5.      **Just Compensation—Takings Clause:** Enter a judgment for just compensation owed by the Town for the taking of the Santoro Property physically, in title, and by an extreme, abusive, and oppressive exercise of governmental power, including nominal just compensation.

6.      **Damages—42 U.S.C. § 1983:** Enter a judgment for damages against Defendants under 42 U.S.C. § 1983 for the violation of Plaintiffs' civil rights in an amount to be determined at trial.

7.      **Attorney's Fees—42 U.S.C. § 1988:** Allow a reasonable attorney's fee under 42 U.S.C. § 1988.

8.      Such other relief this Court deems just and proper.

DATED: March 24, 2025.

                                        Respectfully submitted,

KELLEY M. SALVATORE              /s/ Kathryn D. Valois
R.I. Bar No. 6025                KATHRYN D. VALOIS*
Mass. Bar No. 637885             Fla. Bar No. 1010150
STACY W. THOMSEN                 Pacific Legal Foundation
Cal. Bar No. 274282              4440 PGA Blvd., Suite 307
Mass. Bar No. 706742             Palm Beach Gardens, FL 33410
R.I. Bar No. 10342               Telephone: (561) 691-5000
Darrow Everett LLP               Fax: (916) 419-7747
1 Turks Head Pl., #1200          kvalois@pacificlegal.org
Providence, RI 02903
Telephone: (401) 453-1200        *admitted *Pro Hac Vice*
Fax: (401) 453-1201
ksalvatore@darroweverett.com
sthomsen@darroweverett.com


                                        (*additional counsel on next page*)

53

ROBERT H. THOMAS*
Cal. Bar No. 160367
Haw. Bar No. 4610-0
AUSTIN W. WAISANEN*
Wyo. Bar No. 8-7023
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
rthomas@pacificlegal.org
awaisanen@pacificlegal.org

*admitted *Pro Hac Vice*

*Co-counsel for Plaintiffs*

54