# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston,<br><br>    Defendants. | No. 1:25-cv-00088-MRD-PAS |

## JOINT DISCOVERY PLAN AND SCHEDULING ORDER

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties to this action—Plaintiffs SCLS Realty, LLC, et al., and the Defendants the Town of Johnston, et al.—must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, Local Rule CV 26(b) of the United States District Court for the District of Rhode Island states that "[c]ounsel may, but are not required to, present any written discovery plan."

1

WHEREAS, at the required Rule 16 conference on June 4, 2025, this Court requested the Parties complete and submit a joint discovery plan and scheduling order; and

WHEREAS, the Parties to this action have met and conferred as requested by this Court and as required by Federal Rule of Civil Procedure 26(f). The Parties are therefore entering into this Joint Discovery Plan and Scheduling Order with the request that the Court enter it as an Order.

NOW THEREFORE, it is STIPULATED and ORDERED as follows:

## II. DEFINITIONS

1. The terms used in this Stipulation and Order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules, unless otherwise provided in this Stipulation and Order. Whenever the terms set forth below are used, the following definitions apply:

   (a) "Draft" when used to describe either an electronic or hard copy document, means "a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or the most recent version at the time of collection."

   (b) "Document Family" means a group of related documents including parent and child documents. A parent document is an electronic file that has at least one other electronic file attached to it or embedded within it. A child document is an electronic file that is attached to or embedded within another electronic file.

   (c) "Duplicate," when used to describe either an electronic or hard copy document, means that the document does not show any facial differences, such as the inclusion of highlights, underlinings, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the fact of

the document, are not relevant to determining whether the document is a duplicate.

(d) "Gigabyte" means one billion bytes or 1,000 megabytes of electronic data.

(e) "Parties" means the parties to this litigation, including their employees and agents.

### III. PRESERVATION

2. The Parties separately served individual Preservation Letters. The Parties agreed and continue to agree to preserve "all documents, tangible things, and electronically stored information (ESI) which may be relevant to this action, consistent with the Federal Rules of Civil Procedure 37(e)." ESI includes but is not limited to, email, and other electronic communications; word processing documents; photographs; spreadsheets; databases; calendars; telephone logs; internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices. ESI includes not only electronic, magnetic, and optical storage media that are reasonably accessible to you, but also those that may not be reasonably accessible.

3. <u>Collection and Search for ESI</u>

    (a) The producing party shall develop appropriate criteria that it intends to use for collecting and/or searching ESI and disclose such criteria to the requesting party. The Parties will endeavor in good faith to reach agreement on criteria, however, each responding party reserves its right to select its own custodians and search terms. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate.

    (b) The producing party has the right to fully review its ESI for responsiveness, privilege, confidentiality, and personally identifiable information prior to production of responsive, non-privileged documents. In addition, the producing party may use any appropriate tool or technology to conduct its review,

3

including technology assisted review, as long as the review is conducted in a defensible manner.

4. <u>ESI That is Not Reasonably Accessible.</u> The categories of ESI listed below shall not be considered "reasonably accessible" in this litigation:

(a) Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operation systems, data or system mirrors or shadows, or automated generation of versions of files, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

(b) Voicemail messages;

(c) Instant messages, such as messages sent on AOL Instant Messenger, Facebook Messenger, Microsoft Communicator, or other similar instant message platforms;

(d) Electronic mail sent to or from a smartphone (e.g., BlackBerry, iPhone) or tablet device (e.g., iPad), provided that a copy of such email is routinely saved elsewhere;

(e) Other electronic data stored on a smartphone or tablet, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

(f) Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(g) Data stored in random access memory (RAM), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(h) Data that is not accessible through the operating system installed on a device;

4

(i) Data stored on photocopiers, scanners, and fax machines;

(j) Server, system, or network logs;

(k) Data stored on electronic systems that were no longer in use more than five years before the original or initial complaint was filed.

