# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston, <br><br> Defendants. | No. 1:25-cv-00088-MRD-PAS <br><br> **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND/OR A PRIVILEGE LOG FROM DEFENDANTS AND MEMORANDUM OF LAW** <br><br> **HEARING REQUESTED** <br> **(15 minutes per side estimated)** |

## INTRODUCTION

The Santoro Family seeks this Court's assistance in obtaining requested production (communications and documents surrounding the Town's December 9, 2024, meeting and the Town's work with third parties) which are relevant to the eminent domain pretext issue but which the Town has refused to produce, claiming various privileges.[1] The Town claims that certain documents prepared by non-

---

[1] Plaintiffs SCLS Realty, LLC, and Sixty Three Johnston, LLC, are referred to collectively as the "Santoro Family." Defendants and Town officials are referred to collectively as the "Town" unless the context otherwise requires.

1

attorneys and circulated between third parties who are not clients are protected by the attorney-client privilege. The Town also claims that certain documents prepared by non-attorney consultants and state agencies such as the Rhode Island Department of Environmental Management (RIDEM) are attorney work-product. And that past and present drafts of certain Town documents are protected by deliberative process privilege.

But the Town has not taken the required first step in asserting a privilege, providing a privilege log, and in response to the Santoro's request has offered no reason for withholding it. *See In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim"); *Corvello v. New England Gas Co.*, 243 F.R.D. 28, 33 (D.R.I. 2007) ("A failure by the party claiming privilege to adequately describe the documents at issue, to sufficiently explain the basis for the privilege, or to assert the privilege in a timely manner, may be grounds for rejecting the claim."). Lacking a privilege log, the Santoros are unable to evaluate whether its claims of privilege are valid. *See Marx v. Kelley, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("[T]he assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim.").

In a case where the Town's actual reasons and motives for taking the Santoro Family's property by eminent domain is a key issue, communications and documents surrounding that decision are all the more relevant in showing pretext. However, without a privilege log, the Santoros can't even know what documents are supposedly

2

protected by the Town's claim they are shielded by privilege. The lack of understanding surrounding the documents the Town is withholding has prevented the Santoros from fully evaluating the purported privilege and has materially interfered with their preparation of their case. Consequently, the Santoros ask this Court to declare any privilege waived for failure to produce a privilege log and to compel the Town to produce the withheld communications and documents.

## PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS FROM DEFENDANTS

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), Plaintiffs SCLS Realty, LLC, and Sixty Three Johnston, LLC, move this Court for an order compelling Defendant Town of Johnston within ten calendar days to produce for examination all documents responsive to the Santoro Family's request for production of documents, which the Town has withheld under claims of privilege.

Pursuant to Fed. R. Civ. P.37(a)(5)(A), this Court should also require the Town to pay the Santoro Family's reasonable expenses incurred in making the motion, including attorney's fees.

## RULE 37 CERTIFICATION

In accordance with Fed. R. Civ. P. 37(a)(1), movants-plaintiffs certify that they have in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. *See* Declaration of Kathryn D. Valois (Valois Decl.).

3

## LOCAL RULE CV 7(c) STATEMENT

In accordance with LR Cv 7, counsel states that a hearing is requested, and estimates that 30 minutes (15 minutes per side) is sufficient.

## MEMORANDUM OF LAW

### I. FACTS

#### A. The Town's Actual Motive Is the Central Issue in Count I

This litigation arises from the Town of Johnston's unconstitutional and illegal attempt to take the Santoro Family's property by eminent domain. The key issue in Count I (Fifth Amendment Public Use Clause) is whether the Town's stated public use for the taking (development of a new municipal complex) is pretextual, and whether the Town's actual reason is to stop the Santoro Family from building affordable housing. *See* First Amended Complaint (Mar. 24, 2025) (ECF 18).

After the Court issued a temporary restraining order and a preliminary injunction requiring the Town to stop its eminent domain efforts until the adjudication of this case, the parties jointly produced the Joint Discovery Plan & Scheduling Order (June 17, 2025) (ECF 25), which set forth the case's discovery plan and was approved by this Court.

