## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

SCLS REALTY, LLC; SIXTY THREE
JOHNSTON, LLC,

v.

TOWN OF JOHNSTON, RHODE ISLAND;
JOSEPH M. POLISENA, JR., in his capacity as
Mayor of the Town of Johnston; LINDA L.
FOLCARELLI, LAUREN GARZONE, ALFRED T.
CARNEVALE, ROBERT V. RUSSO, ROBERT J.
CIVETTI, in their official capacities as Members of
the Town Council of the Town of Johnston; and
VINCENT P. BACCARI, JR., in his official capacity
as Town Clerk of the Town of Johnston

CA No.: 1:25-cv-00088-MRD-PAS

## DEFENDANT TOWN OF JOHNSTON'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Defendant Town of Johnston, Rhode Island (the "Town") hereby submits this

memorandum of law in opposition to the Motion for Summary Judgment filed by Plaintiffs SCLS

Realty, LLC and Sixty-Three Johnston, LLC (together, the "Plaintiffs"). *See* ECF No. 42. For the

reasons that follow, this court should deny the Plaintiffs' Motion and dismiss this case.

## INTRODUCTION

Plaintiffs' motion asks this Court to invalidate a straightforward exercise of municipal

eminent domain power by rewriting Rhode Island law and reframing condemnation doctrine

through generalized due process principles. The Court should decline that invitation. The Town's

authority to condemn does not hinge on the Municipal Public Buildings Authorities Law, and

Plaintiffs' effort to treat that authority-specific financing statute as a mandatory, exclusive

condemnation code is contrary to the statute's text and Rhode Island precedent. Instead, the

Town's eminent domain power derives independently from its municipal charter—ratified by the

1

Rhode Island General Assembly—and is constrained by the constitutional limits of public use and just compensation under the Rhode Island and United States Constitutions.

Plaintiffs' due process theories fail for similar reasons. In condemnation proceedings, the Constitution does not require a pre-deprivation hearing, individualized notice, or contemporaneous payment as a condition precedent to a lawful taking; what due process and the Takings Clause require is an adequate opportunity to challenge the taking and a reasonable, certain, and adequate mechanism to obtain just compensation. Rhode Island law provides those protections, and Plaintiffs have exercised them here. Plaintiffs should not be allowed to convert a dispute over municipal authority or alleged deviations from state procedures into a federal substantive due process claim. The Fifth Amendment supplies the governing constitutional framework for takings, and even if substantive due process were in play, allegations of state-law error or procedural disagreement fall far short of the "conscience-shocking" substantive due process standard.

Finally, Plaintiffs' "temporary taking" theory rests on a mistaken premise that compensation must be paid at the moment of taking. It does not have to be. The relevant question is whether just compensation is made available through adequate procedures—and here the Plaintiffs not only have mechanisms available under Rhode Island law to obtain just compensation, but the Town also attempted to deposit the appraised amount into the Superior Court registry, which Plaintiffs opposed and the Parties ultimately agreed to unwind while this federal action proceeds. For the reasons that follow, this Court should deny the Plaintiffs' Motion.

## FACTUAL BACKGROUND

### A. The Town's Decision to Pursue a Municipal Campus

For years, the Town of Johnston (the "Town") has faced well-documented challenges stemming from the age, condition, and functional inadequacy of its core municipal facilities.

Several Town buildings are decades old and increasingly incapable of meeting modern operational demands, safety standards, and accessibility requirements necessary to serve the Town's residents effectively.   Town's Statements of Facts ("SUF") at ¶ 10; **SUF Exs. 7-9**, Town Council Resolutions 2025-10, 2025-17, 2025-18.

In response to these pressing and ongoing concerns, the Town undertook a deliberate process to evaluate options for consolidating and modernizing municipal operations. *Id.* at ¶¶ 33-78.  After studying available alternatives, the Town determined that development of a centralized municipal campus would best serve the public interest by improving efficiency, safety, and accessibility.  SUF at ¶¶ 38-39; **SUF Exs. 7-9**, Town Council Resolutions 2025-10, 2025-17, 2025-18.  The Plaintiffs' property—located at 178 and 200 George Waterman Road, Johnston Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 and Assessor's Plat 35, Lot 2—was identified as uniquely suited for that public purpose due to its location, size, and suitability for municipal use.  *Id.* at ¶ 48; **SUF Exs. 7, 9**, Town Council Resolutions 2025-10, and 2025-18.

### B.  <u>The Town's Charter Authority</u>

The Town is a Rhode Island municipal corporation operating pursuant to a municipal charter that was duly enacted by the Town and ratified by the Rhode Island General Assembly.  SUF at ¶¶ 1-2; **SUF Ex. 1**, R.I. P.L. 1963, ch. 187 Section 1-3 of the Town Charter expressly authorizes the Town to acquire property for public purposes, including by condemnation: "*The town may acquire property within* or without *its corporate limits for town purposes*, in fee simple or any lesser interest or estate, *by* purchase, lease, gift, devise or *condemnation within the town for public use*, and may hold, manage and control, and may sell, lease, and convey such property as its interests may require."  SUF at ¶ 3; **SUF Ex. 2**, Town Charter at ¶ 1-3 (emphasis added).  The Town's exercise of eminent domain authority is governed and constrained by the Rhode Island

Constitution and the United States Constitution, which require that any taking be for a public use and that just compensation be made available to the condemnees. R.I. Const. art. I, § 16; U.S. Const. amend. V.

