**UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| SCLS REALTY, LLC; and<br>SIXTY THREE JOHNSTON, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston,<br><br>    Defendants. | Civil Action No. 1:25-cv-88-MRD-PAS<br><br><br>**PLAINTIFFS' EXPEDITED MOTION FOR ORDER TO SHOW CAUSE AND  MEMORANDUM OF LAW**<br><br>**HEARING REQUESTED**<br>**(10 minutes per side estimated)**<br>**(LR Cv 7)**<br><br>**EXPEDITED CONSIDERATION REQUESTED (LR Cv 9)** |

**PLAINTIFFS' EXPEDITED MOTION FOR ORDER TO SHOW CAUSE**

Pursuant to LR Cv 7 and LR Cv 9, Plaintiffs the Santoro Family[1] move for an order exercising this Court's inherent power to require Defendants to appear and show cause why they should not be held in contempt for violating this Court's

---

[1] Plaintiffs SCLS Realty, LLC, and Sixty Three Johnston, LLC, are referred to collectively as the "Santoro Family." All Defendants are referred to collectively as the "Town" unless context otherwise requires. The Santoro Family property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, is referred to as the "Santoro Property."

preliminary injunction entered on April 2, 2025, which enjoined them from, *inter alia,* "undertak[ing] any other actions to condemn or use the power of eminent domain to seize the Plaintiff's property . . . [and from] . . . [u]ndertaking any other action that alters the status quo as of the date and time this Court enters this Preliminary Injunction, until further order of this Court." *See* Order Converting Temporary Restraining Order to Preliminary Injunction at 2, 3 (Apr. 2, 2025) (Dkt. No. 20) ("PI").

But notwithstanding the PI continuing to remain in "full force and affect[,]" *id.* at 3, on Friday, July 31, 2026, two days after this Court entered summary judgment invalidating the Town's attempt to take the Santoro Property as beyond its legal authority, the Town Council appears to have already dramatically altered the status quo by introducing and possibly adopting two new resolutions in furtherance of its ongoing scheme to take the Santoro Property by eminent domain. *See* Town of Johnston Public Notice Special Meeting (July 31, 2026) (Exhibit A); Declaration of Kathryn D. Valois (Valois Decl.) ¶¶ 5–6.[2] Resolution 2026-25 authorizes the placement of a question on the Town ballot for the November 2026 election. *See*

---

[2] The Santoro Family does not know if the Town actually adopted Resolutions 2026-25 and 2026-26. The Town's Clerkbase website (https://clerkshq.com/johnston-ri) has not yet been updated with the minutes from the July 31, 2026, special meeting and the Resolutions themselves are not signed by any of the councilmembers. *See* Exhibit A; Exhibit B; Exhibit C; Valois Decl. ¶¶ 5–10, 27. Additionally, the Town did not timely respond when asked whether the Resolutions were adopted nor did it provide an explanation for how introducing the two Resolutions did not violate the preliminary injunction. *See SCLS Realty, LLC, et al. v. Town of Johnston, et al.*, No. 1:25-cv-00088-MRD-PAS Letter (Aug. 1, 2026) (Exhibit L); Valois Decl. ¶¶ 27–28. Whether the Town actually passed Resolutions 2026-25 and 2026-26, however, is immaterial to this Court's analysis, as the mere introduction of the Resolutions alters the "status quo." PI at 2–3.

Resolution 2026-25 (July 31, 2026) (Exhibit B); Valois Decl. ¶¶ 7–8. The deadline under Rhode Island law to submit such measures for inclusion on the ballot is in one days, August 5, 2026, and the ballot is scheduled to be printed in mid-September. Valois, Decl. ¶ 26. Resolution 2026-26 authorizes the creation of a Town Municipal Public Building Authority. *See* Resolution 2026-26 (July 31, 2026) (Exhibit C); Valois Decl. ¶¶ 9–10.

The mayor also publicly confirmed that the two resolutions are part of the Town's continuing eminent domain efforts in response to the Court's entry of summary judgment: "the Town will continue its pursuit of a much needed municipal complex on the land . . . in one of two ways referenced by the court . . . [e]ither using the [Municipal Public Building Authority Law] or amending the charter consistent with the court's guidance." *See* Facebook (Mayor Joseph Polisena Jr.) (July 30, 2026; 8:26 a.m.) (Exhibit D); Valois Decl. ¶¶ 11–13.

These actions on their face appear to contravene the PI, but the Town has not sought any "further order of this Court" or otherwise sought dispensation to avoid the injunction which bars its current actions.