5. <u>Meet and Confer.</u> In accordance with the Federal Rules of Civil Procedure, in response to a discovery request served in this matter, the Parties may raise objections regarding categories of ESI that they assert are not reasonably accessible. If any such objections are raised, the Parties shall meet and confer in good faith in an effort to resolve such objections.

6. <u>Use of Documents During Litigation</u>. Notwithstanding any other provision of this Order or the existing Preliminary Injunction, the Parties may take any of the following actions with respect to documents and ESI without breaching their duty to preserve documents and ESI:

   (a) The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in Paragraph 1. However, the Parties shall preserve Draft documents for discovery.

   (b) The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the initial complaint was filed in this matter. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the initial complaint was filed in this matter.

   (c) The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimagined, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that must be produced pursuant to Section IV of this Order.

    (d) The Parties may move data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location, or the new copy is created in a manner that preserves the data, including metadata, that must be produced pursuant to Section IV of this Order.

    (e) The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this Order and does not convert the format of the ESI in a way that makes it significantly less accessible or otherwise incomplete; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

    (f) The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered or rendered less accessible.

    (g) The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

    (h) The Parties may update social media sites but may not take affirmative steps to delete relevant data posted before the filing of the initial complaint.

7. <u>Preservation Does Not Affect Discoverability or Claims of Privilege.</u> By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claims of privilege.

8. <u>Other Preservation Obligations Not Affected.</u> Nothing in this Stipulation and Order affects any obligations of the Parties to preserve documents or information

for purposes other than this litigation, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

## IV. PRODUCTION

9. <u>Procedures for Production</u>: Parties anticipate presenting evidence in electronic format and will continue to meet and confer on electronic evidence as necessary. The parties will work cooperatively to produce ESI in an accessible format, and unless otherwise ordered by the Court or agreed to by the Parties, the Parties shall produce ESI and non-ESI in accordance with the annexed ESI Production Specifications (annexed as Appendix A).

## V. DISCOVERY LIMITATIONS

10. All limits on written discovery and depositions set forth in the Federal Rules of Civil Procedure, in local rules, or in orders of this Court remain in effect in this litigation, except as stated in this Order.

11. <u>Date Range.</u> Nothing in this Stipulation and Order prevents the Parties from applying appropriate date range limitations in their responses to particular discovery requests, provided that all such date range limitations shall be timely disclosed by the Party applying them.

12. <u>Written Discovery Requests.</u>

    (a) Unless otherwise stipulated or ordered by the Court, the Plaintiffs and the Defendants shall each be treated as a single party for purposes of this Stipulation and Order and may serve no more than twenty-five (25) written interrogatories, including all discrete subparts.

    (b) For purposes of Rule 26(d)(2)(B), the first 26(f) conference took place on April 15, 2025.

    (c) Unless there has been agreement of the responding party or leave of Court has first been obtained, Plaintiffs and Defendants shall serve no more than fifty (50) requests for admission (including all subparts) upon the other party.

13. <u>Depositions.</u>

    (a) The parties propose an increase on the limit of ten (10) depositions imposed by Federal Rule of Civil Procedure 30(a)(2)(A)(i), based on the number of witnesses identified and disclosed by the parties. The parties propose that this Court allow up to fifteen (15) depositions per side and that non-expert depositions shall be concluded by **October 3, 2025**.

    (b) Except as otherwise stipulated by the Court, all depositions are limited to one day and a maximum of seven (7) hours.

    (c) Before a notice of deposition or subpoena pursuant to Rule 30(b)(6) is served upon a party, the serving party and the organization must confer in good faith about the number and description of the matters for examination and the identity of each person the organization will designate to testify. A subpoena to a nonparty to testify pursuant to Rule 30(b)(6) must request that the nonparty confer with the serving party, and the serving party shall provide notice of the subpoena to the other party or parties.

    (d) Regardless of whether there is a request before the deposition is completed, a deponent must be allowed 30 days after being notified by the court reporter or other transcribing official that the transcript or recording is available in which: (1) to review the transcript or recording; and (2) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

    (e) Objections at a deposition to the form of a question should be limited to the words "Objection, form." The questioning attorney may ask for the basis of the objection, in which case the objecting attorney must identify any defects in the form of the question (e.g., compound) in order to preserve the objection. Unless the questioning attorney asks for the basis of the objection, an objection to form without further explanation is sufficient to preserve objections to the form of a

question asked at a deposition in this action.