#### B. The Santoros Requested Documents Which May Reveal the Town's Motives and Actual Reasons for Eminent Domain

On August 26, 2025, the Santoro Family requested the Town produce records of communications among the Town's eminent domain decisionmakers, and between Town officials and others who were involved in the planning for new Town municipal buildings. *See* Second Request for Production of Documents (Aug. 26, 2025) (attached

as Exhibit A); Valois Decl. The Santoros also requested prior drafts of the Town's Resolutions and the current draft of the edit being made to the Town's Comprehensive Plan. *Id*. The documents would be relevant to the Town's actual reasons and motives for taking the Santoro Family property. *See id.*; Valois Decl.

The documents sought included:

1. All correspondence, reports, plans and other documents, whether in draft or final form with and between the Town of Johnston and Hoffman Engineering concerning the [Santoro Family's] Property.

2. Any and all internal notes, text messages, documents, emails or other communications concerning the December 9, 2024, meeting that occurred with Mayor Polisena, Jr., William Conley, Dennis DiPrete, Brian Thalmann, Doug Jeffrey, Dominique Turner and Stephen Marsella.

3. Any and all drafts or internal notes of ongoing changes being made to the Town of Johnston's existing Comprehensive Plan.

4. Any and all drafts of the Town's now existing Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18.

5. Any and all communications or documents between the Town and RIDEM concerning the construction of a municipal campus on the [Santoro Family's] Property.

6. Any and all correspondence between the Town Solicitor and a third party regarding the use of eminent domain over the [Santoro Family's] Property.

7.  Any and [all] correspondence between the Town and Thomas Andolfo.

Exhibit A at 2-5; Valois Decl.

### C. The Town Broadly Asserted Attorney-Client Privilege and the Work Product Doctrine

The Town's responded by expressly withholding broad categories of documents claiming they are protected by attorney-client privilege, attorney work product, and deliberative process privilege. *See* Response to Second Requests for Production by Defendant Town of Johnston (Sep. 25, 2025) (Exhibit B); Valois Decl. They asserted the same three broad objections to seven separate requests for production. *Id.*

First, the Town asserted attorney-client privilege for documents and communications with an appraiser (Thomas Andolfo), an environmental engineering firm (Hoffman Engineering), a state administrative agency (RIDEM), and anyone eminent domain was discussed with generally. *Id.* The Town responded to each request in the same way, objecting to the request because the Santoros sought "materials protected by the attorney-client privilege and the attorney work-product doctrine." *Id.* The Town alleged the attorney-client privilege extended to third-party communications because the Town Solicitor utilized those third parties (Hoffman Engineering, RIDEM, Thoman Andolfo, and others) to assist him in "rendering legal advice." *Id.*

Second, the Town asserted that any documents which the Town solicitor directly worked on are attorney work-product. *Id.* ("All such communications and materials, prepared at counsel's direction and in anticipation of litigation, are therefore protected both by the attorney-client privilege and independently as

6

attorney work product under Fed. R. Civ. P. 26(b)(3)."). It asserted this privilege even over documents the Santoros sought that the Town solicitor did not directly author. *Id*.

Finally, it asserted deliberative process privilege for current and past drafts of the three eminent domain resolutions and the Town's comprehensive plan. *Id*. ("This Court in *Doe v. Brown Univ.* [No. 23-cv-00376-MSM-LDA, 2025 WL 1930566, at *2-3 (D.R.I. July 14, 2025)] stated that a document qualifies for the deliberative process privilege if it is predecisional or antecedent to the adoption of agency policy and deliberative or actually related to the process by which policies are formulated. . . . The draft of the [Comprehensive Plan and Resolutions are] clearly predecisional and is a precursor to the to [sic] policy that ultimately will be created. The [T]own will not produce this privileged document.").

### D. The Town Has Not Provided a Privilege Log

The Town did not produce a privilege log detailing the specifics of the documents which the Town is withholding, to allow the Santoros to understand what these documents are, and the basis of the claim of privilege. Valois Decl. When a party asserts a privilege, it usually accompanies that assertion with a privilege log. However, the Town failed to provide the Santoro Family with a privilege log in response to their demand. Valois Decl.

## II. ARGUMENT

Without providing a privilege log, the Town has refused to disclose documents that could be highly relevant evidence of the Town's motive, wrongly asserting the

7

documents and communications are shielded by broad claims of privilege. The Santoros ask this Court to declare any claim of privilege waived for failure to produce a privilege log and order the Town to produce the withheld communications and documents,[2] or, in the alternative, to produce a privilege log detailing which documents are privileged and why.