At no time relevant to this action did the Town activate, operate through, or purport to act as a municipal public buildings authority under the Rhode Island Municipal Public Buildings Authorities Law ("MPBAL"), R.I. Gen. Laws §§ 45-50-1 et seq. The Town proceeded pursuant to its independent charter-based authority, consistent with long-standing municipal practice in Rhode Island, and constrained by the requirements of the United States and Rhode Island Constitutions.

## C. <u>Public Deliberation and Town Council Authorization</u>

The Town's consideration of acquiring Plaintiffs' Property by eminent domain occurred through open, public processes. The proposed acquisition was placed on publicly noticed Town Council agendas and discussed at multiple public meetings. SUF at ¶¶ 79, 85; *see* **SUF Exs. 27-28,** January 28, 2025 and March 10, 2025 Town Council Meeting Agendas, respectively.

On January 28, 2025, the Town Council considered the need for acquisition of the Property and adopted Resolution 2025-10, authorizing the Town to proceed with steps necessary to acquire the Property for public use. SUF at ¶¶ 79-84; **SUF Ex. 7,** Resolution 2025-10. This meeting was publicly noticed, and Plaintiffs' counsel attended the meeting within which the proposed condemnation was discussed, debated, and approved. *See* **SUF Ex. 27**, January 28, 2025 Town Council Meeting Agenda; **SUF Ex. 29,** Affidavit of William J. Conley, Esq.

On March 10, 2025, following further public discussion, the Town Council adopted Resolution 2025-17 and Resolution 2025-18, which formally authorized the exercise of eminent domain and set forth the process for acquiring the Property. SUF at ¶¶ 85, 88. This meeting was

publicly noticed, and Plaintiffs' counsel attended the meeting within which the proposed condemnation was discussed, debated, and approved. **SUF Ex. 28**, March 10, 2025 Town Council Meeting Agenda; **SUF Ex. 29,** Affidavit of William J. Conley, Esq.  At no point was the Town's consideration of the Property concealed from public view or undertaken outside established processes.

### D.  Execution and Recording of the Attempted Taking

Following the Town Council's authorization, on March 11, 2025, the Mayor of Johnston and the President of the Town Council executed a written description of the Property and a formal Statement of Taking.  SUF at ¶¶ 97.  On March 12, 2025, the Town Clerk recorded the resolutions, property description, and Statement of Taking in the Johnston Land Evidence Records.  SUF at ¶ 98.  The Town provided Plaintiffs with notice of the recorded documents.  **SUF Ex. 28**, Proof of Service.

### E.  The Town's Efforts to Provide Just Compensation

Based on an appraisal conducted by a Rhode Island state-certified real estate appraiser retained by the Town, on March 12, 2025—the same day the Statement of Taking was recorded— the Town filed a petition in the Rhode Island Superior Court seeking authorization to deposit the appraised amount of just compensation, $775,000, into the registry of the court for Plaintiffs' benefit.  SUF at ¶ 100.  The Superior Court granted the petition on March 14, 2025, and the Town deposited the appraised amount into the court registry to be held as just compensation for the taking. *Id.* at 102.

Rather than accepting the court-supervised compensation mechanism, Plaintiffs promptly challenged the Town's actions in court.  On March 17, 2025, Plaintiffs filed an emergency motion in the Superior Court seeking reconsideration or vacatur of the order authorizing the deposit of

funds. *Id.* at ¶ 105. On March 25, 2025, the parties entered into a stipulation dismissing the Superior Court proceeding without prejudice, pursuant to which the deposited funds were released back to the Town pending resolution of this action. *Id.* at ¶ 107. As a result of Plaintiffs' litigation efforts, title and possession of the Property were restored pending judicial determination of Plaintiffs' claims. **SUF Exs. 35, 36**.

## STANDARD OF REVIEW

Summary judgment is an extraordinary remedy and is appropriate only where the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must view the entire record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Flaherty v. Entergy Nuclear Operations, Inc*., 946 F.3d 41, 53 (1st Cir. 2019).

This standard imposes a demanding burden on the movant. The Court may not weigh evidence, assess credibility, or resolve competing factual inferences; those functions are reserved for the factfinder. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). That restraint is especially important where, as here, the moving party seeks judgment on constitutional claims and claim that context, intent, and the reasonableness of governmental action are allegedly relevant to those inquiries. At this stage, the Court's task is not to decide whose narrative is more persuasive, but to determine whether Plaintiffs have carried their burden to show that no reasonable factfinder could resolve the disputed issues in the Town's favor. Because the record must be construed in the Town's favor, and because Plaintiffs bear the burden of eliminating all genuine disputes, summary judgment is not warranted.

**ARGUMENT**

I.  **PLAINTIFF'S ULTRA VIRES TAKING CLAIM FAILS BECAUSE THE TOWN POSSESSED CLEAR AND INDEPENDENT AUTHORITY TO EXERCISE ITS EMINENT DOMAIN POWERS.**

   a.  **The Town's Eminent Domain Authority Derives from its Charter and is Limited Only by the Requirements of the United States and Rhode Island Constitutions.**

Plaintiffs' motion for summary judgment rests on a fundamental legal error: the assumption that the Town's authority to exercise eminent domain is governed by the statutory scheme on which Plaintiffs rely. It is not. Plaintiffs' argument ultimately seeks to convert the Municipal Public Buildings Authority Law—an optional, authority-specific enabling statute—into a universal condition precedent on municipal condemnation power. Rhode Island law recognizes no such inversion.