This Court should enter an order for the Town to show cause why these actions were not in contempt of this Court's authority and inherent power to enforce its injunctions and orders.

## LOCAL RULE CV 7(c) STATEMENT

In accordance with LR Cv 7, counsel states that a hearing is requested, and estimates that 20 minutes (10 minutes per side) is sufficient.

**LOCAL RULE CV 9 REQUEST**

An expedited hearing is requested, as one of the Town's actions—introducing and possibly passing Resolution 2026-25—would place on this year's General Election ballot a question that would permit the Town to amend its charter to "identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority," in contravention of the standing preliminary injunction. (Exhibit B); Valois Decl. ¶¶ 7–8. The last day for a question to be removed from the ballot would be September 18, 2026, before ballots are formally printed and mailed to individuals overseas. Valois Decl. ¶ 26. A request for expedited consideration of a motion is evaluated by the "reasonableness of the request in light of all of the surrounding circumstances." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011).

**MEMORANDUM OF LAW**

I.    **FACTS**

On March 19, 2025, with agreement of the parties this Court restored the status quo ante and ordered the Town Clerk to unwind the Town's transfer of title and restore the Santoro Family as the owners of record of the Santoro Property in the Town's records. The Court also enjoined the Town from, *inter alia*, "undertak[ing] any other actions to condemn or use the power of eminent domain to seize the Plaintiffs' property . . . including but not limited to . . . [t]aking any other action to further alter, substitute, amend, change, or otherwise affect the registered or title ownership of the

4

subject property from the Santoro Family . . . and . . . [u]ndertaking any other action that alters the status quo as of the date and time this Court enters a temporary restraining order until consideration of entry of a preliminary injunction. Temporary Restraining Order at 2–3 (Mar. 19, 2025) (Dkt. No. 14) ("TRO").

Less than a month later on April 2, 2025—again with the Town's consent and agreement—this Court converted the TRO to a preliminary injunction that similarly enjoined the Defendants from further attempting to take the Santoro Property and from altering the status quo. PI at 3. The PI prohibits the Town from:

> [T]aking any action to implement, carry out, enable, execute, or perform under the purported authority of Resolution 2025-10, Resolution 2025-17, Resolution 2025-18, or to undertake any other actions to condemn or use the power of eminent domain to seize the Plaintiff's property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formally recognized as Lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property"), including but not limited to:
>
> 1.   Taking any action to prevent or otherwise interfere with the Santoro Family entering, using, or occupying the Santoro Property, or taking any action which is inconsistent with the Santoro Family's rights as the lawful owners of the Santoro Property; and
>
> 2.   Taking any action to enter, use, occupy, transfer, convey, encumber, or trespass upon the Santoro Property; and taking any action inconsistent with or in contravention of the Santoro Family's rights as the lawful owners of the Santoro Property; and
>
> 3.   Taking any action to further alter, substitute, amend, change, or otherwise affect the registered or title ownership of the subject property from the Santoro Family, or taking any action in contravention of or inconsistent with the Santoro Family's rights as the lawful title owners and owners of record; and
>
> 4.   Undertaking any other action that alters the status quo as of the date and time this Court enters this Preliminary Injunction, until further order of this Court.

PI at 2–3. The PI "remain[s] in full force and affect until further order of the Court[,]" *id.* at 3, and is currently in force.

After this Court entered the PI, the Town almost immediately needed to ask to contravene it. The Rhode Island Attorney General had informed the Town that its adoption of Resolution 2025-10 violated Rhode Island's Open Meetings Act. The AG informed the Town that if it re-noticed the public meeting and voted again in compliance with the Act, the AG may not press the violation further. *See* Office of the Attorney General, *Willis v. Johnston Town Council* & *Ahlquist v. Johnston Town Council* Email (Mar. 24, 2025) (Exhibit E); Valois Decl. ¶¶ 14–15. The Town correctly concluded that to comply with the AG's letter was prohibited by the PI. *See* 178-200 George Waterman Road | RIAG Open Government Decision OM 25-12 Email (Mar. 25, 2025) (Exhibit F); Valois Decl. ¶¶ 14, 16. The Santoro Family did not object after the Town rendered assurances that nothing it would do would materially alter the status quo. *Id.* On April 3, 2025, the Town re-adopted Resolution 2025-10. *See* Special Meeting Minutes (Apr. 3, 2025) (Exhibit G); Valois Decl. ¶¶ 17–18.