## VI. EXPERT DISCOVERY

14. Each Party shall not pursue through discovery, trial subpoena or otherwise:

    (a) Notes taken by a witness after the filing of the initial complaint in this lawsuit that are required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

    (b) Communications after the filing of the initial complaint in this lawsuit between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

    a. Relate to compensation for an expert's study or testimony;

    b. Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

    c. Identify the assumptions that a Party provided, and that the expert relied upon in forming the opinions to be expressed.

15. <u>Expert Depositions.</u> Notwithstanding Fed. R. Civ. P. 26(b)(4)(C), the Parties shall bear the costs of their own testifying experts in responding to discovery and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

16. <u>Expert Productions.</u>

    (a) Documents collected or created by a retained expert for purposes of this lawsuit are within the possession, custody, or control of the Party that has retained the expert. If documents were collected by an expert for purposes of this matter but were not created by or for that expert in connection with this matter and are responsive to a request for production served during fact discovery, such documents must be produced during fact discovery unless privileged. Documents created by or for an expert may be withheld, without providing a

privilege log, until the deadline described in subparagraph (c) below.

(b) Documents "considered" by an expert for the purposes of Fed. R. Civ. P. 26(a)(2)(B)(ii) means those documents have been received, read, reviewed, or created by the expert for the purposes of forming the opinions set forth in the expert's report.

(c) Documents considered by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be produced within seven (7) days after producing the witness's report. Such documents shall be produced in accordance with the requirements of Section IV of this Order, except that the Parties shall identify which witness(es) considered each document either in the load file produced along with the documents or in the witness' report. However, the Parties do not need to produce: (1) copies of documents that were previously produced in this matter, provided that the Party identifies the documents by Bates number before the expiration of the seven-day period described in this subparagraph; and (2) copies of documents considered by experts that are publicly available (e.g., published materials one might find online or in a library), unless it would be less burdensome for the producing party to obtain a copy than it would be for the receiving party, and the receiving party requests a copy after receiving the expert report. All such requests shall be fulfilled within ten (10) days.

## VII. DISCOVERY TIMELINE

17. <u>Initial Disclosures.</u> Initial disclosures required under Federal Rule of Civil Procedure 26(a)(1) were completed prior to this Court's scheduling conference on **June 4, 2025**.

18. <u>Non-Expert Discovery Cut-off.</u> Non-expert discovery will conclude on **October 3, 2025**. This means that all discovery motions must be properly noticed for hearing prior to the proposed date.

19. <u>Expert Disclosure Deadline.</u> Expert witnesses must be disclosed by **November 3, 2025, or if all parties agree that non-expert discovery has concluded earlier than October 3, 2025, then within 30 days of the agreed upon date**. The subsequent date for disclosure of responsive expert reports shall be **30 days after the disclosure of expert witnesses**.

20. <u>Expert Witness Discovery Cut-off.</u> **January 8, 2026**, shall serve as the cut-off date for expert witness discovery. Plaintiffs propose that experts disclosed in the first round of expert disclosures may be deposed before or after the disclosure of responsive expert reports, but may only be deposed once.

21. <u>Deposition Timing.</u> Non-expert depositions shall be concluded by **October 3, 2025**.

22. <u>Dispositive Motion Deadline.</u> Any and all discovery related motions shall be filed no later than **February 20, 2026**.

23. <u>Pre-Trial Conference.</u> A pre-trial conference shall be held on **April 7, 2026**, or such a date that is convenient for the Court.

24. <u>Jury Trial</u>. The parties anticipate a week long jury trial to commence no later than mid to late April 2026.

### VIII. MISCELLANEOUS PROVISIONS

25. If a non-party produces documents or ESI in response to a subpoena, the Party serving the subpoena shall make reasonable provision for prompt access to the produced materials by other parties.