A.   **Standard of Review**

If a party fails to produce requested documents, it may be compelled to do so. Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."). "The motion to compel is subject to a burden-shifting framework. The moving party bears the initial burden of showing that the requested information is relevant." "Relevance is construed broadly in the discovery context as 'any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.' The moving party also bears the burden of showing that the opposing party's response to their request is inadequate or incomplete." *Campaign Legal Center v. Iowa Values*, 710 F.Supp.3d 35, 46-47 (D.D.C. 2024) (internal citations omitted); *see also, Chr. Hansen HMO GMBH v. Glycosyn, LLC*, 733 F.Supp.3d 1, 4 (D. Mass. 2024) ("A party moving to

---

[2] The Santoros are also seeking sanctions in the form of attorneys' fees and waiver of privilege for having to prepare and file this motion after requesting and not being provided a privilege log. Fed. R. Civ. P. 37(a)(5)(A) ("If [a motion to compel] is granted —or if the disclosure or requested discovery is provided after the motion was filed— the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."); Valois Decl.

compel discovery bears the initial burden of showing the relevance of the information sought. Once the movant makes this showing, the burden shifts to the nonmoving party to show that the requested discovery is nonetheless improper.")

"After establishing relevance and incompleteness, 'the burden shifts to the party opposing discovery to show why the discovery should not be permitted.' Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel. The party opposing discovery must 'show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery.'" *Campaign Legal Center*, 710 F.Supp.3d at 46-47 (internal citations omitted). An incomplete answer or response is treated as a failure to respond. *Id*.

If the Court compels disclosure and the moving party has attempted "in good faith to obtain the disclosure or discovery without court action," Rule 37 requires "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "A trial court confronted by sanctionable behavior should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990). "Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime. Nevertheless, whichever purpose is to be served—and often, sanctions

are designed to serve some combination of the two prime purposes—the trial court's discretion in fashioning sanctions is broad." *Id.*

    **B.    The Documents the Town Refuses to Produce Are Relevant**

        **1. Communications between Town officials and third parties about eminent domain are relevant to this case**

The first factor—is the information sought broadly relevant to a claim or defense and proportional to the needs of the case—is plainly met. The information the Santoros sought as part of their Second Request for Production to the Town is highly relevant to the central issue in Count I: the Town's actual motivation for attempting to seize the Santoro Family's property.[3] *See Kelo v. City of New London*, 545 U.S. 469, 491 (2005) (Kennedy, J., concurring) ("A court applying rational-basis review under the Public Use Clause should strike down a taking that, by a clear showing, is intended to favor a particular private party, with only incidental or pretextual public benefits, just as a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications.").

---

[3] The Town was requested to produce correspondence and other documents from the Town's involvement with Hoffman Engineering, notes surrounding the Town and others December 9, 2024, meeting, notes and drafts of the changes being made to the Town's Comprehensive Plan, prior drafts of the Town's now existing Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18, communications and comments from the Town's involvement with RIDEM, and correspondence between the Town's Solicitor and any third party regarding the Town's attempted use of eminent domain over the Santoro property. Exhibit A at 2-5; Valois Decl.

Obtaining and reviewing the third-party communications between the Town and the third parties it met with to discuss eminent domain is even more essential now that the facts show that the Town's critical eminent domain decision likely occurred at a December 9, 2024, meeting between Town officials and DiPrete Engineering. *See* Deposition Transcript, Brian Thalmann, P.E. (Aug. 25, 2025) at 115:8 – 116:9, 119:2 – 119:20, 135:9 – 143:16 (Exhibit C); Deposition Transcript, Dennis DiPrete, P.E. (Aug. 26, 2025) at 148:20 – 154:7, 227:23 – 228:16 (Exhibit D); Valois Decl. All other subsequent decisions, including the Town's later meetings with Hoffman Engineering, RIDEM, Thomas Andolfo, and others flowed from this initial discussion, which makes the information shared on December 9, 2024, all the more critical to answering "why" the Town chose to exercise eminent domain. And that answer to "why" is at the very crux of the Santoros' case. This, coupled with Mayor Polisena, Jr.'s testimony that he decided to purposefully obfuscate the Town's eminent domain strategy so that his "opponents" the Santoro Family (his words) would not know what the Town was doing, makes it all the more important that the Santoros be allowed to peel back the curtain and view the information the Town has openly shared with others. *See* Deposition Transcript, Mayor Joseph M. Polisena Jr. (July 28, 2025) at 375:14 – 376:23 (Exhibit E); Valois Decl.