The Town's power to take property by eminent domain derives directly from the Town's municipal charter—which was duly enacted by the Town and ratified by the Rhode Island General Assembly—and is limited by the public purpose and just compensation requirements enumerated in the Rhode Island and United States Constitutions. *See* **SUF Ex. 2,** Town Charter at ¶ 1-3; R.I. Const. Art. I, Sec. 16; U.S. Const. amend. V. Together, these sources independently authorize and place limits on the Town's ability to acquire property for public purposes through eminent domain.

Specifically, Section 1-3 of the Town Charter provides legal authority for the Town to exercise its eminent domain powers: "*The town may acquire property within* or without *its corporate limits for town purposes*, in fee simple or any lesser interest or estate, *by* purchase, lease, gift, devise or *condemnation within the town for public use*, and may hold, manage and control, and may sell, lease, and convey such property as its interests may require." Town Charter at ¶ 1-

3 (emphasis added).  Notably, the Town Charter, including its eminent domain provision which has remain unchanged since 1962, was ratified by the Rhode Island General Assembly:

> In all other respects in which said Johnston charter may require ratification, confirmation, validation or enactment by the general assembly, but in no other respects, the provisions of said Johnston charter are hereby ratified, confirmed, validated, and enacted.  Any act or thing heretofore done or purported to be done under the provisions of said charter is hereby ratified and confirmed.

R.I. P.L. 1963, ch. 187 ¶ 2; SUF at ¶ 4.

Importantly, municipal charters ratified by the General Assembly carry the force of law and constitute an independent grant of authority.  *See Foster Glocester Reg'l Sch. Bldg. Comm. v. Sette,* 996 A.2d 1120, 1125-26 (R.I. 2010) (finding that a charter ratified by the General Assembly prevails over an inconsistent provision of a law of statewide application).  Additionally, where the General Assembly ratifies a municipal charter as a whole, that ratification constitutes express legislative approval of the charter's individual provisions.  *See Purcell v. Johnson*, 297 A.3d 464, 469 (R.I. 2023) ("Ratification of a charter as a whole by the General Assembly has been sufficient to expressly ratify a provision of the charter."); *see also id.* ("We 'presume[] that the General Assembly knows the state of existing relevant law when it enacts or amends a statute.'").  Where, as here, a charter expressly authorizes the exercise of eminent domain, the municipality is not required to trace that authority to—or condition it upon compliance with—unrelated statutory frameworks designed to govern different entities or circumstances.  *See id.* at 472; *see also Sette,* 996 A.2d at 1125-26.

Most importantly, the Town's exercise of eminent domain is limited by the provisions of the Rhode Island and United States Constitution.  Article I, section 16 of the Rhode Island Constitution states that "private property shall not be taken for public uses, without just compensation."  *See* R.I. Const. Art. I, ¶ 16.  Notably, the Rhode Island Supreme Court has applied

the Rhode Island Constitution's limitations on eminent domain authority—i.e., (1) that a taking be

for a public purpose, and (2) that just compensation be provided—to municipalities. *See e.g.*, *Sun-*

*Lite P'ship v. Town of W. Warwick*, 838 A.2d 45, 46 (R.I. 2003) (analyzing the town's

condemnation under the Rhode Island Constitution); *see also R.I. Econ. Dev. Corp. v. Parking*

*Co., L.P.*, 892 A.2d 87, 96 (R.I. 2006) (noting that the exercise of "eminent domain authority…is

limited by the Constitution. In fact, both the United States Constitution and the Rhode Island

Constitution place restrictions on its exercise.").   Similarly, the Town's exercise of eminent

domain is limited by the United States Constitution, which imposes identical requirements that a

taking be for a public use and that the condemnee be provided just compensation.  U.S Const.

amend. V

Plaintiffs do not dispute that the Town's charter confers eminent domain authority and that

the Rhode Island and United States Constitutions place limitations on that power—nor could they.

Instead, they attempt to subordinate that authority to a statutory scheme that simply does not apply

to the Town.  That effort finds no support in Rhode Island law.  The existence of a separate

statutory mechanism for other municipal actors does not displace, limit, or impliedly repeal the

Town's charter-based authority to act.  Accordingly, Plaintiffs' motion fails at the threshold

because it is premised on the wrong source of law.

### b.  <u>The Municipal Public Buildings Authorities Law that Plaintiffs' Invoke Does Not Apply to the Town.</u>

#### i.  <u>The Municipal Public Buildings Authorities Law Does Govern, Limit or Condition the Town's Exercise of Eminent Domain.</u>

Plaintiffs' statutory argument rests on a fundamental misreading of Rhode Island law.

They contend that the Town's condemnation is invalid because it did not proceed under the Rhode

Island Municipal Public Buildings Authorities Law ("MPBAL"), R.I. Gen. Laws §§ 45-50-1 *et seq.  See* Pl.'s Motion at 31-35.  That contention fails as a matter of law.