On July 28, 2026, this Court entered summary judgment on Claim 6 against the Town and declared its attempt to seize the Santoro Property illegal, and void. *See* Memorandum and Order (July 28, 2026) (Dkt. No. 54). The Court did not disturb the PI, which remains in full force and continues in effect.

Almost immediately after the Court's entry of summary judgment, the mayor publicly posted on Facebook that "the court determined the Town does have the authority to take the land by eminent domain," and that "the Town will continue its

6

pursuit of a much needed municipal complex on the land, which is the site of a

proposed 252 unit apartment complex[.]" This is a screenshot of the mayor's posting:



**Mayor Joseph Polisena Jr.**
Jul 30 at 8:26 AM

There seems to be some confusion about the recent eminent domain decision, so I just want to clarify. First, the court determined the Town does have the authority to take the land by eminent domain. Take a look at the highlighted portion of the decision I posted. However, the court also determined town charter requires an additional process to do so. Second, going forward, the Town will continue its pursuit of a much needed municipal complex on the land, which is the site of a proposed 252 unit apartment complex, in one of two ways referenced by the court. Either using the MPBAL or amending the charter consistent with the court's guidance.

I want to thank the court for its guidance during this process. As always, I will continue to put Johnston first. The full decision is linked below referenced as Document 54.

https://ecf.rid.uscourts.gov/cgi-bin/Opinions.pl

Exhibit D; Valois Decl. ¶¶ 11–13.

The following day, July 31, 2026, at 4:15 p.m., the Town Council, as the mayor had stated, held a Special Meeting where it introduced and very likely adopted two new resolutions. *See* Exhibit A; Valois Decl. ¶¶ 5–6, 27–28.

Resolution 2026-25 authorizes the submission of the following question to be placed on the ballot at the Town's General Election on November 3, 2026:

> Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?

7

*See* Exhibit B; Valois Decl. ¶¶ 7–8. If adopted by the voters, Section 1-3 of the Johnston Town Charter would be amended as follows:

> Upon the town's exercise of its power of condemnation, pursuant to a resolution or ordinance of the Town Council and upon the recording within the Land Evidence Records of a statement of taking, the town shall make payment of just compensation to the property owners or persons entitled to any estate in or interest in any part of the land. The town shall forthwith file a petition for the deposit of the funds for just compensation within the Superior Court. The funds must be set aside and obligated by the town at the time of the taking for the benefit of the property owners or persons entitled to any estate in or interest in any part of the land, and payment of just compensation is obligatory pursuant to the R.I. Constitution Art. I, § 16.

> The property owners or persons entitled to any estate in or interest in any part of the land may receive payment of just compensation by retrieval of the funds from the Superior Court pursuant to the Rhode Island Superior Court Rules of Civil Procedure. Any owners or persons entitled to any estate in or interest in any part of the land so taken, who do not agree with the town for the price of the land, or interest therein, so taken in which he or she is interested as aforesaid, may, within one (1) year after personal notice of the taking, or, if he or she have no personal notice, may within two (2) years from the first publication of the copy of the resolution and statement of taking, apply by petition to the superior court in and for the county in which the land, or interest therein, lies, setting forth the taking of his or her land or interest therein, and praying for assessment of damages by a jury. Execution may enter against the town if just compensation is not made pursuant to the assessment of damages. The town is authorized to enact additional procedural requirements by resolution or ordinance to effectuate the delegated condemnation powers contained herein.

*Id.* As noted above, it is unknown whether the Town formally adopted Resolution 2026-25. Exhibit L; Valois Decl. ¶¶ 27–28.

Similarly, Resolution 2026-26 authorizes the Town to create a Municipal Public Building Authority. *See* Exhibit C; Valois Decl. ¶¶ 9–10. It is also unknown

whether the Town formally adopted Resolution 2026-26. Exhibit L; Valois Decl. ¶¶ 27–28.

In addition to the introduction of the resolutions, the mayor was a guest on a radio show and reemphasized that these new resolutions were created in response to this Court's Memorandum and Order, and part of the Town's continuing attempts to take the Santoro Property by eminent domain to prevent the construction of affordable housing. *See The News with Gene Valicenti, Johnston Mayor Joseph Polisena Jr.* (July 31, 2026), https://www.997wpro.com/shows/gene-valicenti/ (unofficial transcript attached as Exhibit H); Valois Decl. ¶¶ 19–20. Responding to the host's statement that "[y]ou still see another way around this[],'" the mayor stated, "there are two strategies, and we're going to pursue both." Exhibit H.