26. Before filing any motion with the Court regarding discovery, electronic discovery, or evidence issues, the Parties shall meet and confer in a good faith attempt to resolve such disputes.

27. <u>Costs of Document Production</u>. Each Party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

28. <u>Effect of Order</u>. The Parties' agreement to this Stipulation and Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Stipulation and Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**STIPULATED TO:**

DATED: June 17, 2025

By: /s/ Kathryn D. Valois*         By:/s/ William J. Conley, Jr. (#2149)
*Attorneys for Plaintiffs*        *Attorneys for Defendants*

\* Admitted *pro hac vice*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COURT'S APPROVAL AND MODIFICATION

The Court hereby APPROVES and ADOPTS the terms of the Parties' Joint Discovery Plan and Scheduling Order.

SO ORDERED, this ____ day of June, 2025.

_____
Hon. Melissa R. DuBose
U.S. District Court Judge

## Appendix A

Unless otherwise specified or agreed upon, documents should be converted and produced as single-page, black and white .TIF images with a corresponding image load file provided in Opticon (Concordance Image) format. A unique production number ("Bates stamp") should be branded on each .TIF image along with its appropriate confidentiality designation, if any. Upon reasonable request, the producing party will produce documents in color on an as-needed basis to assist with readability.

Any file that is specifically requested in native format or that cannot be converted to .TIF should be produced in its original native format with a link to the native file included in the **Native Link** field within the .DAT file. A Bates-stamped, single-page .TIF placeholder indicating that the file was produced natively should be included as the corresponding image for the file that cannot be converted. The native file should be renamed to reflect the Bates number assigned to the corresponding .TIF placeholder. Some examples of files that should be provided in their native format are spreadsheets, multimedia files, and technical drawings.

All associated metadata should be produced in a .DAT load file with standard Concordance delimiters. The included chart ("Requested Metadata Fields for ESI") contains the fields that should be provided in the .DAT file.

For each produced document, all associated text (extracted or OCR) should be provided in a text file named after the starting Bates number of the document. There should be one text file per document, and a link to the text file should be included in the **Text Link** field within the .DAT file.

The folder structure of the deliverable should follow the below format:

- PROD001 – top-level directory, which should be unique for every deliverable
    - DATA – subdirectory containing load files (.DAT & .OPT)
    - NATIVES – subdirectory containing files provided in native format
    - IMAGES – subdirectory containing single-page .TIF images
    - TEXT – subdirectory containing .TXT files (extracted or OCR)

Files with hidden content, tracked changes, revisions, comments, or notes should be imaged with such content viewable.

## Format for Placeholder Documents

Because full families (parents and children—e.g., emails and corresponding attachments) should be produced together, if a document within a responsive family is fully withheld for privilege, non-responsiveness, or confidentiality, a Bates-stamped, single-page .TIF placeholder indicating either "Document Withheld for Privilege," "Document Withheld for Non-Responsiveness," or "Document Withheld for Confidentiality" should be included as the corresponding image for the withheld file. This information should also be reflected in the **Contains Slip Sheet** and **Slip Sheet Language** fields in the .DAT file.

### Email Threading

For email documents, to the extent feasible, produce only the most-inclusive emails in a thread, plus any emails within that thread that contain an attachment or only the emails within that thread that contain a unique attachment.

### Format for Redacted Documents

Files requiring redactions should be converted and produced as redacted Bates-stamped, single-page .TIF images with associated text and metadata. For each document produced with redactions, the basis for the redactions should appear in the redaction box on the as-redacted image, or in a privilege log. In addition, the appropriate metadata fields should be populated in the .DAT file. If it is not technically feasible to produce a redacted image for a particular file that requires redactions (e.g., for an Excel file that must be redacted), a copy of the native file with the appropriate portions replaced with "[*the basis for the redaction*]" should be produced. If that is not feasible, the parties should meet and confer as to the best way to produce the file.