And that information necessarily includes any and all notes taken by any Town Officials, including the Mayor, Doug Jeffrey, and Dominique Turner at the December 9, 2024, meeting, where third parties were present. As well as subsequent communications with Hoffman Engineering, RIDEM, Thomas Andolfo, and other

11

third parties, with whom the decision to use eminent domain was discussed and planned.

### 2. Ongoing changes being made to the Town's Comprehensive Plan are relevant

Currently, the Santoros' property is designated as "targeted for large-scale affordable housing development." Town of Johnston, Rhode Island Comprehensive Plan (Jan. 2, 2007) (Exhibit F) at 484; Valois Decl. This designation in the Town's "vision document" heavily influenced the Santoros' decision to build affordable housing on their property. Deposition Transcript, Thomas Deller (July 24, 2025) at 45:24 – 47:21 (Exhibit G); Valois Decl.

However, during Town Planner Thomas Deller's deposition, the Santoros learned that the Town is currently in the process of amending its Comprehensive Plan. Exhibit G at 226:18 – 227:23, 285:3 – 288:13; Valois Decl. The Santoros believe this is being done to rid their property of its current "appropriate for low-to-moderate income housing" status. *Id.*; Valois Decl. If the Town is continuing to attempt and alter the Santoro Family's property's designation, that information is extremely relevant to the ongoing case, as it makes the Town's pretextual intent of using eminent domain to stop the Santoros from developing an affordable housing complex on their property all the clearer.[4]

---

[4] It might also violate this Court's Preliminary Injunction, which prohibits the Town from "undertaking any [ ] action that alters the status quo as of the date and time this Court enters [this] order." Preliminary Injunction Order (Apr. 2, 2025) (ECF 20).

### 3. Drafts of Resolutions 2025-10, 2025-17, and 2025-18 are relevant

Finally, obtaining earlier drafts of the Town's three eminent domain resolutions, Resolution 2025-10, Resolution 2025-17, and Resolution 2025-18, are relevant to the Santoros' case because they may be probative evidence to show when and why the Town arrived at its decision to exercise eminent domain, and by what procedures it was planning on doing so. This is relevant information to Counts I and VI (Lack of Delegated Eminent Domain Authority) because it will show how the Defendants concocted their eminent-domain-through-resolution process, which many deponents have admitted is not actual law. *See* Exhibit C at 64:16 – 64:24; Exhibit E at 145:2 – 145:21; Exhibit G at 160:19 – 161:18; Valois Decl.

In sum, the communications and documents among the Town Officials, the Town Solicitor, and relevant third parties, plus prior and future iterations of the Town's resolutions and Comprehensive Plan, all of which discuss the Santoro property and the Town's reasoning for seizing it, are relevant and necessary evidence by which the Santoros may break through the Town's wall covering its actual motives.

### C.   The Town's Second Production Is Inadequate

The Santoros easily satisfy the second factor – showing that the opposing party's response to their request is inadequate or incomplete – for the Town overtly stated that it "will not produce privilege documents." Exhibit B at 2-5; Valois Decl. And it did so without providing a privilege log. *See In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim"); *Corvello v. New England Gas Co.*, 243

13

F.R.D. 28, 33 (D.R.I. 2007) ("A failure by the party claiming privilege to adequately describe the documents at issue, to sufficiently explain the basis for the privilege, or to assert the privilege in a timely manner, may be grounds for rejecting the claim.").

Additionally, the documents that Town did produce TOJ 004134 – TOJ 004159 fail to fully meet the bounds of the Santoros' request. Exhibit B at 7-32; Valois Decl. Because, as the Town's own statements make clear, documents and communications are being withheld, without any explanation of why. *Id.* at 2-5 ("The Town will not produce these portions of privileged communications. . . . The [T]own will not produce privileged documents. . . . The [T]own will not produce this privileged document. . . . The [T]own will not produce these privileged documents. . . .The Town will not produce these portions of privileged communications. . . . The Town will not produce these privileged communications. . . . [T]he Town will not produce the requested communications.").