The MPBAL does not purport to regulate, restrict, or condition a municipality's independent exercise of eminent domain authority.  Rather, by its plain language, the statute creates a *separate public instrumentality*—the "municipal public buildings authority"—and provides a *supplemental, optional mechanism* through which an authority may finance and deliver certain municipal projects. [1]  *See* R.I. Gen. Laws §§ 45-50-2, 45-50-3(a), 45-50-29; *see also Root v. Providence Water Supply Bd.*, 850 A.2d 94, 98 (R.I. 2004) (explaining that the MPBAL's purpose is "to afford each municipality an alternate financing and administrative mechanism to proceed with certain types of public-building projects.").  Because the Town's condemnation of Plaintiffs' property is not limited by or pursuant to the MPBAL, Plaintiffs' claim under this statute is inapposite and provides no basis to either invalidate the taking or to support Plaintiffs' substantive due process claim.

    ii.   <u>The Municipal Public Buildings Authorities Law Establishes a Legally Distinct Authority and an Alternative Financing Framework; it Does Not Displace Municipal Condemnation Authority.</u>

The structure and purpose of the MPBAL confirm that it was never intended to function as a mandatory or exclusive source of eminent domain authority for municipalities.

---

[1] Notably, the MPBAL has been applied in Rhode Island case law in litigation where a municipal public building authority is the named defendant.  *See e.g.*, *Mitola v. Providence Pub. Bldgs. Auth.*, 273 A.3d 618 (R.I. 2022); *Gorham v. Public Bldg. Auth.*, 612 A.2d 708 (R.I. 1992); *Mitola v. Providence Pub. Bldgs. Auth.*, 2024 R.I. Super. LEXIS 68, at *1 (R.I. Super. Aug. 16, 2024); *Mitola v. Providence Pub. Bldgs. Auth.*, 2019 R.I. Super. LEXIS 112, at *1 (R.I. Super. Sep. 12, 2019); *Mitola v. Providence Pub. Bldgs. Auth.*, 2016 R.I. Super. LEXIS 222, at *1 (R.I. Super. Mar. 1, 2016); *Providence Pub. Bldgs. Auth. v. Mitola*, 2009 R.I. Super. LEXIS 94, at *1 (R.I. Super. July 31, 2019); *see also*, *Root v. Providence Water Supply Bd.*, 850 A.2d 94 (R.I. 2004) (appealing from *Gorham v. Public Building Authority case,* wherein the Providence public buildings authority was a named defendant). The Town is unaware of any case where the MPBAL has been applied against a municipality exercising its eminent domain authority to take land for a public purpose pursuant to its charter-based authority.

The Legislature expressly declared that the MPBAL was enacted to enable "the implementation of alternative financing techniques" for public facilities, particularly through the issuance of authority revenue bonds payable from lease revenues. R.I. Gen. Laws § 45-50-3(a). To that end, the statute empowers *the authority*—not the municipality—to acquire, construct, and finance public facilities and to lease those facilities back to the municipality. *See id*. § 45-50-10(a)(1); §§ 45-50-14 through 45-50-17.

Consistent with that design, the statute provides that the authority is "an instrumentality and agency of the city or town, but has a distinct legal existence[2] from the city or town." *Id.* at § 45-50-2 (emphasis added). That distinction is critical. The MPBAL does not transform municipal action into authority action, nor does it impose authority-specific procedures on municipalities acting pursuant to independent sources of eminent domain power.

Plaintiffs' theory would collapse this distinction entirely, effectively converting the MPBAL from an enabling statute for authority-based financing into a universal procedural code governing all municipal public-building takings. Nothing in the statute supports such a reading, and Rhode Island law does not permit it.

       iii.  <u>The Municipal Public Buildings Authorities Law Only Applies When an Authority has Been Activated and is Exercising its Powers Under the Chapter.</u>

The MPBAL itself forecloses Plaintiffs' argument by expressly limiting its application to projects undertaken by an activated municipal public buildings authority.

The MPBAL states that an authority "shall not transact any business or exercise any powers under this chapter, unless and until" the town council declares the need for the authority and the Public Finance Management Board approves its creation. R.I. Gen. Laws § 45-50-3(d). These

---

[2] Plaintiffs' theory would erase the legislature's express choice to create a separate entity with separate prerequisites and substitute it for municipal action undertaken under independent authority.

statutory prerequisites are not procedural hurdles that municipalities must clear before exercising eminent domain generally; they are conditions precedent to an authority's ability to act under the MPBAL.

Here, the Town did not activate a municipal public buildings authority, did not purport to act through such an authority, and did not exercise any powers "under this chapter." Instead, the Town proceeded pursuant to its independent eminent domain authority derived from its municipal charter (ratified by the General Assembly), duly enacted Resolutions, and applicable constitutional limitations. Plaintiffs do not—and cannot—identify any provision of the MPBAL that purports to govern municipal takings undertaken outside the authority framework.

Indeed, the statute expressly provides the opposite. Section 45-50-29 states unequivocally that the MPBAL "shall be construed to provide a *complete, additional, and alternative method for doing the things authorized by this chapter*" and "shall be regarded as *supplemental and in addition to the powers conferred by other laws*." R.I. Gen. Laws § 45-50-29 (emphasis added). That language is fatal to Plaintiffs' position. A statute that is "additional," "alternative," and "supplemental" cannot be recast as a mandatory or exclusive procedural regime that nullifies municipal action taken under independent authority. Courts do not interpret statutes in a manner that renders express statutory language meaningless. See *Zarrella Tr. v. Town of Exeter*, No. WC-15-0218, 2016 R.I. Super. LEXIS 80, at *9 (Super. Ct. July 19, 2016).

Because the Town's condemnation was undertaken pursuant to its independent municipal authority—not by a municipal public buildings authority operating under the MPBAL—Plaintiffs' statutory challenge fails as a matter of law and cannot support summary judgment.