> Gene Valicenti: All right, Mayor, so you went to court, you went to federal court, you thought you had the law on your side. The judge ruled against you, but go ahead. You still see another way around this. Give me the strategy here, simply, so we can follow it. The strategy is…
>
> Mayor Joseph Polisena Jr.: Yeah, so there are two strategies, and we're going to pursue both. And I'm not going to disclose what the final one will be, because we're going to have to choose one of two. So, number one is to go through it how I was explaining prior, with the MPBAL, create our own building authority and then have it ratified by the Public Finance Management Board. That is option one. Option two is to put an eminent domain provision in our town charter, which has to be ratified by the voters in the upcoming election. So those are the two paths we can take. We just cannot use our current condemnation provision in the town charter.

*Id.* at 2-3.

## II.    STANDARD OF REVIEW

A federal district court has wide latitude to exercise its inherent authority to enforce its injunctions and orders by the civil contempt power, which is reviewed for abuse of discretion—approached flexibly, with due regard for the circumstances. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002); *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 45 (1st Cir. 2016). The district court's factual findings must comply with the clear error standard. *Goya Foods*, 290 F.3d at 75. Legal questions and mixed questions of fact and law are reviewed *de novo. Rodriguez-Miranda*, 829 F.3d at 45. An error of law is the functional equivalent of an abuse of discretion. *Goya Foods*, 290 F.3d at 75.

## III.    ARGUMENT

The Town's two new resolutions are a part of its continuing scheme to take the Santoro Property, and have materially altered the status quo. The status quo is the "last uncontested status which preceded the pending controversy," where the Town had not commenced its now-declared-void attempt to take the Santoro Property by eminent domain. *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)). Yet despite the PI's prohibiting the Town from "undertak[ing] any other actions to condemn or use the power of eminent domain to seize the Plaintiff's property," PI at 2 (and if that were not clear enough, from "[u]ndertaking any other action that alters the status quo as of the date and time this Court enters this Preliminary Injunction, until further order of this Court[,]" *id.* at

10

3), the Town appears to be back at it again. Without first obtaining this Court's authorization or even notifying the Court and the Santoro Family.

Civil contempt is a forward-looking penalty meant to coerce compliance rather than to punish past noncompliance. *Hawkins v. Dep't of Health & Hum. Servs. for New Hampshire, Comm'r*, 665 F.3d 25, 32 (1st Cir. 2012). A finding of civil contempt must be supported by clear and convincing evidence of four elements: (1) the party had notice of the court order; (2) the order was clear and unambiguous; (3) the party had the ability to comply with the order; and (4) the party violated the order. *Id.* at 31; *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005). Each element is satisfied here.

**1. Notice**. The Town is unquestionably aware of this Court's PI, as the Town's lawyers received actual notice. *See* Notice of Electronic Filing, Preliminary Injunction Order (Apr. 2, 2025) (Exhibit I); Valois Decl. ¶¶ 21–22; *McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 5 (1st Cir. 1991) ("Notice to an attorney is notice to the client.") (citing Fed. R. Civ. P. 5(b); *Irwin v. Veterans Admin.*, 498 U.S. 89, 93 (1990) ("The lower federal courts have consistently held that notice to an attorney's office which is acknowledged by a representative of that office qualifies as notice to the client."). Moreover, the Town agreed to the conversion of the TRO to the PI, so it knows exactly what it can and cannot do. *See* PI at 1. The Town also knows that the PI currently remains "in full force and affect" because the PI plainly says so, and this Court has not ordered otherwise. *See id.* at 3.

If any doubt remains, the Court's entry of the PI was widely reported in local and national media. *See, e.g.*, Wheeler Cowperthwaite, *Johnston blocked from taking developer's land by eminent domain – for now. What comes next?*, The Providence Journal (Apr. 3, 2025) (Exhibit J); Valois Decl. ¶ 24; Liam Cronan, *A Rhode Island Town Seized 31 Acres by Eminent Domain Without Telling the Owners – Their Recent Lawsuit Claims It's an Unconstitutional "Sham Taking,"* National Law Review (May 29, 2025) (Exhibit K); Valois Decl. ¶¶ 23–25.

The Town also understands the limitations on its actions under the PI as demonstrated by its earlier request to this Court for authorization to attempt to cure the violation of the open meetings act regarding Resolution 2025-10. The Town understood that responding to the AG's offer to correct the violation "could be construed as a violation of the TRO/PI," and consequently sought approval from the Court before doing anything. *See* Exhibit F; Valois Decl. ¶ 16. The Town knows what it can and cannot do under the PI. Yet apparently, it has gone ahead anyway.