### Confidential Documents

Unless the parties agree otherwise, confidential documents must be produced in the following manner:

(i) Stamping, branding, or otherwise clearly marking documents with the appropriate confidentiality designation in a manner that will not interfere with legibility or, if applicable, audibility; and

(ii) Including the appropriate confidentiality designation in the **Designation** field in the .DAT load file or in a privilege log.

### Document De-Duplication

A producing party should, prior to review and production, globally de-duplicate its email population using hash values (such as MD5 or SHA-1) as long as the **All Custodians** field is provided. Loose files may also be globally de-duplicated using hash values (such as MD5 or SHA-1) as long as the **All File Paths** field is provided.

**Requested Metadata Fields for ESI on Following Page**

**Requested Metadata Fields for ESI\***

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| Production Begin | Starting Bates number of the file | SCLS00000001 |
| Production End | Ending Bates number of the file | SCLS00000005 |
| Production Begin Family | Starting Bates number of the family | SCLS00000001 |
| Production End Family | Ending Bates number of the family | SCLS00000010 |
| Page Count | Number of pages in the file | 6 |
| Native Link | Hyperlink to the native file | Z:\VOL001\NATIVES\00\SCLS00000001.doc |
| All Custodians | All custodians of the record, if global deduplication was applied during processing<br><br>A revised ALLCUSTODIANS field must be provided in the form of an overlay for any documents affected by new custodians added to the database post-production. | Doe, John; Smith, Susan, etc. |
| All File Paths | Original path of the file<br><br>All original file paths of the record, if global deduplication was applied during processing<br><br>A revised All File Paths field must be provided in the form of an overlay for any documents affected by new documents added to the database post-production. | Path\Folder2\My Documents; Path\Folder3\DoeDocuments |
| File Name | Name of the file | Re:Meeting.docx |
| File Extension | Extension of the file | DOCX |
| File Type | Classification assigned by the processing software | Microsoft Word Document |
| Title | Data stored in the title metadata field | Agenda for Weekly Meeting |
| Author | Data stored in the author metadata field | jdoe |
| Subject | Subject of the email or the data stored in the subject metadata field | Meeting Agenda |
| From | Email address and display name of the sender of the email | John Doe <jdoe@company.com> |
| To | Email address(es) and display name(s) of the TO field recipient(s) of the email | Frank Smith <frank.smith@mycompany.com>; Jane Doe <jane.doe@mycompany.com> |
| CC | Email address(es) and display name(s) of the CC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| BCC | Email address(es) and display name(s) of the BCC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| Attachment | List of files attached to the email | File 1.xls; File 3.zip |

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| Names | | |
| Date Sent | Sent date of the email | 09/15/2012 |
| Time Sent | Sent time of the email (12-hr. format) | 3:30:25 PM |
| Date Modified | Last modified date of the file, as captured by the original application or the file system | 09/09/2012 |
| Time Modified | Last modified time of the file, as captured by the original application or the file system (12-hr. format) | 9:30:30 AM |
| Importance | Importance property of the email | High |
| Sensitivity | Sensitivity property of the email | Confidential |
| MD5 hash | MD5 hash value of the file | D41D8CD98F00B204E9800998ECF8427E |
| Family Date | Sent date of the email or last modified date of the parent document | 09/15/2012 |
| Family Time | Sent time of the email or last modified time of the parent document (12-hr. format) | 3:30:25 PM |
| Privilege Type | Privilege associated with the document | ACC; AWP |
| Redaction Type | This field will indicate if the document contains a non-privilege redaction | PII; NR; Confidentiality |
| Contains Slip Sheet | Information as to whether the document has been slip-sheeted | Yes |
| Slip Sheet Language | Language that appears on the document slip-sheet, if any | DOCUMENT WITHHELD FOR PRIVILEGE |
| Designation | Confidentiality level of the produced document | CONFIDENTIAL; HIGHLY CONFIDENTIAL |
| Text Link | Hyperlink to the text file | Z:\VOL001\TEXT\00\SCLS00000001.txt |

***Fields for paper documents should be determined and agreed upon separately.***