### D. The Town Cannot Meet Its Burden to Show That Producing the Documents and Communications Are Burdensome, Overly Broad, Vague, or Outside the Scope of Discovery

The Santoros have shown the sought communications and documents are both relevant and, in their current form, are inadequate. They have met their burden and the Town must explain to this Court why the Santoros' request is disproportionate to the needs of the case. *See DMO Norwood LLC v. Kia America, Inc.*, 691 F.Supp.3d 252, 257 (D. Mass. 2023) ("The party moving to compel 'bears the initial burden of showing the relevance of the information sought.' If the moving party makes a showing of relevance, the burden shifts to the objecting party to show that a discovery

14

request is improper.") (citing *Douglas v. EF Educ. First Int'l, Ltd.*, 344 F.R.D. 135, 138 (D. Mass. 2023)).

The Town cannot meet this burden because it has not provided a privilege log and without one cannot show a privilege applies.[5] *Corvello*, 243 F.R.D. at 32 (citing *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corporation)*, 348 F.3d 16, 22 (1st Cir. 2003)) ("One claiming privilege 'bears the burden of establishing that . . . [the privilege] applies to the communications at issue and that it has not been waived.'"); *Marx v. Kelley, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("[T]he assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim.").

### E. The Town Necessitated This Motion

The Town failed to support its claims of privilege with a privilege log. Valois Decl. Even after the Santoro Family requested a log, the Town refused to provide it. *See* Email, Re: Town of Johnston Response to Second RFPD (Oct. 6, 2025) (Exhibit H) ("To date, however, you have not produced a privilege log as required when

---

[5] The Santoros also believe that the Town's failure to provide a privilege log should result in a waiver of any and all privilege claims the Town has raised. *See U.S. v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43 (S.D.N.Y. 2009) ("[T]he consequence of serving a deficient privilege log may be the waiver of a privilege claim."); *Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan. 12, 2009) ("[F]ailure to provide a privilege log in a timely manner may result in a waiver[.]"); *Thelen Reid & Priest LLP v. Marland*, No. C 06-2071 VRW, 2007 WL 578989, at *10 (N.D. Cal. Feb. 21, 2007) ("The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege.").

asserting such privileges, and have not provided to us anything that would allow us to understand whether there is any legal or factual basis to support the Town's claims. Or even any way for us to understand whether documents responsive to our request even exist. Please provide us a privilege log as required not later than Thursday, October 9, 2025, at 5:00 p.m. Eastern Daylight Time, to support the Town's assertion of privilege."); Valois Decl. Lacking a privilege log, the Santoros have not been able to fully evaluate the Town's claims of privilege, or even understand what documents are being withheld.

This Court should require the Town to pay the fees and costs incurred in bringing this motion. as required by Fed. R. Civ. P. 37(a)(5)(A). *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F.Supp.3d 626, 639 (E.D. Mich. 2021) ("[T]he party who necessitated a motion to compel must ordinarily pay the moving party's attorney's fees and costs.").

### III.   CONCLUSION

The Santoro Family respectfully requests this Court issue an order compelling the Town to produce the withheld documents or at minimum to provide a privilege log. The Santoro Family also requests this Court require the Town to pay the reasonable attorneys fees and costs associated with preparing this motion.

DATED: October 9, 2025.

Respectfully submitted,

KELLEY M. SALVATORE
Mass. Bar No. 637885
R.I. Bar No. 6025
STACY W. THOMSEN
Cal. Bar No. 274282
Mass. Bar. No. 706742
R.I. Bar No. 10342
DarrowEverett LLP
1 Turks Head Pl., #1200
Providence, RI 02903
Telephone: (401) 453-1200
Fax: (401) 453-1201
ksalvatore@darroweverett.com
sthomsen@darroweverett.com

/s/ Kathryn D. Valois
KATHRYN D. VALOIS*
Fla. Bar No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Fax: (916) 419-7747
kvalois@pacificlegal.org

AUSTIN W. WAISANEN*
Wyo. Bar No. 8-7023
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
awaisanen@pacificlegal.org

ROBERT H. THOMAS*
Cal. Bar No. 160367
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
rthomas@pacificlegal.org

*Pro Hac Vice

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, a copy of the foregoing document was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

William J. Conley, Jr.
Mario Martone
Sarah F. O'Toole
Conley Law & Associates
123 Dyer Street, Suite 2B
Providence, RI 02903
wconley@conleylawri.com
mmartone@conleylawri.com
sotoole@conleylawri.com

*Counsel for Defendants*

                                                        s/Kathryn D. Valois
                                                        KATHRYN D. VALOIS
                                                        Pacific Legal Foundation