## II.    PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.

### a.   Condemnees are not Entitled to a Pre-Deprivation Hearing or Notice.

Plaintiffs' Motion attempts to transform a lawful exercise of eminent domain into a procedural due process violation by invoking general notice-and-hearing principles untethered from condemnation jurisprudence. That effort fails.

While it is undisputed that Plaintiffs possessed a protected property interest, the Supreme Court has long recognized that the procedures required by due process vary by context, and that takings for public use occupy a distinct constitutional category. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (noting that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances…Due process is flexible and calls for such procedural protections as the particular situation demands." (internal quotations omitted)); *Rhode Island Economic Development Corp. v. The Parking Co., L.P.,* 892 A.2d 87, 102 (stating that the "Due Process Clause does not guarantee a property owner any particular form or method of state procedure").

In the eminent domain context specifically, Rhode Island and federal courts have consistently held that a pre-deprivation hearing is not constitutionally required, so long as the property owner has access to adequate post-deprivation remedies to contest the taking and seek just compensation. *See Rex Realty Co. v. City of Cedar Rapids*, 322 F.3d 526, 529 (8th Cir. 2003) ("[I]t is well settled that a sovereign vested with the power of eminent domain may exercise that power consistent with the Constitution without providing prior notice, hearing, or compensation, so long as there exists an adequate mechanism for obtaining compensation."); *Paiva v. Providence Redevelopment Agency*, 356 A.2d 203, 206 (R.I. 1976) ("This court has held that the right to a hearing attaches only to the deprivation of an interest encompassed within the fourteenth

amendment and that the right to a hearing prior to the taking of property by eminent domain is not such a right"); *PFZ Props., Inc. v. Rodríguez*, 928 F.2d 28, 31–32 (1st Cir. 1991) ("When a deprivation of property results from conduct of state officials violative of state law, the Supreme Court has held that failure to provide pre-deprivation process does not violate the Due Process Clause." (citing *Parratt v. Taylor*, 451 U.S. 527, 543 (1980)); *see also Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 677 (1923); *Remington Realty Co. v. City of Providence*, 151 A.2d 376, 378–79 (R.I. 1959).

Rhode Island courts have applied this principle directly.  For example, in *Golden Gate Corp. v. Sullivan*, the Rhode Island Supreme Court rejected the claim that due process requires a pre-deprivation hearing before the government may take possession of property by eminent domain.  112 R.I. 641, 643 (R.I. 1974).  Specifically, the court explained "the right to a hearing before the taking of private property by eminent domain is not a right encompassed within the fourteenth amendment," and declined to find a takings statute unconstitutional for failing to contain language requiring a pre-deprivation hearing.  *Id.* at 644; *see also R.I. Econ. Dev. Corp. v. Parking Co., L.P.*, 892 A.2d 87, 98 (R.I. 2006) (same).  The Rhode Island Supreme Court reaffirmed that principle a few years later in *Paiva v. Providence Redevelopment Agency*, 356 A.2d 203, 206 (1976), where it stated: "This court has held that the right to a hearing attaches only to the deprivation of an interest encompassed within the fourteenth amendment and that the right to a hearing prior to the taking of property by eminent domain is not such a right."  *Id.*  The court also went a step further finding that the property owner was similarly not entitled to individual notice of the pre-deprivation hearing.  *Id.*  Recently, in *Providence Public Buildings Authority v. Mitola*, the Superior Court reaffirmed and expanded on these principles, explaining that "in the eminent domain context, fair notice is not necessary to guide property owners between lawful and

14

unlawful conduct."  2009 R.I. Super. LEXIS 94, at *21; *see also R.I. Econ. Dev.*, 892 A.2d at 99 (explaining that "a pre-deprivation hearing is not required in an eminent domain proceeding" and that eminent domain "is a sovereign right that is limited in only two ways: (1) the condemnation must be for a public use, and (2) payment of just compensation.").

Similarly, with respect to Plaintiffs' claim that notice is required, such claim fails as a matter of law.  *See Izzo v. Victor Realty*, 132 A.3d 680, 688 (R.I. 2016) (explaining that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." (quoting *Jones v. Flowers*, 547 220, 226 (2006)); *Rex Realty*, 322 F.3d at 529 (holding that pre-deprivation notice is not required).

### b. Although the Law is Clear that Pre-Deprivation Notice Is Not Required, the Plaintiffs Had Notice of the Town's Attempted Taking.

Moreover, the undisputed record establishes that Plaintiffs in fact received notice of the attempted taking.  First, the Town's consideration of the Plaintiffs' Property was discussed openly at publicly noticed Town Council meetings, with the proposed action reflected on the meeting agendas.  SUF at ¶ 79; **SUF Exs. 27-28,** Agendas.  On January 28, 2025, the Town Council considered and adopted Resolution 2025-10 addressing the Town's intent to proceed with condemnation, and on March 10, 2025, the Town Council considered and adopted Resolutions 2025-17 and 2025-18 setting forth the formal process by which the Town would acquire the property through eminent domain.  SUF at ¶¶ 80, 86, 89.  Importantly, Plaintiffs' counsel attended both the January 28, 2025 and March 10, 2025 Town Council meetings, at which the proposed condemnation of the Plaintiffs' Property was discussed, debated, and ultimately approved. SUF at ¶ 79; **SUF Ex. 29,** Conley Affidavit.