**2.    PI: clear and unambiguous.** The actions which are enjoined by this Court could not be clearer. The Town is prohibited from doing anything "to condemn or use the power of eminent domain to seize the Plaintiff's property[.]" PI at 2. If that were not clear enough, the Town was expressly prohibited from altering the status quo. The "status quo" is when the Town was not making active efforts to take the Santoro Property. *United Steelworkers*, 836 F.2d at 10 (last uncontested status). Yet, it is now underway with two refreshed attempts to do so. The Town cannot complain that the PI is unclear or is ambiguous because it consented to converting the TRO

12

and had every opportunity to suggest changes if it believed it was not on notice of what actions the PI prohibited or allowed.

3.    **Ability to comply.** The only thing the Town needed to do to comply with the PI was to do nothing. Or ask this Court for authorization before acting, as it did earlier when it sought the Court's approval to respond to the AG's notification the Town had adopted Resolution 2025-10 in violation of Rhode Island's Open Meetings Act.

4.    **Violation of the PI.** The Town has violated and is violating at least two unambiguous directives in the PI: (1) do not try "to condemn or use the power of eminent domain to seize the Plaintiff's property," PI at 2; and (2) in any event, do not alter the status quo. *Id.* at 3. Yet it is doing so. If there were any doubt, the mayor's public statements confirm that the two new resolutions are part of the process by which the Town is continuing its scheme to take the Santoro Property by eminent domain (as the mayor stated, "the court determined the Town does have the authority to take the land by eminent domain"). Exhibit D; Valois Decl. ¶¶ 11–13. The mayor also admits that "the Town will continue its pursuit of a much-needed municipal complex on the [Santoro Family's] land." *Id.* On the radio, the mayor stated the Town's strategy of hiding the ball continues: "so there are two strategies, and we're going to pursue both. And I am not going to disclose what the final one will be, because we're going to have to choose one of two." Exhibit H; Valois Decl. ¶¶ 19–20. Those statements confirm that the two resolutions introduced by the Town Council on July

13

31, 2026, are part of the Town's ongoing efforts "to condemn or use the power of eminent domain to seize the Plaintiff's property[.]" PI at 1.

Creating two new resolutions to continue to try and take the Santoro Property is not the Town being "reasonably diligent and energetic in attempting to accomplish what was ordered." *Drywall Tapers, Local 1974 v. Local 530*, 889 F.2d 389, 394 (2d Cir. 1989) (citation omitted). Rather, it appears to be the Town willfully and knowingly violating the Court's directives in material ways, apparently to alter the situation such that taking the Santoro Property is *fait accompli*. Thus, the Town cannot rely on the good faith "substantial compliance" safe harbor. *See Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991) ("substantial compliance can avert a finding of contempt"). Substantial compliance must "depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest." *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982).

Here, the Town's failure to honor the PI is its attempt to get around this Court's orders and injunction, and goes to an issue at the very heart of this case. The Town's violation of the PI must be assessed in conjunction with the clear and unambiguous factor—the question is whether the conduct at issue was clearly and unambiguously forbidden by the order—which as detailed earlier, it was. *See Saccoccia*, 433 F.3d at 27. An observer of the Town's latest actions might think that having been operating under this Court's supervision for more than a year, and then recently being

14

reminded in unambiguous terms that it acted illegally all along, the Town would be more careful, and more respectful.

## IV.    CONCLUSION

The Court should issue an order to show cause why all of the Defendants should not be held in contempt.

DATED: August 4, 2026.

Respectfully submitted,

KELLEY M. SALVATORE
Mass. Bar No. 637885
R.I. Bar No. 6025
STACY W. THOMSEN
Cal. Bar No. 274282
Mass. Bar. No. 706742
R.I. Bar No. 10342
DarrowEverett LLP
1 Turks Head Pl., #1200
Providence, RI 02903
Telephone: (401) 453-1200
Fax: (401) 453-1201
ksalvatore@darroweverett.com
sthomsen@darroweverett.com

/s/ Kathryn D. Valois
KATHRYN D. VALOIS*
Fla. Bar No. 1010150
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
Fax: (916) 419-7747
kvalois@pacificlegal.org

AUSTIN W. WAISANEN*
Wyo. Bar No. 8-7023**
Pacific Legal Foundation
3100 Clarendon, Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
awaisanen@pacificlegal.org

15

ROBERT H. THOMAS*
Cal. Bar No. 160367
Hawaii Bar No. 4610-0
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
rthomas@pacificlegal.org

*Pro Hac Vice
**Admitted only in Wyoming

*Counsel for Plaintiffs*