Additionally, on March 14 2025, Plaintiffs' received notice of the Town's attempt to take the Property by eminent domain via letter sent to the Plaintiffs' attorney explaining that the Town

had recorded the Statement of Taking in the Land Evidence Records and filed a petition in the Rhode Island Superior Court to deposit the funds for the benefit of the Plaintiffs as just compensation. **SUF Ex. 30,** Proof of Service. Plaintiffs therefore cannot credibly claim that they lacked notice of the Town's intended course of action or were "kept in the dark" about the potential condemnation of their Property.

\* \* \*

Ultimately, the above authorities foreclose Plaintiffs' categorical assertion that "the minimum procedures required are a pre-deprivation notice, and a hearing" in every case. *See* Pls.' Mot. at 66. Plaintiffs' reliance on broad statements from forfeiture and prejudgment seizure cases—such as *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) and *Fuentes v. Shevin*, 407 U.S. 67 (1972)—does not alter the analysis, because those cases arise in doctrinal contexts distinct from eminent domain, where the constitutional guarantee of just compensation and post-deprivation judicial remedies provides the core procedural protection. *Compare with Joslin*, 262 U.S. at 677; *Remington*, 151 A.2d at 378–79.

As Rhode Island courts have recognized, due process in condemnation is satisfied where the condemnee is afforded an opportunity to challenge the taking. *R.I. Econ. Dev.,* 892 A.2d at 102. The Supreme Court has explained that "[a] landowner who believes that the state or other governmental body has no authority to initiate condemnation proceedings, or that the taking is not for a public use has two avenues of judicial review." *Id.* One such avenue includes that, "in a collateral proceeding, a property owner may seek declaratory or injunctive relief to restrain an eviction or test the validity of the condemnation." *Id.* Plaintiffs did just that in this case by filing the instant lawsuit. Accordingly, Plaintiffs' procedural due process theory fails as a matter of law and cannot support summary judgment.

III.  **PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.**

Plaintiffs' Motion devotes substantial attention to characterizing the Town's condemnation as "arbitrary," "oppressive," and "conscience-shocking," and Plaintiffs' substantive due process theory is premised on the assertion that the Town acted without lawful authority and outside required procedures.  As a matter of constitutional doctrine, Plaintiffs' substantive due process theory fails for several independent reasons: (1) the Takings Clause provides the exclusive constitutional framework governing the conduct at issue, and (2) even if substantive due process applied, Plaintiffs' allegations fall far short of the extraordinarily demanding "conscience-shocking" standard where the Town had charter-based authority to effectuate the taking and complied with all requirements imposed by federal and state law.

   a.  **Supreme Court Precedent Forecloses Substantive Due Process Where a More Specific Constitutional Provision Applies.**

Substantive due process is not an open-ended vehicle for constitutionalizing disputes over governmental action.  The United States Supreme Court has repeatedly instructed that where a plaintiff's claim is governed by a more specific constitutional provision, "that Amendment, not the more generalized notion of substantive due process, must be the guide." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994).

That principle is dispositive here.  Plaintiffs challenge the Town's taking of their property and the manner in which that taking occurred.  The Fifth Amendment's Takings Clause—and its Rhode Island constitutional analogue—supply the precise constitutional standard for evaluating the lawfulness of a taking.  Plaintiffs therefore may not repackage their dissatisfaction with the condemnation process as a substantive due process claim.  *See Stop the Beach Renourishment, Inc.*

*v. Fla. Dep't of Envt'l. Prot.*, 560 U.S. 702, 721 (2010) ("The first problem with using substantive

due process to do the work of the Takings Clause is that we have held it cannot be done.").

Federal courts routinely reject attempts to layer substantive due process on top of a takings

claim. *See, e.g., Esplanade Props., LLC v. City of Seattle*, 307 F.3d 978, 982 (9th Cir. 2002)

(Takings Clause provides the "explicit source of constitutional protection" for condemnation-

based claims); *Thomas v. City of Detroit*, No. 06-11753, 2007 U.S. Dist. LEXIS 13520, at *26–28

(E.D. Mich. Feb. 29, 2007) ("[t]he takings clause itself addresses whether and under what

circumstances the government may take an individual's property, which is why a number of other

circuits have concluded that no room is left for the concept of substantive due process."). Allowing

Plaintiffs to proceed under substantive due process would improperly expand the doctrine and

circumvent the constitutional provision specifically designed to govern property deprivations. For

this reason alone, Plaintiffs' substantive due process claim cannot support summary judgment.

**b. Even If Substantive Due Process Applied, Plaintiffs Cannot Satisfy the "Conscience-Shocking" Standard**

Even assuming arguendo that Plaintiffs could invoke substantive due process alongside

their takings theory, their claim still fails as a matter of law. The First Circuit has emphasized—

"with a regularity bordering on the monotonous"—that substantive due process liability attaches

only to conduct that is truly conscience-shocking. *Mongeau v. City of Marlborough*, 492 F.3d 14,

19–20 (1st Cir. 2007); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

This standard is intentionally exacting. Substantive due process is reserved for "stunning,"

"outrageous," or "egregiously unacceptable" conduct—something far more than disputed legal

authority, alleged procedural irregularities, hard-fought political disagreement, or allegations that

government actions were motivated by an improper purpose. *Amsden v. Moran*, 904 F.2d 748,

754 (1st Cir. 1990); *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 264 (D.R.I. 2009) (substantive due

process relief is reserved for "truly horrendous situations"); *Skiles v. City of Reading*, 449 F. App'x 153, 157–58 (3d Cir. 2011) ("Indeed, we have merely recognized that land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with improper motives."); *Brandywine Village Associates v. East Brandywine Township,* 2020 U.S. Dist. LEXIS 167350, at *1, *21 (E.D. Pa. Sept. 14, 2020) ("A government action motivated by an 'improper purpose' or taken in bad faith does not necessarily 'shock the conscience'; rather, the action must bear no reasonable relation to legitimate government objectives.").

Notably, courts are particularly reluctant to apply substantive due process in the land-use and condemnation context, where doing so would convert federal courts into super-boards of review over local decision-making. *See Skiles*, 449 F. App'x at 157–58 ("In the zoning and land use context, the 'shocks-the-conscience' standard is 'designed to avoid converting federal courts into super zoning tribunals.'"); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) ("substantive due process is not the appropriate avenue of relief for most landowner complaints, and that, with rare exceptions, takings clause jurisprudence cannot be circumvented by artful pleading of substantive due process claims." (internal quotations omitted)); *see also Kelo v. City of London*, 545 U.S. 469 (2005) ("We give considerable deference to legislatures' determinations about what governmental activities will advantage the public.").

Ultimately, as courts have repeatedly explained, allegations of improper motive, political hostility, or even bad faith do not suffice for purposes of pleading a valid substantive due process claim unless the challenged action bears no reasonable relationship to a legitimate governmental objective or involves extreme misconduct such as corruption, self-dealing, or discrimination. *See*

*Brandywine*, 2020 U.S. Dist. LEXIS 167350, at *21–22.  Because none of that exists here, Plaintiffs' substantive due process claim fails.

### c.  <u>Alleged Lack of Authority or Violation of State Law Does Not Transform a Condemnation Dispute into a Substantive Due Process Violation</u>

Plaintiffs' substantive due process theory ultimately rests on the following premise: that the Town allegedly lacked authority to exercise eminent domain and acted arbitrarily by proceeding with condemnation through procedures Plaintiffs contend were contrary to state law. As explained above in Section I *supra*, the Town complied with and acted pursuant to the authority delegated by its Town Charter ratified by the Rhode Island General Assembly, and pursuant to the constitutional limitations imposed by the Rhode Island Constitution and United States Constitution.  Thus, the contention that the Town lacked authority is patently false.  However, even accepting Plaintiffs' characterization for purposes of argument, allegations that a municipality lacked authority to exercise eminent domain or violated state law do not give rise to a substantive due process violation.

The United States Supreme Court, First Circuit and other federal courts have made clear that a violation of state law does not give rise to a federal due process claim.  *See Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that a mere error of state law is not a denial of due process." (internal quotations omitted)); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal Constitution."); *Hebert v. Louisiana*, 272 U.S. 312, 316 (1926) ("The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several states and make them the test of what it requires . . . ."); *Barrington Cove, Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) ("It is bedrock law in this circuit … that violations of state law—even where arbitrary, capricious, or undertaken in bad faith—do not, without more, give rise to a denial of substantive

due process under the U.S. Constitution." (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992)); *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990) ("Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process."); *see also Ind. Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 699 (7th Cir. 2024) (finding property owners could not "transform" their objection to a condemnation "into a substantive due process claim."). The reason for this is simple—"the Supreme Court itself has been chary about invoking the 'shock the conscience' test, lest all policymaking at the state level become routine grist for substantive due process litigation in the federal courts." *Barrington Cove*, 246 F.3d at 7; *see also Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

Here, Plaintiffs' asserted 'lack of authority' argument is simply a disagreement with the Town's charter-based power and the inapplicability of MPBAL. That dispute is wrong for the reasons set out in Section I *supra*, and, regardless, is not the sort of extreme misconduct—corruption, self-dealing, discrimination, or abuse untethered to any governmental objective—that could plausibly satisfy the conscience-shocking standard. Because Plaintiffs' premise fails (the Town had charter authority), their substantive due process claim collapses at the threshold; and even if Plaintiffs could show some arguable state-law defect, that still would not equal a federal substantive due process violation.

## IV.  PLAINTIFFS' TEMPORARY TAKING CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs contend that the Town's brief assertion of title and possession effected a compensable "temporary taking" for which liability attaches as a matter of law. That argument fails because the Fifth Amendment does not require just compensation to be paid contemporaneous

with the taking; instead, the just compensation requirement is satisfied by the availability of adequate compensation procedures.

> ### a. The Takings Clause Is Satisfied Where the Government Provides an Adequate Mechanism for Just Compensation.

At the outset, Plaintiffs' temporary takings theory rests on a fundamental misunderstanding of takings law. The Fifth Amendment does not require the government to pay just compensation at the moment property is taken, nor does it require advance payment as a condition precedent to a lawful taking; to the contrary, it has long been settled—by the United States Supreme Court and Rhode Island Supreme Court—that a taking satisfies constitutional requirements so long as the government has, at the time of the taking, established reasonable, certain, and adequate procedures by which the property owner may obtain just compensation. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, (1985) ("Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." (internal quotations omitted)); *Knick v. Twp. of Scott*, 588 U.S. 180, 202 (2019) (finding that post-taking compensation remedies are generally sufficient to satisfy the constitutional requirement, and barring government action in the absence of contemporaneous compensation is typically not appropriate); *Newport v. Newport Water Corp.*, 189 A. 843, 844 (R.I. 1937) ("Where the taking is by or for the state or one of its municipal corporations, it is not essential that payment should first be made before taking by condemnation, if an adequate and certain remedy for payment is provided against the state or municipality.")

As the United States Supreme Court recently explained in *DeVillier v. Texas*, the availability of a state inverse-condemnation cause of action is sufficient to satisfy the just compensation requirement because such a cause of action provides the property owner with a

means to obtain just compensation.  *See* 61 U.S. 285, 286 (2024).  Rhode Island law provides the Plaintiffs with the ability to assert an inverse-condemnation claim and, thus, the Takings Clause is satisfied.  *Id.*; W*illiamson Cty.*, 473 U.S. at 194; *Knick*, 588 U.S. at 202.

**b.  <u>The Town Attempted to Make Just Compensation Available to the Plaintiffs, Which They Rejected.</u>**

Although not required, the undisputed record establishes that the Town attempted to provide just compensation to the Plaintiffs contemporaneous with the taking.  The relevant facts are straightforward and undisputed.

On January 28, 2025, and again on March 10, 2025, the Johnston Town Council adopted resolutions authorizing the taking of Plaintiffs' property for public use.  SUF at ¶¶ 80, 86, 89.  On March 11, 2025, a written description of the property and a formal statement of the taking were executed by the Mayor of Johnston and the President of the Town Council.  *Id.* at ¶ 98. On March 12, 2025, the Town Clerk duly recorded the resolutions, description, and statement of taking in the Town's land evidence records. *Id.* at ¶ 99.

Based on an appraisal conducted by a Rhode Island state-certified real estate appraiser retained by the Town, also on March 12, 2025, the Town filed a Petition to deposit the full amount of just compensation into the registry of the Superior Court in order to complete the taking.  *Id.* at ¶ 99.  The Superior Court allowed that motion on March 14, 2025, and the Town deposited the appraised amount—$775,000—into the court's registry to be held for the benefit of Plaintiffs as just compensation for the intended taking.  *Id.* at ¶ 103.  Therefore, on the same day as the taking documents were recorded in the Town's land evidence records, the Town initiated procedures to provide the Plaintiffs with just compensation required by law.

However, on March 17, 2025, the Plaintiffs filed an emergency motion in the Superior Court seeking reconsideration or vacatur of the order authorizing the deposit.  *Id.* at 106.  Later,

23

on March 25, 2025, the parties entered into a stipulation of dismissal of the Superior Court action, pursuant to which the funds deposited in the registry were released back to the Town pending the resolution of this federal court action.  *Id.* at ¶ 108.

These facts also defeat Plaintiffs' claims. Once again, the Fifth Amendment does not require a municipality to tender payment directly to a landowner who has elected to challenge the taking in court.  To the contrary, depositing compensation into the court registry while litigation is pending is a well-established and constitutionally sufficient mechanism for ensuring that compensation is available.  *See e.g.*, *United States v. 0.707 Acres of Land*, No. l:07-CV-851, 2010 U.S. Dist. LEXIS 111446, at *5 (E.D. Tex. Sep. 16, 2010); *United States v. 74.57 Acres*, No. 12-0239-WS-N, 2012 U.S. Dist. LEXIS 51441, at *5 (S.D. Ala. Apr. 11, 2012).  The Town deposited the just compensation amount in the Superior Court Registry for the benefit of the Plaintiffs, and the Plaintiffs challenged the Town's actions and moved for the court to vacate its decision and return the funds to the Town.  As a result of the above facts, Plaintiffs cannot credibly claim that the Town took their Property without providing just compensation.

## <u>CONCLUSION</u>

For all of these reasons, Plaintiffs' motion for summary judgment should be denied.  The Town possessed clear and independent eminent domain authority under its charter and the Rhode Island and United States Constitutions, and Plaintiffs' reliance on the MPBAL is legally misplaced because that statute creates a distinct authority and provides an additional, alternative financing mechanism—not a mandatory condemnation regime governing municipal takings undertaken under separate authority.

Plaintiffs' procedural due process claim also fails because the Constitution does not require a pre-deprivation hearing or individualized notice in eminent domain so long as adequate post-

deprivation remedies exist, and the undisputed record confirms Plaintiffs had notice and promptly pursued judicial review.

Similarly, Plaintiffs' substantive due process claim fails because the Takings Clause provides the exclusive constitutional standard for challenges to a taking and, in any event, alleged lack of authority or asserted state-law violations do not amount to conscience-shocking conduct.

Finally, Plaintiffs' temporary takings theory fails because the Fifth Amendment does not require contemporaneous payment—only a reasonable, certain, and adequate means to obtain just compensation—which existed here and was in fact invoked, including through the Town's court-registry deposit.

Accordingly, Plaintiffs have not established entitlement to judgment as a matter of law on any claim, and the Court should deny Plaintiffs' motion in its entirety.

<div style="margin-left:40%">

Respectfully submitted,
Defendants,
By Their Attorneys,

/s/ William J. Conley, Jr.
William J. Conley, Jr. (#2149)
Mario Martone (#8221)
Sarah F. O'Toole (#9316)
Conley Law & Associates
123 Dyer Street, Suite 2B
Providence, RI 02903
Tel: 401.415.9835
wconley@conleylawri.com
mmartone@conleylawri.com
sotoole@conleylawri.com
</div>

January 27, 2025

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Kathryn D. Valois
KValois@pacificlegal.org

Robert H. Thomas
RThomas@pacificlegal.org

Austin W. Waisanen
AWaisanen@pacificlegal.org

Kelley M. Salvatore
ksalvatore@darroweverett.com

Stacy W. Thomsen
sthomsen@darroweverett.com

*/s/ Sarah F. O'Toole* _____

26