## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

SCLS REALTY, LLC; and
SIXTY THREE JOHNSTON, LLC,

          Plaintiffs,

       v.

TOWN OF JOHNSTON, RHODE
ISLAND; JOSEPH M. POLISENA, JR., in
his official capacity as Mayor of the Town
of Johnston; LINDA L. FOLCARELLI,
LAUREN GARZONE, ALFRED T.
CARNEVALE, ROBERT V. RUSSO,
ROBERT J. CIVETTI, in their official
capacities as Members of the Town
Council of the Town of Johnston; and
VINCENT P. BACCARI, JR., in his
official capacity as Town Clerk of the
Town of Johnston,

          Defendants.

Civil Action No. 1:25-cv-00088

## DECLARATION OF KATHRYN D. VALOIS

KATHRYN D. VALOIS declares as follows:

1. I am an attorney licensed in the state of Florida and was admitted Pro Hac Vice, on March 10, 2025, affording me the privilege of practicing in this Court.

2. I have personal knowledge of the matters contained herein, unless otherwise indicated, and am competent to testify thereto.

3. I am one of the lawyers in this case for the Plaintiffs, SCLS Realty, LLC, and Sixty Three Johnston, LLC.

4. Plaintiffs own the fee simple interest in 31 acres of real property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property").

5. On August 1, 2026, I personally checked the Town of Johnston's Clerkbase website and saw the Town had issued a public notice for a special meeting on July 31, 2026, at 4:15 p.m. The meeting notice listed two resolutions, Resolution 2026-25 and 2026-26 that were voted on by the Town Council.

6. Attached hereto as Exhibit A is a true and correct copy of the Town's July 31, 2026, Special Meeting Public Notice.

7. Resolution 2026-25, which was linked to the Town's July 31, 2026, Special Meeting Public Notice, purported to introduce an eminent domain question to the ballot at the November 3, 2026, Town general election.

8. Attached hereto as Exhibit B is a true and correct copy of Resolution 2026-25. I personally downloaded Resolution 2026-25 from the Town's Clerkbase website.

9. Resolution 2026-26, which was linked to the Town's July 31, 2026, Special Meeting Public Notice, purported to create a Municipal Public Building Authority within the Town.

10. Attached hereto as Exhibit C is a true and correct copy of Resolution 2026-26. I personally downloaded Resolution 2026-26 from the Town's Clerkbase website.

11. Additionally, after this Court entered its Memorandum and Order declaring the Town's attempt to seize the Santoro Family's property illegal and void, I was informed by a reporter of a new Facebook post Mayor Joseph M. Polisena, Jr. had made early that morning.

12. That afternoon, I found the aforementioned Facebook post and took a screenshot of the post.

13. Attached hereto as Exhibit D is a true and correct copy of Mayor Joseph M. Polisena, Jr.'s Facebook post. I personally screenshotted the post.

14. Last year, on March 25, 2025, attorney for the Town, Sarah O'Toole, emailed me a copy of the Rhode Island Attorney General's Open Government Decision, which found the Town had violated Rhode Island's Open Meetings Act. The document was emailed to me as part of a request by the Town to re-vote on Resolution 2025-10, satisfying the Attorney General's violation, at the risk of violating the preliminary injunction.

15. Attached hereto as Exhibit E is a true and correct copy of the Office of the Attorney General's Willis v. Johnston Town Council & Ahlquist v. Johnston Town Council Letter.

16. Attached hereto as Exhibit F is a true and correct copy of the March 25, 2025, email chain between Attorney O'Toole, myself, and Attorney Robert Thomas.

17. Resolution 2025-10 was later re-adopted by the Town, and the special meeting minutes from that meeting were uploaded to the Town of Johnston's website.

18. Attached hereto as Exhibit G is a true and correct copy of the Town's April 3, 2025, Special Meeting Minutes showing Resolution 2025-10 was re-adopted by the Town. I personally downloaded the special meeting minutes from the Town's website.

19. While preparing the accompanying Motion for Order to Show Cause, I came across a radio interview Mayor Polisena, Jr. gave on July 31, 2026, to Gene Valicenti. I personally listened to the interview and worked with Pacific Legal Foundation's Information Technology Team to transcribe the interview.

20. Attached hereto as Exhibit H is an unofficial true and correct copy of Mayor Polisena, Jr.'s July 31, 2026, transcribed interview with Gene Valicenti.

21. Additionally, I reviewed my email records and found a copy of the Court's Notice of Electronic Filing for the preliminary injunction order, which was entered on April 2, 2025.

22. Attached hereto as Exhibit I is a true and correct copy of the Court's April 2, 2025, Preliminary Injunction Notice of Electronic Filing.

23. This case, including the Court's preliminary injunction order, has been widely reported in the media.

24. Attached hereto as Exhibit J is a true and correct copy of The Providence Journal's article "Johnston blocked from taking developer's land by eminent

domain – for now. What comes next?" The article was most recently updated on April 3, 2025. I personally downloaded a copy of the article for this exhibit.

25. Attached hereto as Exhibit K is a true and correct copy of National Law Review's article "A Rhode Island Town Seized 31 Acres by Eminent Domain Without Telling the Owners – Their Recent Lawsuit Claims It's an Unconstitutional 'Sham Taking'". The article was originally posted on May 29, 2025. I personally downloaded a copy of the article for this exhibit.

26. On August 3, 2026, I called and spoke with the Rhode Island Board of Elections. The representative I spoke with confirmed that the final day for local questions to be added to the ballot is August 5, 2026. The representative also stated that the final time for any question to be removed from the ballot would be between September 11th and the 18th – after the primary elections were certified but before the overseas ballots were printed and mailed (45 days before the election on November 3, 2026).

27. I have been unable to confirm whether the Town has actually passed Resolutions 2026-25 and 2026-26. The Town's Clerkbase website does not include the minutes from the Town's July 31, 2026, special meeting nor do the Resolutions themselves include councilmember signature or a record of a vote occurring. Additionally, the Town has not responded to the letter I authored, requesting an explanation for its actions or stated whether it officially adopted the Resolutions.

28. Attached hereto as Exhibit L is a true and correct copy of the letter I sent to Town Counsel, on August 1, 2026, requesting an explanation for the introduction of Resolutions 2026-25 and 2026-26.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2026.

_____

KATHRYN D. VALOIS

# EXHIBIT A



**Vincent P. Baccari, Jr., Town Clerk**
**Town of Johnston**
**1385 Hartford Avenue**
**Johnston, Rhode Island 02919**
**Tel (401) 351-6618**

**Johnston Town Council**

**Linda L Folcarelli**
**Councilwoman - District 1**

**Lauren A. Garzone**
**Vice-President**
**Councilwoman - District 2**

**Alfred T. Carnevale**
**Councilman- District 3**

**Robert V. Russo**
**President**
**Councilman - District 4**

**Robert J. Civetti**
**Councilman - District 5**

### Public Notice
### Special Meeting

### Agenda
### July 31, 2026 at 4:15 p.m.

The Johnston Town Council shall hold a special meeting on **July 31ˢᵗ, 2026 at 4:15 p.m.** at the Johnston Municipal Court, 1600 Atwood Avenue, Johnston, RI 02919.

*Votes may be taken on all items below*

- **Roll call**

- **Resolution 2026-25:** A Resolution authorizing the submission of the following question to be placed on the ballot at the General Election to be held on November 3, 2026; Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?

- **Resolution 2026-26:** A Resolution authorizing the creation of a Municipal Public Building Authority for the Town of Johnston

The Council shall meet pursuant to Rhode Island General Laws 42-46-1 et seq., commonly known as the Rhode Island Open Meetings Law.

_____

Vincent P. Baccari, Jr., Town Clerk

Published by ClerkBase
©2026 by Clerkbase. No Claim to Original Government Works.

# RESOLUTION OF THE TOWN COUNCIL
## No. 2026-25

RESOLUTION OF THE TOWN COUNCIL OF THE TOWN OF JOHNSTON

AUTHORIZING LOCAL QUESTION FOR THE NOVEMBER 3, 2026 GENERAL ELECTION

RELATING TO REVISIONS OF THE JOHNSTON TOWN CHARTER

In Favor:                              Opposed:

_____

Council President                          Date

BE IT RESOLVED: The Town Council of the Town of Johnston, Rhode Island, does hereby authorize the submission of the following question to be placed on the ballot at the General Election to be held on November 3, 2026:

1. "Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?"

   **If approved, Section 1-3 of the Johnston Town Charter would be amended as follows:**

   "The town shall have all the powers granted to towns by the Home Rule Amendment and other provisions of the constitution, general laws of this state and special acts applicable to the town together with all such additional powers as hereafter may be granted to the towns by the laws of the state, together with all powers implied in or incident to the powers expressly granted. The town shall have power to sue and be sued, to enact ordinances and pass resolutions, and to make rules and regulations necessary and proper for carrying into execution its powers, and such ordinances may be made enforceable by the imposition of fines, forfeitures and penalties. The town may enter into contracts with the state or any political subdivision thereof for services and the use of facilities. The town may acquire property within or without its corporate limits for town purposes, in fee simple or any lesser interest or estate, by purchase, lease, gift, devise or condemnation within the town for public use, and may hold, manage and control, and may sell, lease, and convey such property as its interests may require.

   Upon the town's exercise of its power of condemnation pursuant to a resolution or ordinance of the Town Council and upon the recording within the Land Evidence Records of a statement of taking, the town shall make payment of just compensation to the property owners or persons entitled to any estate in or interest in any part of the land. The town shall forthwith file a petition for the deposit of the funds for just compensation within the Superior Court. The funds must be set aside and obligated by the town at the time of the taking for the benefit of the property owners or persons entitled to any estate in or interest in any part of the land, and payment of just compensation is obligatory pursuant to the R.I. Constitution Art. I, § 16.

pursuant to the Rhode Island Superior Court Rules of Civil Procedure. Any owners or persons entitled to any estate or interest in, or any part of the land, so taken, may agree with the town for the price of the land, or interest therein, so taken in which he or she is interested as aforesaid, may, within one (1) year after personal notice of the taking, or, if he or she have no personal notice, may within two (2) years from the first publication of the copy of the resolution and statement of taking, apply by petition to the superior court in and for the county in which the land, or interest therein, lies, setting forth the taking of his or her land or interest therein, and praying for an assessment of damages by a jury. Execution may enter against the town if just compensation is not made pursuant to the assessment of damages. The town is authorized to enact additional procedural requirements by resolution or ordinance to effectuate the delegated condemnation powers contained herein.

Except as prohibited by the constitution of this state or by laws enacted by the general assembly in conformity with powers reserved to the general assembly by the constitution of this state or as restricted by this Charter, the town shall have and may exercise all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever. The enumeration of particular powers by this Charter shall not be deemed to be exclusive, and in addition to the powers enumerated herein or implied hereby, or appropriate to the exercise of such powers, it is intended that the town shall have and may exercise all powers which, under the constitution of this state, it would be competent for this Charter specifically to enumerate. All powers of the town shall be exercised in the manner prescribed by this Charter and by state law, or if the manner is not prescribed, then in such manner as may be prescribed by ordinance."

*Resolution 2026-25 shall become effective immediately upon the date of its passage*

_____          _____
*Lauren A. Garzone, Vice-President*          *Alfred T. Carnevale, Councilman*
*District 2*                                              *District 3*


_____          _____
*Linda Folcarelli, Councilwoman*             *Robert V. Russo, President*
*District 1*                                              *District 4*


_____
*Robert J. Civetti, Councilman*
*District 5*


*Attest:_____*
*Vincent P. Baccari, Jr., Town Clerk*

# RESOLUTION OF THE TOWN COUNCIL

## No. 2026-26

In Favor:                                          Opposed:

_____
Council President                              Date

Be it resolved that:

*Whereas,*      R. I. Gen. Laws § 45-50-1 et seq. authorizes municipalities to create a public building authority for purposes of maintaining and repairing town-owned assets, and for the construction of new facilities through alternative financing techniques.; and;

*Whereas,*      the Town of Johnston has a need for a public building authority to manage the maintenance and repairs of town assets, and to construct new facilities using alternative financing techniques; and;

*Whereas,*      the Town of Johnston has an annual operating budget in excess of thirty-nine million dollars ($39,000,000.00);

*Now, therefore, be it resolved that we, the members of the Johnston Town Council hereby:*

1. *Create a Municipal Public Building Authority for the Town of Johnston;*

2. *Authorize Mayor Joseph M. Polisena, Jr. to appoint five (5) members to serve on the Johnston Municipal Public Buildings Authority;*

3. *To authorize the five (5) members appointed to create by-laws for the Johnston Municipal Public Building Authority; and*

4. *Refer this Resolution to the State of Rhode Island's Public Finance Management Board for review and approval.*

*Resolution 2026-26 shall become effective immediately upon the date of its passage*


_____          _____
*Lauren A. Garzone, Vice-President*           *Alfred T. Carnevale, Councilman*
*District 2*                                              *District 3*


_____          _____
*Linda Folcarelli, Councilwoman*             *Robert V. Russo, President*
*District 1*                                              *District 4*


_____
*Robert J. Civetti, Councilman*
*District 5*


*Attest:_____*
*Vincent P. Baccari, Jr., Town Clerk*

# EXHIBIT B

# RESOLUTION OF THE TOWN COUNCIL
## No. 2026-25

RESOLUTION OF THE TOWN COUNCIL OF THE TOWN OF JOHNSTON

AUTHORIZING LOCAL QUESTION FOR THE NOVEMBER 3, 2026 GENERAL ELECTION

RELATING TO REVISIONS OF THE JOHNSTON TOWN CHARTER

In Favor:                          Opposed:

_____
Council President                    Date

BE IT RESOLVED: The Town Council of the Town of Johnston, Rhode Island, does hereby authorize the submission of the following question to be placed on the ballot at the General Election to be held on November 3, 2026:

1.  "Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?"

    **If approved, Section 1-3 of the Johnston Town Charter would be amended as follows:**

    "The town shall have all the powers granted to towns by the Home Rule Amendment and other provisions of the constitution, general laws of this state and special acts applicable to the town together with all such additional powers as hereafter may be granted to the towns by the laws of the state, together with all powers implied in or incident to the powers expressly granted. The town shall have power to sue and be sued, to enact ordinances and pass resolutions, and to make rules and regulations necessary and proper for carrying into execution its powers, and such ordinances may be made enforceable by the imposition of fines, forfeitures and penalties. The town may enter into contracts with the state or any political subdivision thereof for services and the use of facilities. The town may acquire property within or without its corporate limits for town purposes, in fee simple or any lesser interest or estate, by purchase, lease, gift, devise or condemnation within the town for public use, and may hold, manage and control, and may sell, lease, and convey such property as its interests may require.

    Upon the town's exercise of its power of condemnation pursuant to a resolution or ordinance of the Town Council and upon the recording within the Land Evidence Records of a statement of taking, the town shall make payment of just compensation to the property owners or persons entitled to any estate in or interest in any part of the land. The town shall forthwith file a petition for the deposit of the funds for just compensation within the Superior Court. The funds must be set aside and obligated by the town at the time of the taking for the benefit of the property owners or persons entitled to any estate in or interest in any part of the land, and payment of just compensation is obligatory pursuant to the R.I. Constitution Art. I, § 16.

pursuant to the Rhode Island Superior Court Rules of Civil Procedure. Any owners or persons entitled to any estate in or interest in any part of the land so taken, who did not agree with the town for the price of the land, or interest therein, so taken in which he or she is interested as aforesaid, may, within one (1) year after personal notice of the taking, or, if he or she have no personal notice, may within two (2) years from the first publication of the copy of the resolution and statement of taking, apply by petition to the superior court in and for the county in which the land, or interest therein, lies, setting forth the taking of his or her land or interest therein, and praying for an assessment of damages by a jury. Execution may enter against the town if just compensation is not made pursuant to the assessment of damages. The town is authorized to enact additional procedural requirements by resolution or ordinance to effectuate the delegated condemnation powers contained herein.

Except as prohibited by the constitution of this state or by laws enacted by the general assembly in conformity with powers reserved to the general assembly by the constitution of this state or as restricted by this Charter, the town shall have and may exercise all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever. The enumeration of particular powers by this Charter shall not be deemed to be exclusive, and in addition to the powers enumerated herein or implied hereby, or appropriate to the exercise of such powers, it is intended that the town shall have and may exercise all powers which, under the constitution of this state, it would be competent for this Charter specifically to enumerate. All powers of the town shall be exercised in the manner prescribed by this Charter and by state law, or if the manner is not prescribed, then in such manner as may be prescribed by ordinance."

*Resolution 2026-25 shall become effective immediately upon the date of its passage*

_____
*Lauren A. Garzone, Vice-President*
*District 2*

_____
*Alfred T. Carnevale, Councilman*
*District 3*

_____
*Linda Folcarelli, Councilwoman*
*District 1*

_____
*Robert V. Russo, President*
*District 4*

_____
*Robert J. Civetti, Councilman*
*District 5*

Attest:_____
*Vincent P. Baccari, Jr., Town Clerk*

# EXHIBIT C

# RESOLUTION OF THE TOWN COUNCIL

## No. 2026-26

In Favor:                          Opposed:

_____

Council President                    Date

Be it resolved that:

**Whereas,**     R. I. Gen. Laws § 45-50-1 et seq. authorizes municipalities to create a public building authority for purposes of maintaining and repairing town-owned assets, and for the construction of new facilities through alternative financing techniques.; and;

**Whereas,**     the Town of Johnston has a need for a public building authority to manage the maintenance and repairs of town assets, and to construct new facilities using alternative financing techniques; and;

**Whereas,**     the Town of Johnston has an annual operating budget in excess of thirty-nine million dollars ($39,000,000.00);

Now, therefore, be it resolved that we, the members of the Johnston Town Council hereby:

1. Create a Municipal Public Building Authority for the Town of Johnston;

2. Authorize Mayor Joseph M. Polisena, Jr. to appoint five (5) members to serve on the Johnston Municipal Public Buildings Authority;

3. To authorize the five (5) members appointed to create by-laws for the Johnston Municipal Public Building Authority; and

4. Refer this Resolution to the State of Rhode Island's Public Finance Management Board for review and approval.

Resolution 2026-26 shall become effective immediately upon the date of its passage

_____          _____
Lauren A. Garzone, Vice-President          Alfred T. Carnevale, Councilman
District 2                                  District 3

_____          _____
Linda Folcarelli, Councilwoman            Robert V. Russo, President
District 1                                  District 4

_____
Robert J. Civetti, Councilman
District 5

Attest:_____
Vincent P. Baccari, Jr., Town Clerk

# EXHIBIT D

 **Mayor Joseph Polisena Jr.**
Jul 30 at 8:26 AM

There seems to be some confusion about the recent eminent domain decision, so I just want to clarify. First, the court determined the Town does have the authority to take the land by eminent domain. Take a look at the highlighted portion of the decision I posted. However, the court also determined town charter requires an additional process to do so. Second, going forward, the Town will continue its pursuit of a much needed municipal complex on the land, which is the site of a proposed 252 unit apartment complex, in one of two ways referenced by the court. Either using the MPBAL or amending the charter consistent with the court's guidance.

I want to thank the court for its guidance during this process. As always, I will continue to put Johnston first. The full decision is linked below referenced as Document 54.

https://ecf.rid.uscourts.gov/cgi-bin/Opinions.pl

# EXHIBIT E



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

150 South Main Street • Providence, RI 02903
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

<u>**VIA EMAIL ONLY**</u>

March 24, 2025
OM 25-12

Mr. Gerry Willis
willisg@salve.edu

Mr. Steve Ahlquist
atomicsteve@gmail.com

William Conley, Esquire
Johnston Town Solicitor
wconley@wjclaw.com

Re:    <u>**Willis v. Johnston Town Council**</u>
       <u>**Ahlquist v. Johnston Town Council**</u>

Dear Mr. Willis, Mr. Ahlquist, and Attorney Conley:

We have completed our investigation into the Open Meetings Act ("OMA") Complaints filed by Mr. Gerry Willis and Mr. Steve Ahlquist (the "Complainants") against the Johnston Town Council ("Council"). As these Complaints raise substantively similar allegations about the same Council meeting, we will consolidate the Complaints and issue one finding. For the reasons set forth herein, we find the Council violated the OMA.

*Background*

The Complainants allege that the Council violated the OMA at its January 28, 2025 meeting by failing to provide proper supplemental notice of what business would be discussed and voted upon at the meeting. Specifically, the Complainants take issue with the only item on the agenda, which stated: "Resolution 2025-10: A resolution regarding a hearing pertaining to the property located at Assessor's Plat 37, Lot 193." The top of the agenda also stated "Votes may be taken on all items below." The Complaints, which in large part were identically worded, assert that this item on the supplemental notice "was not specific about what the meeting was about, noting only that the meeting was about a discussion of a numbered parcel of land. No mention of affordable housing, eminent domain, a new public safety complex, or diversion of school buildings funds was on the agenda." They further allege that there "was a sign seen through the [meeting] building's window

Willis, et al. v. Johnston Town Council
OM 25-12
Page 2

that stated cameras were not allowed in the room." They assert that this "sign might be appropriate and lawful under [the building's] everyday use as a courtroom[,] [b]ut the courtroom was being used for a town council meeting, and under the Open Meetings Act, cameras and recording devices are legal."[1]

The Council submitted a substantive response to Mr. Willis' Complaint through its Town Solicitor William Conley, Esq. along with sworn affidavits from Town Clerk Vincent P. Baccari, Jr., Fire Marshall John Robinson, and Police Chief Mark A. Vieira. The Council asserts that the supplemental notice for the January 28, 2025 meeting was sufficient as it "clearly states that the matter might be voted upon and that it was related to a specific resolution that was referenced, by number, on the agenda." It further asserts that the notice was "clear and unambiguous" and "said the [Council] would be considering a resolution about a particular piece of land described by plat and lot number" and clearly stated this matter may be voted on.

Regarding the sign in question, the Council asserts that "there is no provision in the Open Meetings Statute that requires members of the public to be allowed to video or audio record meetings." It further asserts that "there is absolutely no evidence that cameras were not allowed in the room and recording was prohibited." It notes that "there were several news outlets at the meeting that recorded and played or posted portions of those recordings on television and on their websites." It also asserts that "there was no instruction or prohibition on members of the public recording the meeting."

Town Clerk Baccari Jr. states in his affidavit that he posted the supplemental notice for the Council meeting in question and "described the only item on the agenda as follows: Resolution 2025-10: A resolution regarding a hearing pertaining to the property located at Assessor's Plat 37, Lot 193." He states that he posted this notice on the Secretary of State's website and on the Town's Clerkbase website. He states that the posting on Clerkbase "provided a link to view the full resolution that was to be discussed which was uploaded at the same time as the agenda." Finally, he states that "[a]t no time during the course of the meeting was anyone prohibited from filming or recording."

The Council did not submit a substantive response to Mr. Ahlquist's Complaint but given that the Complaints present the same material allegations, we consider the Complaints together, including the Town's response to Mr. Willis' Complaint.

*Relevant Law and Findings*

When we examine an OMA complaint, our authority is to determine whether a violation of the OMA has occurred. *See* R.I. Gen. Laws § 42-46-8. In doing so, we must begin with the plain language of the OMA and relevant caselaw interpreting this statute.

---

[1] To the extent Mr. Ahlquist's Complaint also raises concerns about the seating capacity at the Council's meeting location for the January 28, 2025 meeting, such concerns were recently addressed by this Office in *Messinger-Michaels, et al. v. Johnston Town Council*, OM 25-11.

Willis, et al. v. Johnston Town Council
OM 25-12
Page 3

- *Supplemental Notice*

The OMA requires that all public bodies provide supplemental public notice of all meetings at least forty-eight (48) hours in advance of the meeting. *See* R.I. Gen. Laws § 42-46-6(b). "This notice shall include the date the notice was posted, the date, time and place of the meeting, and *a statement specifying the nature of the business to be discussed.*" *Id*. (emphasis added).

In *Anolik v. Zoning Board of Review of the City of Newport*, the Rhode Island Supreme Court held that R.I. Gen. Laws § 42-46-6(b) requires the "public body to provide fair notice to the public under the circumstance, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon." 64 A.3d 1171, 1173 (R.I. 2013); *see also Tanner v. Town of East Greenwich*, 880 A.2d 784, 797 (R.I. 2005) (appropriate inquiry is "whether the [public] notice provided by the [public body] fairly informed the public, under the totality of the circumstances, of the nature of the business to be conducted"). In *Anolik*, the Supreme Court found an OMA violation when the Newport Zoning Board of Review voted on an extension related to a zoning petition without providing sufficient information in the supplemental notice about the property or petition at issue. 64 A.3d at 1175. The agenda item in that case stated: "IV. Communications: Request for Extension from Turner Scott received 11/30/08 Re: Petition of Congregation Jeshuat Israel." Among other faults, the Court noted that "[t]he agenda item further fails to provide any information as to exactly what was the reason for the requested extension or what would be its duration. In no way does the agenda item give notice that the request for extension was to extend the temporal parameters then in effect for the purpose of completing or substantially completing the improvements." *Id.* at 1176; *see also id*. at 1175 ("the text provides no basis for any further inference as to what might happen with respect to the request that had been 'received'").

Here, applying the Rhode Island Supreme Court's precedent and given the totality of these specific circumstances, we find that the notice failed to comply with the requirements of the OMA.

The supplemental notice for the Council's January 28, 2025 meeting only included one item of business. It informed the public that the Council would potentially vote on "Resolution 2025-10: A resolution regarding a hearing pertaining to the property located at Assessor's Plat 37, Lot 193."

A review of the minutes of the January 28, 2025 meeting filed with the Secretary of State's Office reveals that at the meeting Mayor Polisena, Jr. "addressed the Council and spoke about the need for a new Fire Station Headquarters, Police Department Headquarters and Town Hall Building." He spoke about the deficiencies of the current Town buildings and "request[ed] that the Council authorize acquiring the property located at Assessor's Plat 37, Lot 193 at 178-200 George Waterman Road for the construction of the facilities." Various other Town and union officials spoke about the need for new public buildings. Solicitor Conley Jr. also "reviewed the legal procedure for the process of acquiring the property via eminent domain." One member of the

Willis, et al. v. Johnston Town Council
OM 25-12
Page 4

public spoke "about the housing crisis and the need for affordable housing.[2]" The Council then voted unanimously to approve Resolution 2025-10.

A review of Resolution 2025-10 reveals that by voting to approve said Resolution, the Council voted to "proceed with eminent domain through the exercise of condemnation as provided for in § 1-3 of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 for the public purpose of constructing a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building."

The notice provided to the public prior to the meeting informed them only that the Council was going to potentially vote on a "resolution … pertaining to the property located at Assessor's Plat 37, Lot 193." This notice clearly failed to inform the public that the Council was going to be discussing and voting upon the building of multiple new public buildings, including a Public Safety Headquarters, or that the Council was going to be discussing and voting upon taking private property via eminent domain. This is analogous to the supplemental notice that our Supreme Court found insufficient in *Anolik* for failing to include sufficient information about the petition at issue. *See* 64 A.3d at 1175. Although the notice at issue here provided some information about the property in question, it failed to provide any information about the other aspects of the Council's resolution or the action that it ultimately took.

The need for notice that properly informed the public as to what business would be conducted by the Council is underscored by the fact that the matter voted upon related to a significant expenditure of taxpayer funds. *See Pontarelli v. Rhode Island Board Council on Elementary and Secondary Education et al.,* 151 A.3d 301, 306 (R.I. 2016) ("The public had the statutory right to receive a more complete notice of what would be discussed and decided at the council meeting; this is especially true where the matters relate to expenditures of taxpayer monies."). Media reports suggest that Mayor Polisena Jr. stated at the January 28, 2025 meeting that the approved projects will be funded with "$40 million from the town's cash reserves." *See* https://turnto10.com/news/local/johnston-backs-eminent-domain-for-public-safety-complex-rhode-island-low-income-housing-affordable-apartments-january-28-2025. The spending of millions of dollars of taxpayers funds and the construction of multiple public buildings should not have been voted upon at a public meeting that provided only vague notice that some unidentified type of vote might happen with regard to a certain plot of land on an Assessor's map and nothing more. Members of the public who had an interest in the construction of a new Fire Department headquarters, Police Department headquarters, and Town Hall building would not have known to attend the January 28, 2025 Council meeting to hear the discussion on these matters. Similarly, the public would not have had notice that the Council was voting on a matter that pertained to eminent domain and the expenditure of millions of dollars of public money.

---

[2] The need for affordable housing was relevant to the discussion of Resolution 2025-10 as the property at issue had previously been proposed as the location for a 250-unit affordable housing development. *See* https://turnto10.com/news/local/johnston-backs-eminent-domain-for-public-safety-complex-rhode-island-low-income-housing-affordable-apartments-january-28-2025.

Willis, et al. v. Johnston Town Council
OM 25-12
Page 5

The Council avers that the full text of Resolution 2025-10 was posted on the Town's Clerkbase website. But posting the full text of the Resolution on the Town's website or merely referencing it in the Council's supplemental notice was not enough to fulfill the Council's obligations under the OMA. The Council had an obligation to post supplemental notice that properly informed the public of the business to be discussed at the meeting on the Secretary of State's website. *See* R.I. Gen. § 42–46–6(c). The Council cannot fulfill its obligation to post a proper supplemental notice on the Secretary of State's website by posting additional information on *its own* website.

This Office previously found a public body's argument that it complied with the OMA's notice requirement by posting additional documentation on its own website unavailing in *DiLeo v. Bonnet Shores Fire District*, OM 23-23. There, we noted that "if such documentation is not posted with the respective agenda (in all the places where agendas must be posted under the OMA), then it cannot supplement the notice of the agenda or be considered in determining whether the agenda provided notice that complied with the OMA." Indeed, the Rhode Island Supreme Court has held that documentation "being accessible on [the public body's] website is irrelevant to our analysis, as [R.I. Gen. Laws] § 42–46–6 requires that it be placed on the Secretary of State's website, and there is no duty placed upon the public to search elsewhere." *Pontarelli*, 151 A.3d at 306; *see DeCubellis v. William M. Davies Career and Technical High School Board of Trustees*, OM 21-08 ("Although the adequacy of an agenda item must be assessed in light of the totality of the circumstances, the agenda item itself must provide adequate notice without expecting members of the public to piece together information available elsewhere to surmise what the agenda item may refer."). Therefore, this Office considered only the text of the January 28, 2025 supplemental notice to determine whether it "fairly inform[ed] the public of the nature of the business to be discussed or acted upon." *See Tanner*, 880 A.2d at 796. As discussed above, it patently falls short. Accordingly, we find that the Council violated the OMA by failing to provide sufficient supplemental notice. *See* R.I. Gen. Laws §§ 42-46-6(b), (c).

- *Sign regarding recording*

The Rhode Island Federal District Court held in *Belcher v. Mansi* that the OMA "requires [a public body] to allow members of the press and public to tape record its meetings," citing the policy put forward by the Legislature in R.I. Gen. Laws § 42-46-1: "It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." 569 F. Supp. 379, 382 (D.R.I. 1983). However, it further noted that "[t]his is not to say that every citizen armed with a recording device must be granted carte blanche in all events and under all circumstances … [t]here may well be reasonable restrictions which could lawfully be imposed." *Id.* at 384. This Office has noted in previous findings that the OMA "permit[s] audio or videotaping of meetings, subject to reasonable restrictions set forth by the public body." *Sheldon v. Warwick Minimum Housing Review Board*, OM 14-14; *see Pagliarini v. Kent County Water Authority*, OM 06-24; *Staven v. Portsmouth Financial Subcommittee (School Committee)*, OM 02-16.

The Council asserts that "there is no provision in the Open Meetings Statute that requires members of the public to be allowed to video or audio record meetings." But this reading of the OMA was

Willis, et al. v. Johnston Town Council
OM 25-12
Page 6

resoundingly rejected by the Federal District Court over four decades ago in *Belcher*. *See* 569 F. Supp. at 382. The Council presents no argument as to why the Federal Court's decision does not apply.

That said, the specific circumstances of this case do not present sufficient evidence that the Council prohibited anyone from taking a video or audio recording of the January 28, 2025 meeting. The Council does not contest that the room the Council meeting took place in has a sign indicating that the use of cameras is prohibited, however this sign appears to be related to the meeting room's normal day-time use as a municipal courtroom. It is common practice that video and audio recording is not permitted in courtrooms without permission. The Council asserts that despite this sign being present in the meeting room, "[a]t no time during the course of the meeting was anyone prohibited from filming or recording" and noted that "there were several news outlets at the meeting that records and played or posted portions of those recordings on television and on their websites." Our review of the media coverage of the meeting supports the Council's assertion that the press was able to make video recordings of the meeting. Significantly, neither Complainant in this case contends that they sought to record the meeting and were prevented from doing so.[3]

We recommend that the Council consider covering up or removing the sign prohibiting the use of cameras during times that the municipal courtroom is being used for public meetings to avoid any confusion or the impression that it is prohibiting the video or audio recording of public meetings. However, as the record before us does not reveal that anyone was actually prohibited from recording the meeting, and to the contrary several members of the press did record the meeting, we cannot find sufficient evidence that the Council violated the OMA in this regard.

*Conclusion*

The OMA provides that the Office of the Attorney General may institute an action in Superior Court for violations of the OMA. *See* R.I. Gen. Laws § 42-46-8(a), (e). The Superior Court may issue injunctive relief and declare null and void any actions of the public body found to be in violation of the OMA. *See* R.I. Gen. Laws § 42-46-8(d). Additionally, the Superior Court may impose fines up to $5,000 against a public body found to have committed a willful or knowing violation of the OMA. *Id.*

Although injunctive relief may be appropriate, we prefer to allow the Council an opportunity to comply with this finding. In this finding, we have concluded that the Council's vote to approve Resolution 2025-10 was taken without sufficient supplemental notice in violation of the OMA. This vote must be re-noticed and re-voted upon. **Within ten (10) business days of the date of this finding, the Council should provide evidence to this Office demonstrating that it has re-noticed and re-voted on the approval of Resolution 2025-10.**

Assuming the Council complies with this finding, we do not find sufficient evidence that the violations found herein were willful or knowing. Although it was not sufficient to remedy the

---

[3] To the extent any issues with recording were related to allegations about the capacity of the room, those allegations are addressed in OM 25-11 as noted above.

Willis, et al. v. Johnston Town Council
OM 25-12
Page 7

deficiencies in the supplemental notice posted by the Council to the Secretary of State's website, we do note that the Council posted the full text of Resolution 2025-10 on the Town's website prior to the meeting. This provides persuasive evidence that the Council acted in good faith and was not attempting to hide the content of its meeting on January 28, 2025. This is further supported by the lack of any similar, recent violations by the Council. Additionally, the record evidences that the meeting was extremely well-attended which suggests that at least many members of the public knew about the subject of the meeting and further weighs against finding that the Council intended to conceal the nature of meeting. As such, assuming the Council complies with this finding, we do not find that civil fines are warranted. However, this finding serves as notice to the Council that the conduct discussed herein violates the OMA and may serve as evidence of a willful or a knowing violation in any similar future situation.

Although the Attorney General will not file suit in this matter at this time, nothing in the OMA precludes an individual from pursuing a complaint in the Superior Court as specified in the OMA. The Complainants may pursue an OMA complaint within "ninety (90) days of the attorney general's closing of the complaint or within one hundred eighty (180) days of the alleged violation, whichever occurs later." R.I. Gen. Laws § 42-46-8. Our file will remain open pending receipt of the notice specified above.

We thank you for your interest in keeping government open and accountable to the public.

Sincerely,

PETER F. NERONHA
ATTORNEY GENERAL


 /s/ Patrick Reynolds
Patrick Reynolds
Special Assistant Attorney General

Town of Johnston

## RESOLUTION OF THE TOWN COUNCIL

## No. 2025-10

In Favor:                                    Opposed:

_____
Council President                              Date

Be it resolved that:

Whereas,    The headquarters for the Johnston Fire Department located at 1520 Atwood Avenue was built in 1968; and

Whereas,    The Johnston Fire Department headquarters is in need of significant upgrades including but not limited to the electrical system, the plumbing and HVAC system, the roof, fire sprinkler system, the dispatch and communications system, as well as other infrastructure and building integrity improvements; and

Whereas,    The Johnston Fire Department deserve headquarters that support and enhance their mission, and the citizens of the Town of Johnston deserve 21st century Fire Protection and Emergency Medical Services; and

Whereas,    The Johnston Police Department headquarters were built in 1978 at 1651 Atwood Avenue and was originally designed for 34 officers and civilians; and

Whereas,    The Police Department now has 79 officers and civilians working in the same headquarters; and

Whereas,    The Police Department Headquarters is in need of significant upgrades and improvements including but not limited to the electrical system, the plumbing system, the HVAC system, the roof, the fire alarm and sprinkler system, and the dispatch and communications system; and

Whereas,    The Police Department Headquarters building is now prone to repeated flooding issues during significant rain events; and

Whereas,    It is in further need of various infrastructure and building integrity improvements; and

Whereas,    The Johnston Police Department deserves headquarters that support and enhance its mission and the citizens of the Town of Johnston deserve 21st century Police Department services; and

Whereas,    The Town Hall now located at 1385 Hartford Avenue was built in 1939; and

Whereas,    The Town Hall building is in need of significant rehabilitation including but not limited to the electrical system, the plumbing system, the HVAC system, the fire alarm and fire sprinkler system; and

Whereas,    There is a need to provide greater access for disabled citizens to Town Hall services; and

Whereas,    The Town Hall is critical to providing access to municipal services to citizens; and

Whereas,     The citizens of the Town of Johnston deserve a Town Hall that can provide 21st century municipal services and accessibility; and

Whereas,     Significant economic and operational efficiencies may be achieved by creating a central campus for Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

Whereas,     The administration has been reviewing sites for such a campus to provide economic and operational efficiencies and 21st century services to the citizens of the Town of Johnston; and

Whereas,     The administration has initiated a review of 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 to determine if it is an appropriate site for the location and construction of a municipal campus combining the Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

Whereas,     It has been determined after review by Police Chief Mark Vieira and Fire Chief David Iannuccilli that it is an excellent location for public safety purposes; and

Whereas,     The administration tasked DiPrete Engineering to review the property to determine if it is an appropriate site for the development of such structures; and

Whereas,     Said review has confirmed that it is an appropriate site for the development and construction of a campus for Public Safety Headquarters and a Town Hall;

Now Therefore, the Town Council for the Town of Johnston hereby resolves that the Town of Johnston should proceed with eminent domain through the exercise of condemnation as provided for in § 1-3   of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 for the public purpose of constructing a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building.


_____
Lauren A. Garzone, Vice-President
District 2

_____
Alfred T. Carnevale, Councilman
District 3


_____
Linda Folcarelli, Councilwoman
District 1

_____
Robert V. Russo, President
District 4


_____
Robert J. Civetti, Councilman
District 5


Attest:_____
Vincent P. Baccari, Jr., Town Clerk

# EXHIBIT F



**From:** O'Toole, Sarah <sotoole@conleylawri.com>
**Sent:** Tuesday, March 25, 2025 11:49 AM
**To:** Robert Thomas <RThomas@pacificlegal.org>
**Cc:** Kelley Morris Salvatore <ksalvatore@darroweverett.com>; Stacy Thomsen <sthomsen@darroweverett.com>; Austin Waisanen <AWaisanen@pacificlegal.org>; Kady Valois <KValois@pacificlegal.org>; William J. Conley <wconley@conleylawri.com>; Mario Martone <mmartone@conleylawri.com>
**Subject:** Re: 178-200 George Waterman Road | RIAG Open Government Decision OM 25-12

Hello Robert and Counsel:

My office is available at 9:30 AM (EST) tomorrow morning for a discussion about this development, please let me know if this works for you.

Sarah

On Tue, Mar 25, 2025 at 11:43 AM Robert Thomas <RThomas@pacificlegal.org> wrote:

> Counsel,
>
> Thank you for the quick notification of this. As are you, we view the demanded response as an action that reasonably could be construed by the federal district court as a violation of the PI/TRO, or at least something that comes very close to being a violation.

Two of our lawyers are offline through mid-afternoon for a hearing in a just compensation case on the other side of the country (literally – Hawaii), so we will not have the ability to focus on this or to meet with you until at least then, after which a short conference among counsel. makes a lot of sense.

What we anticipate is the safest way is that we jointly approach the federal court, inform the judge of the latest developments such as the joint no-prejudice dismissal of the state action, our agreement to convert and to take the April 17 hearing off-calendar, and of this open meeting issue. And perhaps ask for the court to hold a scheduling conference for us on the court's calendar down the road a few weeks, to give us time as the lawyers to move the litigation forward.

We think that informing the court and you asking for its blessing of your clients' response to the AG, would be the safest approach, and keep you away from even appearing to get close to the line of violation. And we'd likely be fine with not objecting, provided we were provided assurances that nothing done to respond to the AG would substantively change the status quo. But as of now, we have not yet had a chance on our side to confer, to understand what alternative or approaches that RI municipal law and the open meetings requirement might be available for your clients. Thus, we are not yet prepared to suggest any responses.

We're happy to confer with you later today, or early tomorrow if you would like to schedule something now to hold times on our respective calendars. That would give us time to understand the situation a bit more, and make any meeting more productive.

Again, we thank you for your professionalism and cooperation thus far.

**Robert H. Thomas** | Senior Attorney
Director, Property Rights Litigation
Pacific Legal Foundation
555 Capitol Mall, Ste 1290
Sacramento, California 95814
rthomas@pacificlegal.org
916.419.7111



**From:** O'Toole, Sarah <sotoole@conleylawri.com>
**Sent:** Tuesday, March 25, 2025 7:10 AM
**To:** Kelley Morris Salvatore <ksalvatore@darroweverett.com>; Stacy Thomsen <sthomsen@darroweverett.com>; Robert Thomas <RThomas@pacificlegal.org>; Austin Waisanen <AWaisanen@pacificlegal.org>; Kady Valois <KValois@pacificlegal.org>; William J. Conley <wconley@conleylawri.com>; Mario Martone <mmartone@conleylawri.com>
**Subject:** 178-200 George Waterman Road | RIAG Open Government Decision OM 25-12

Good morning:

Attached to this email please find a Rhode Island Attorney General, Open Government decision that was issued yesterday afternoon. This decision orders the town to re-notice and re-vote on the approval of Resolution 2025-10 (attached) adopted at the January 28, 2025 Town Council Special Meeting.

We are concerned that this requirement could be construed as a violation of the TRO/PI. We would like to have a conversation with you to discuss once you have had a chance to review the RIAG decision.

Thank you for your time and attention to this matter,
Sarah

--
Sarah F. O'Toole
Conley Law & Associates
123 Dyer Street, 2nd Floor
Providence, RI 02903
Office: 401-415-9835
Direct: 401-632-0070

www.conleylawri.com

****CONFIDENTIALITY NOTICE: The information contained in this electronic message, as well as the entirety of this e-mail thread, as well as in any and all files attached, is for the sole use of the individual(s) identified by myself herein as being a recipient of such information and may contain confidential and privileged information. Any unauthorized use, review, disclosure or dissemination of this communication or the information contained herein or

attached hereto is strictly prohibited. If you are not the intended recipient of this electronic message, please contact the sender immediately and delete this message. Thank you.

IMPORTANT NOTICE: Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. *Never* wire money without double-checking that the wiring instructions are correct.

--
Sarah F. O'Toole
Conley Law & Associates
123 Dyer Street, 2nd Floor
Providence, RI 02903
Office: 401-415-9835
Direct: 401-632-0070

www.conleylawri.com

****CONFIDENTIALITY NOTICE: The information contained in this electronic message, as well as the entirety of this e-mail thread, as well as in any and all files attached, is for the sole use of the individual(s) identified by myself herein as being a recipient of such information and may contain confidential and privileged information. Any unauthorized use, review, disclosure or dissemination of this communication or the information contained herein or attached hereto is strictly prohibited. If you are not the intended recipient of this electronic message, please contact the sender immediately and delete this message. Thank you.

IMPORTANT NOTICE: Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. *Never* wire money without double-checking that the wiring instructions are correct.

# EXHIBIT G



**Vincent P. Baccari, Jr., Town Clerk**
**Town of Johnston**
**1385 Hartford Avenue**
**Johnston, Rhode Island 02919**
**Tel (401) 351-6618**

**Johnston Town Council**

**Linda L Folcarelli**
**Councilwoman - District 1**

**Lauren A. Garzone**
**Vice-President**
**Councilwoman - District 2**

**Alfred T. Carnevale**
**Councilman- District 3**

**Robert V. Russo**
**President**
**Councilman - District 4**

**Robert J. Civetti**
**Councilman - District 5**

## Special Meeting

## Minutes

## April 3, 2025

The Johnston Town Council held a special meeting on **April 3rd, 2025** at the Johnston Municipal Court, 1600 Atwood Avenue, Johnston, RI 02919.

Council President Russo called the meeting to order at 5:30 P.M.

- **Roll call**

All Councilmembers were present
Also present were: William J. Conley, Jr., Esq., Vincent P. Baccari, Jr, and Donna Dumont, stenographer

- **Resolution 2025-10:** **A Resolution regarding the need for new public buildings, including a public safety complex and town hall, and the potential condemnation of Plat 37 Lot 1, aka Plat 37, Lot 193, commonly known as 178-200 George Waterman Road, for that public purpose**

Council President Russo read the resolution in its entirety

Councilman Carnevale made a motion to adopt Resolution 2025-10
The motion was seconded by Councilwoman Garzone

A brief discussion ensued regarding that this resolution authorizes the beginning of the process and that the process would be subject to complete review by the Town Council pertaining to contracts and any other required associated actions

Roll Call Vote:
District 1: Aye to adopt
District 2: Aye to adopt
District 3: Aye to adopt
District 5: Aye to adopt
District 4: Aye to adopt
Motion carried; Vote 5-0

Councilman Carnevale made a motion to adjourn the meeting
The motion was seconded by Councilwoman Garzone
Motion carried; Vote 5-0

The meeting adjourned at 5:36 P.M.

FOR DETAILED COMMENTS/STATEMENTS REGARDING ALL INFORMATION CONTAINED WITHIN, PLEASE REFER TO THE TRANSCRIPT PREPARED BY THE STENOGRAPHER

_____
Vincent P. Baccari, Jr., Town Clerk

Published by ClerkBase
©2026 by Clerkbase. No Claim to Original Government Works.

Town of Johnston

_____

## RESOLUTION OF THE TOWN COUNCIL

## No. 2025-10

In Favor:                                      Opposed:

_____

Council President                                      Date

Be it resolved that:

Whereas,    The headquarters for the Johnston Fire Department located at 1520 Atwood Avenue was built in 1968; and

Whereas,    The Johnston Fire Department headquarters is in need of significant upgrades including but not limited to the electrical system, the plumbing and HVAC system, the roof, fire sprinkler system, the dispatch and communications system, as well as other infrastructure and building integrity improvements; and

Whereas,    The Johnston Fire Department deserve headquarters that support and enhance their mission, and the citizens of the Town of Johnston deserve 21st century Fire Protection and Emergency Medical Services; and

Whereas,    The Johnston Police Department headquarters were built in 1978 at 1651 Atwood Avenue and was originally designed for 34 officers and civilians; and

Whereas,    The Police Department now has 79 officers and civilians working in the same headquarters; and

Whereas,    The Police Department Headquarters is in need of significant upgrades and improvements including but not limited to the electrical system, the plumbing system, the HVAC system, the roof, the fire alarm and sprinkler system, and the dispatch and communications system; and

Whereas,    The Police Department Headquarters building is now prone to repeated flooding issues during significant rain events; and

Whereas,    It is in further need of various infrastructure and building integrity improvements; and

Whereas,    The Johnston Police Department deserves headquarters that support and enhance its mission and the citizens of the Town of Johnston deserve 21st century Police Department services; and

Whereas,    The Town Hall now located at 1385 Hartford Avenue was built in 1939;and

Whereas,    The Town Hall building is in need of significant rehabilitation including but not limited to the electrical system, the plumbing system, the HVAC system, the fire alarm and fire sprinkler system; and

Whereas,    There is a need to provide greater access for disabled citizens to Town Hall services; and

Whereas,    The Town Hall is critical to providing access to municipal services to citizens; and

*Whereas,*    The citizens of the Town of Johnston deserve a Town Hall that can provide 21st century municipal services and accessibility; and

*Whereas,*    Significant economic and operational efficiencies may be achieved by creating a central campus for Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

*Whereas,*    The administration has been reviewing sites for such a campus to provide economic and operational efficiencies and 21st century services to the citizens of the Town of Johnston; and

*Whereas,*    The administration has initiated a review of 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 to determine if it is an appropriate site for the location and construction of a municipal campus combining the Fire Department Headquarters, Police Department Headquarters, and a Town Hall; and

*Whereas,*    It has been determined after review by Police Chief Mark Vieira and Fire Chief David Iannuccilli that it is an excellent location for public safety purposes; and

*Whereas,*    The administration tasked DiPrete Engineering to review the property to determine if it is an appropriate site for the development of such structures; and

*Whereas,*    Said review has confirmed that it is an appropriate site for the development and construction of a campus for Public Safety Headquarters and a Town Hall;

*Now Therefore,* the Town Council for the Town of Johnston hereby resolves that the Town of Johnston should proceed with eminent domain through the exercise of condemnation as provided for in § 1-3  of the Town Charter of the Town of Johnston, to take title to 178-200 George Waterman Road, Johnston, Rhode Island, Assessors Plat 37, Lot 193 for the public purpose of constructing a municipal campus consisting of a Public Safety Headquarters for the Fire and Police Departments and a Town Hall Building.

_____          _____
*Lauren A. Garzone, Vice-President*          *Alfred T. Carnevale, Councilman*
*District 2*                                  *District 3*

_____          _____
*Linda Folcarelli, Councilwoman*          *Robert V. Russo, President*
*District 1*                                  *District 4*

_____
*Robert J. Civetti, Councilman*
*District 5*

*Attest:*_____
*Vincent P. Baccari, Jr., Town Clerk*

# EXHIBIT H

https://omny.fm/shows/the-news-with-gene-valicenti/07-31-26-johnston-mayor-joseph-polisena-jr

Announcer:
The news with Rhode Island's Anchor Man, Gene Valicenti, featuring news, commentary, and analysis on WPRO, online at 630wpro.com.

Reporter:
Tonight, a federal judge ruled Johnston's attempt to take more than 30 acres on George Waterman Road through eminent domain was unlawful. The town wants the 30-acre property for a new police headquarters, fire district, and town hall on the same land where the Santoro family plans to build a 252-unit affordable housing development. Kady Valois is their attorney.

Kady Valois:
It's not that the town can't use eminent domain; it's that they can't use the charter as the provision that they're going to rely on for eminent domain.

Announcer:
Now on the Seekonk Supply Hotline.

Gene Valicenti:
All right, this has been in federal court. Johnston didn't want that complex—Mayor Polisena Jr. in fact didn't want that complex—so he said, "I'm going to take that property, and I do need a new town hall, police, and fire public safety complex. We'll put it there, eminent domain." But he got stopped, he got blocked in federal court. Now, let's see if he's going to try to go around that, or if he's got a new strategy. Mayor Polisena Jr. is on the radio with me. Good morning, Mayor.

Mayor Joseph Polisena Jr.:
Good morning, Gene.

Gene Valicenti:
Mayor, what's your take on the ruling? Do you think the judge blocked you on a technicality? Are you going to come back? Do you think you still have the upper hand here to seize that property and keep affordable housing from going up in favor of your new municipal complex?

Mayor Joseph Polisena Jr.:
Yeah, I mean, I feel good about the ruling. It would be different if the ruling came down and it said, "Listen, not only is your process incorrect, the premise on its face is incorrect." But that's not what the decision said. In fact, I think it was on the first page of the decision, the court does not question the exercise of the town's authority with eminent domain, but power and process go hand in hand.

So what happened is, I decided—and I take full responsibility, and I will explain why—that we should use a provision, a condemnation provision in our charter, to take it by eminent domain. So, the way that land is normally taken by eminent domain is there is a law called the MPBAL, it's Municipal Public Building Authority, and what that statute does is it allows all 39 cities and towns to have

a public building authority. And with that public building authority, you can take land by eminent domain.

But here's the problem: Once the local council puts in the resolution to create that municipal public building authority, it has to be ratified by a state board. It has to be ratified by the PFMB, the Public Finance Management Board. And I am a big fan of, I do not want to put my fate in anyone else's hands but my own. And with this topic being quite controversial...

Gene Valicenti:
Yep.

Mayor Joseph Polisena Jr.:
...I do not know if the PFMB would do a sign-off like they would to any other municipal public building authority.

Gene Valicenti:
Okay. We're getting a little—it's getting a little hard to follow, but let's begin at the beginning. There's a developer, he's got about 30 acres, wanted to put affordable housing in because everybody's screaming there's not enough affordable housing. In Johnston, you were screaming otherwise. Listen, you once told me you'd like to put in more high-end housing. What's wrong with that? You didn't want this, you didn't think it was right for your town. So, by eminent domain, you took the property and said, "I'll build a police and fire public safety complex over there because we need that more than we need this affordable housing." Am I following the narrative here?

Mayor Joseph Polisena Jr.:
Yeah, I mean, I had been looking for a site for a new municipal complex. There are multiple property owners that I talked to, multiple of them were deposed, so it's just one of those things where two and two came together.

Gene Valicenti:
Right. Now, you know your critics said, "Oh, you just don't want, you know, you don't want affordable housing. You don't want other people coming in from other cities and towns." Go ahead, answer them again.

Mayor Joseph Polisena Jr.:
Yeah, so my whole thing on that is, if I just wanted to stop this project, why wouldn't I propose a public park? Like, why would I propose something so extensive as a municipal complex? Especially—I mean, the municipal complex will probably be between $30 and $40 million. So again, if I just wanted to do this to stop housing construction, why would I propose something that has that price tag? We need the municipal complex. Our buildings are old. The people that live in Johnston, people that have seen the buildings know exactly what I'm talking about.

Gene Valicenti:
Yeah, you certainly need a town hall. You've got that little town hall perched on the rise in the busiest intersection in town over there. All right, Mayor, so you went to court, you went to federal court, you thought you had the law on your side.

The judge ruled against you, but go ahead. You still see another way around this. Give me the strategy here, simply, so we can follow it. The strategy is...

Mayor Joseph Polisena Jr.:
Yeah, so there are two strategies, and we're going to pursue both. And I am not going to disclose what the final one will be, because we're going to have to choose one of two.

So, number one is to go through it how I was explaining prior, with the MPBAL, create our own building authority and then have it ratified by the Public Finance Management Board. That is option one.

Option two is to put an eminent domain provision in our town charter, which has to be ratified by the voters in the upcoming election. So those are the two paths we can take. We just cannot use our current condemnation provision in the town charter.

Gene Valicenti:
Right. Have you picked one yet, or are you going to talk to the lawyers and the council and figure out which path you're going to take?

Mayor Joseph Polisena Jr.:
I like having options, so we're going forward with both, but obviously we can ultimately only choose one.

Gene Valicenti:
Right. Mayor, when you told me that there's nothing wrong with luxury housing, you still feel that way? You'd like to see more—I don't know, Toll Brothers? Little McMansions? There's nothing wrong with that?

Mayor Joseph Polisena Jr.:
It's not even luxury housing, it's single-family homes. Like, the example that I use is the 252 units, if you put an average of about two and a half people per unit, that gives 630 people in this one complex. 630 people, that is 2% of Johnston's population. And I tell people all the time, like, okay, let's talk about proportionality. Point me to a complex in Cranston that has 2% of their population, 1,600 people. Point me to a high-rise in Providence that has 2% of Providence's population within it, 3,600 people. It doesn't matter whether it's low income, middle income, high income, it's too big. I mean, that is the problem. It is massive.

Gene Valicenti:
Yeah. You know, nobody gives voice to the other side of the affordable housing story, which is that if you own a house, you made money, wealth has been created. What are you getting for a house over there in Johnston, just a basic, you know, one-level ranch? That you have so many of them, smaller houses.

Mayor Joseph Polisena Jr.:
Yeah, so we just did our statistical re-val, and I believe it went up to about—the median is about $430,000.

Gene Valicenti:
$430,000 on the median size in Johnston.

Mayor Joseph Polisena Jr.:
Yeah.

Gene Valicenti:
You know what they're getting for those triple-deckers in Central Falls? You wouldn't believe it. I didn't believe it when I saw them. $640,000, $700,000, $750,000, some of them $800,000. The ones that are packed like sardines. That's the other side of the story, isn't it?

Mayor Joseph Polisena Jr.:
Yeah, there is a housing problem, but you can't do a one-size-fits-all policy, and that's what we have. Because Johnston is below the 10%, although we're quite close, we're at like 9.25%, so we are almost there. But if you're under the 10%, you can bypass zoning, because this current land is not zoned for this density. But you use a comprehensive permit, you bypass zoning, you go right to planning, and if you follow certain rules and regs with planning, you can get it, even though normally you wouldn't be able to get it. If we were over the 10%, they could not build this over there.

Gene Valicenti:
Right. Well listen, some towns push back. This was Speaker Shekarchi, this is Governor McKee, push for the affordable housing. You were one of the towns that pushed back, you were one of the mayors. East Greenwich didn't push at all, they've got several new town complexes, affordable housing in East Greenwich. Narragansett, I believe they pushed back, and others. So, to be continued, but this fight is not over. You've got two options and you're going to be back in court at some point. Is that how we leave off?

Mayor Joseph Polisena Jr.:
Correct. Yeah, and listen, I don't want to run East Greenwich, I don't want to run Narragansett. My job is to run Johnston, my responsibility is to the people of Johnston, it's not to the greater state of Rhode Island. I am the Mayor of Johnston and I just try to act accordingly, protect the people of Johnston.

Gene Valicenti:
Great. Mayor Polisena Jr., thanks for joining me.

Mayor Joseph Polisena Jr.:
Thank you, Gene.

Gene Valicenti:
See you soon.

# EXHIBIT I

| | |
|---|---|
| **From:** | cmecf@rid.uscourts.gov |
| **To:** | cmecfnef@rid.uscourts.gov |
| **Subject:** | Activity in Case 1:25-cv-00088-MRD-PAS SCLS Realty, LLC et al v. Town of Johnston, Rhode Island et al Order |
| **Date:** | Wednesday, April 2, 2025 1:38:45 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Rhode Island

## Notice of Electronic Filing

The following transaction was entered on 4/2/2025 at 2:37 PM EDT and filed on 4/2/2025
**Case Name:**        SCLS Realty, LLC et al v. Town of Johnston, Rhode Island et al
**Case Number:**      1:25-cv-00088-MRD-PAS
**Filer:**
**Document Number:** 20

**Docket Text:**
**PRELIMINARY INJUNCTION ORDER entered. So Ordered by District Judge Melissa R. DuBose on 4/2/2025. (Urizandi, Nissheneyra)**


**1:25-cv-00088-MRD-PAS Notice has been electronically mailed to:**

Austin W. Waisanen     awaisanen@pacificlegal.org

Kathryn Daly Valois     kvalois@pacificlegal.org

Kelley Morris Salvatore     ksalvatore@darroweverett.com, IncomingLit@pacificlegal.org, jpineda@darroweverett.com, PPuccio@pacificlegal.org

Mario M. Martone     mmartone@providenceri.gov

Robert H. Thomas     rthomas@pacificlegal.org

Sarah F. O'Toole     sotoole@conleylawri.com

Stacy Wisner Thomsen     sthomsen@darroweverett.com, gscott@darroweverett.com

William J. Conley , Jr     wconley@wjclaw.com

**1:25-cv-00088-MRD-PAS Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096917572 [Date=4/2/2025] [FileNumber=2047639-0]
[08a320d10479cc65ccf72c374953cb13d3d9d188d5aa8f97a40a9b12eb1f06604556
a7574eb726cd0f47852ed4e44be2d9fc63911440a731910ad378a5da074d]]

# EXHIBIT J

# Johnston blocked from taking developer's land by eminent domain - for now. What comes next?

🌐 **providencejournal.com**/story/news/politics/2025/04/03/johnston-eminent-domain-taking-of-affordable-housing-land-stopped-for-now/82791904007

Wheeler Cowperthwaite



## Town council to vote again after AG finds open meetings act violation

Updated April 3, 2025, 12:37 p.m. ET

- The town agreed to convert a temporary restraining order into a more permanent preliminary injunction
- A vote is set on April 3 to approve a resolution for the land taking again
- The last time the town voted, the agenda wasn't specific enough, the AG ruled

JOHNSTON – The Town of Johnston and the owners of 30 acres on George Waterman Road that the town is trying to seize through eminent domain have agreed to convert a temporary restraining order into a longer-lasting preliminary injunction while a federal lawsuit winds its way through the system.

1/4

The preliminary injunction will be in place "until further order of the court."

Johnston moved to seize the land after the owners proposed building an income-restricted apartment complex on it.

The restraining order prevents town officials from "taking any action" related to the three resolutions passed to take the 30 acres of land or to take any steps to seize the land.

Last week, a case filed in state court over the eminent domain was dropped, leaving just the federal case.

The restraining order came after the town's attorney, William Conley, petitioned a state judge on March 12 without notifying the property owners. After the judge granted his motion, he followed up with a letter demanding they vacate the property within seven days, even less time than a renter being evicted from a property would have. That was the first time he notified them of the taking.



Around the same time, Mayor Joseph Polisena Jr. posted about the move on social media, writing, "At 10:40 a.m. today, through a petition in Providence Superior Court, the Town of Johnston officially acquired ownership of the property at 178-200 George Waterman Road by eminent domain."

## Despite order, council to vote again on resolutions after violating Open Meetings Act

Despite the court order, the Town Council scheduled a April 3 meeting to revote on one of the three resolutions, pertaining to the need for a new police station, fire station and town hall and the potential condemnation of the George Waterman Road land for that purpose.

The Town Council needs to vote again on the resolution after resident Gerry Willis and independent journalist Steve Ahlquist filed separate Open Meetings Act complaints with the attorney general's office. The attorney general ruled that the town had violated the Open Meetings Act because the agenda didn't properly state what the meeting was about: taking the 30 acres of land, slated for an income-restricted housing development, to instead build a town complex.

## The income-restricted housing project

The property owners want to build a 252-unit income-restricted apartment complex aimed at young professionals, with each apartment having no more than two bedrooms. The units would be restricted to people making 80% of the area median income.

As it stands, 7.9% of Johnston homes qualify as "affordable," giving Waterman Chenango LLC the option of applying for a streamlined "comprehensive permit" instead of the typical Johnston planning and permitting process. If built, it's estimated that the project would take Johnston over the 10% threshold.

## The lawsuit

The lawsuit complaint alleges that the town is trying to conduct a "sham taking" of the property to stop the owners from building the income-restricted housing complex.

According to the lawsuit, Polisena's push to take the property by eminent domain, after multiple public declarations that he would "use all the power of government that I have to stop it," is purely a pretext to stop the project and therefore violates the constitutional rights of the property owners.

The lawsuit is being brought to "vindicate the family's constitutional and civil rights, threatened by an outrageous abuse of government powers − a sham taking − by the Town of Johnston."

They are being represented by a local attorney, Kelley Morris Salvatore, and the Pacific Legal Foundation based in Sacramento, California. Salvatore has been the attorney on the project since long before eminent domain was proposed.

3/4

Read more about the lawsuit against Johnston in this story.

*hanks to our subscribers, who help make this coverage possible. If you are not a subscriber, please consider supporting quality local journalism with a Providence Journal subscription. **Here's our latest offer***.

*Follow Wheeler Cowperthwaite on X, @WheelerReporter, or reach him by email at wcowperthwaite@providencejournal.com.*

# EXHIBIT K

Published on *The National Law Review* https://natlawreview.com

# A Rhode Island Town Seized 31 Acres by Eminent Domain Without Telling the Owners— Their Recent Lawsuit Claims It's an Unconstitutional "Sham Taking"

Published: May 29, 2025

Article By:
Liam E. Cronan

A family of developers learned that the town of Johnston, Rhode Island, had seized 31 acres of their land through a social media post. They now claim the takeover was a sham designed to block much-needed affordable housing, in a case that could test the limits of eminent domain.

The owners had planned to develop the land into a 255-unit affordable housing project under Rhode Island's Low and Moderate Income Housing Act. But after a contentious town meeting last December, Johnston Mayor Joseph Polisena, Jr., vowed to stop the project, calling it "destructive." In January, he announced plans to seize the land by eminent domain and build a town hall complex on the site. The next day, the town council unanimously approved the seizure.

It wasn't until mid-March that the owners learned Mayor Polisena had followed through with his plan. That's when the town's attorney filed a petition in Rhode Island Superior Court to take title to the property—apparently without notifying the owners. Two days later, the attorney sent a letter demanding they vacate and threatening a no-trespass order. But by then, the owners had already heard about the taking, which Polisena announced on social media. They promptly filed suit.

Federal law gives municipalities like Johnston broad powers to seize land, but that power is not unlimited. Eminent domain applies only if property is taken for "public use." Since the Supreme Court's highly debated *Kelo* decision, however, "public use" has been broadly defined to include any seizure that benefits the public welfare. In response, many states passed limits on the meaning of public use and the evidence required to justify a taking. Rhode Island is among them.

Rhode Island law currently limits the scope of "public use" takings for economic development through the Home and Business Protection Act. At least 46 other states have similar laws that restrict municipalities' power to take property without just cause. And as a matter of practice, eminent domain is often a town's last resort. But, the owners' request for relief claims the town is "doing this in reverse" and "even now has not complied" with the Rhode Island statute.

In late March, the U.S. District Court for the District of Rhode Island issued a temporary restraining order against the town, prohibiting it from acting on the land while the owners' request for a preliminary injunction was pending. In their filings, the owners accused Johnston of constitutional and statutory violations, claiming that the seizure amounts to a "sham taking."

The owners' lawsuit comes as part of a larger fight over affordable housing in New England and beyond. According to the complaint, Polisena's plans for a new municipal complex are merely a

pretext to block "desperately needed affordable homes." In Rhode Island alone, the median home price is nearly $500,000, leading Gov. Dan McKee in 2024 to declare a "housing crisis."

Currently, only the owners' federal case is pending, as they voluntarily dismissed their case in Superior Court. In April 2025, the District of Rhode Island granted a preliminary injunction, which will remain until the parties resolve the case or the town decides not to pursue the taking.

Copyright ©2026 The National Law Forum. LLC

National Law Review, Volume XV, Number 149

Source URL: https://natlawreview.com/article/rhode-island-town-seized-31-acres-eminent-domain-without-telling-owners-their

# EXHIBIT L

## Karmen Bushman

**From:** Kady Valois
**Sent:** Saturday, August 1, 2026 1:55 PM
**To:** William J. Conley, Jr.; O'Toole, Sarah; Mario Martone
**Cc:** Robert Thomas; Kelley Morris Salvatore; Stacy Thomsen; Austin Waisanen; Karmen Bushman
**Subject:** SCLS Realty  v. Town of Johnston, 7.31.26 Meeting
**Attachments:** SCLS Realty v. Town of Johnston 8.1.26 Letter.pdf

Counsel:

Attached please find correspondence regarding the above noted matter.

Sincerely,

**Kady Valois** | Attorney
Pacific Legal Foundation
4440 PGA Blvd, Suite 307 | Palm Beach Gardens, FL 33410
561.691.5000 | Office




**PACIFIC LEGAL FOUNDATION**

August 1, 2026

William J. Conley, Jr., Esq.
Sarah F. O'Toole, Esq.
Mario Martone, Esq.
Conley Law & Associates
123 Dyer Street
2nd & 3rd Floors
Providence, RI 02903

Re: *SCLS Realty, LLC, et al. v. Town of Johnston, et al.*, No. 1:25-cv-00088-MRD-PAS

Dear Counsel:

It has come to our attention that on July 31, 2026, the Johnston Town Council conducted a special meeting at which it considered and adopted Resolution 2026-25 and Resolution 2026-26, both of which are in furtherance of the Town's continuing plans to take the Santoro Family's property. *See* attached.

Resolution 2026-25 is to authorize "the submission of the following question to be placed on the ballot at the General Election to be held on November 3, 2026; Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?" Similarly, Resolution 2026-26 authorizes "the creation of a Municipal Public Building Authority for the Town of Johnston[.]"

According to the Mayor's public statements, these two resolutions were adopted in response to the Court's Memorandum and Order (July 28, 2026) in furtherance of the Town's continuing plans to take the Santoro property by eminent domain. As the Mayor stated, "the Town will continue its pursuit of a much needed municipal complex on the land . . . in one of two ways referenced by the court . . . [e]ither using the [Municipal Public Building Authority Law] or amending the charter consistent with the court's guidance."

We ask that you immediately confirm whether these resolutions were considered and adopted by the Council at the July 31, 2026, special meeting, or otherwise.

If this occurred, as it appears to have, we would also appreciate your understanding of whether these actions conformed to the Court's April 2, 2025, preliminary injunction which remains in effect. As you and your clients are well-aware, in that Order the Court restrained your clients from, *inter alia*, "undertak[ing] any . . . actions to condemn or use the power of eminent domain to seize the Plaintiff's

William J. Conley, Jr., Esq.
Sarah F. O'Toole, Esq.
Mario Martone, Esq.
Page 2

property . . . including but not limited to . . . [t]aking any action to prevent or otherwise interfere with the Santoro Family entering, using, and occupying the Santoro Property, or taking any action which is inconsistent with the Santoro Family's rights as the lawful owners of the Santoro Property; and . . . [t]aking any action to enter, use, occupy, transfer, convey, encumber, or trespass upon the Santoro Property; and taking any action inconsistent with or in contravention of the Santoro Family's rights as the lawful owners of the Santoro Property; and . . . [t]aking any action to further alter, substitute, amend, change, or otherwise affect the registered or title ownership of the subject property from the Santoro Family, or taking any action in contravention of or inconsistent with the Santoro Family's rights as the lawful title owners and owners of record; and . . . [u]ndertaking any other action that alters the status quo as of the date and time this Court enters this Preliminary Injunction, until further order of this Court. . . . This Preliminary Injunction shall remain in full force and affect until further order of this Court." *See* Order Converting Temporary Restraining Order to Preliminary Injunction (Apr. 2, 2025) (a copy of which is attached for your convenience).

We would appreciate an explanation of your clients' understanding **not later than close of business on Monday, August 3, 2026**. If we do not receive a response by this time, we are prepared to take all appropriate steps and enforce all available remedies.

Very truly yours,

Kathryn Valois

encl.:

Res. 2026-25
Res. 2026-26
Order Converting Temporary Restraining Order to Preliminary Injunction, *SCLS Realty, LLC, et al., v. Town of Johnston, et al.*, No. 1:25-cv-00088-MRD-PAS (Apr. 2, 2025)

cc: Kelley Morris Salvatore, Esq.
    Stacy W. Thomsen, Esq.

# RESOLUTION OF THE TOWN COUNCIL

## No. 2026-25

RESOLUTION OF THE TOWN COUNCIL OF THE TOWN OF JOHNSTON

AUTHORIZING LOCAL QUESTION FOR THE NOVEMBER 3, 2026 GENERAL ELECTION

RELATING TO REVISIONS OF THE JOHNSTON TOWN CHARTER

In Favor:                                    Opposed:

_____
Council President                        Date

BE IT RESOLVED: The Town Council of the Town of Johnston, Rhode Island, does hereby authorize the submission of the following question to be placed on the ballot at the General Election to be held on November 3, 2026:

1. "Shall Section 1-3 of the Johnston Town Charter be amended to identify a fund, establish a pledge of credit, and establish an enforcement mechanism for the exercise of its condemnation authority?"

   **If approved, Section 1-3 of the Johnston Town Charter would be amended as follows:**

   "The town shall have all the powers granted to towns by the Home Rule Amendment and other provisions of the constitution, general laws of this state and special acts applicable to the town together with all such additional powers as hereafter may be granted to the towns by the laws of the state, together with all powers implied in or incident to the powers expressly granted. The town shall have power to sue and be sued, to enact ordinances and pass resolutions, and to make rules and regulations necessary and proper for carrying into execution its powers, and such ordinances may be made enforceable by the imposition of fines, forfeitures and penalties. The town may enter into contracts with the state or any political subdivision thereof for services and the use of facilities. The town may acquire property within or without its corporate limits for town purposes, in fee simple or any lesser interest or estate, by purchase, lease, gift, devise or condemnation within the town for public use, and may hold, manage and control, and may sell, lease, and convey such property as its interests may require.

   Upon the town's exercise of its power of condemnation pursuant to a resolution or ordinance of the Town Council and upon the recording within the Land Evidence Records of a statement of taking, the town shall make payment of just compensation to the property owners or persons entitled to any estate in or interest in any part of the land. The town shall forthwith file a petition for the deposit of the funds for just compensation within the Superior Court. The funds must be set aside and obligated by the town at the time of the taking for the benefit of the property owners or persons entitled to any estate in or interest in any part of the land, and payment of just compensation is obligatory pursuant to the R.I. Constitution Art. I, § 16.

pursuant to the Rhode Island Superior Court Rules of Civil Procedure. Any owners or persons entitled to any estate or interest in, or any part of the land, so taken, who cannot agree with the town for the price of the land, or interest therein, so taken in which he or she is interested as aforesaid, may, within one (1) year after personal notice of the taking, or, if he or she have no personal notice, may within two (2) years from the first publication of the copy of the resolution and statement of taking, apply by petition to the superior court in and for the county in which the land, or interest therein, lies, setting forth the taking of his or her land or interest therein, and praying for an assessment of damages by a jury. Execution may enter against the town if just compensation is not made pursuant to the assessment of damages. The town is authorized to enact additional procedural requirements by resolution or ordinance to effectuate the delegated condemnation powers contained herein.

Except as prohibited by the constitution of this state or by laws enacted by the general assembly in conformity with powers reserved to the general assembly by the constitution of this state or as restricted by this Charter, the town shall have and may exercise all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever. The enumeration of particular powers by this Charter shall not be deemed to be exclusive, and in addition to the powers enumerated herein or implied hereby, or appropriate to the exercise of such powers, it is intended that the town shall have and may exercise all powers which, under the constitution of this state, it would be competent for this Charter specifically to enumerate. All powers of the town shall be exercised in the manner prescribed by this Charter and by state law, or if the manner is not prescribed, then in such manner as may be prescribed by ordinance."

*Resolution 2026-25 shall become effective immediately upon the date of its passage*

_____
*Lauren A. Garzone, Vice-President*
*District 2*

_____
*Alfred T. Carnevale, Councilman*
*District 3*

_____
*Linda Folcarelli, Councilwoman*
*District 1*

_____
*Robert V. Russo, President*
*District 4*

_____
*Robert J. Civetti, Councilman*
*District 5*

*Attest:_____*
*Vincent P. Baccari, Jr., Town Clerk*

# RESOLUTION OF THE TOWN COUNCIL

## No. 2026-26

In Favor:                                    Opposed:

_____
Council President                          Date

Be it resolved that:

Whereas,    R. I. Gen. Laws § 45-50-1 et seq. authorizes municipalities to create a public building authority for purposes of maintaining and repairing town-owned assets, and for the construction of new facilities through alternative financing techniques.; and;

Whereas,    the Town of Johnston has a need for a public building authority to manage the maintenance and repairs of town assets, and to construct new facilities using alternative financing techniques; and;

Whereas,    the Town of Johnston has an annual operating budget in excess of thirty-nine million dollars ($39,000,000.00);

Now, therefore, be it resolved that we, the members of the Johnston Town Council hereby:

1. Create a Municipal Public Building Authority for the Town of Johnston;

2. Authorize Mayor Joseph M. Polisena, Jr. to appoint five (5) members to serve on the Johnston Municipal Public Buildings Authority;

3. To authorize the five (5) members appointed to create by-laws for the Johnston Municipal Public Building Authority; and

4. Refer this Resolution to the State of Rhode Island's Public Finance Management Board for review and approval.

Resolution 2026-26 shall become effective immediately upon the date of its passage

_____          _____
Lauren A. Garzone, Vice-President           Alfred T. Carnevale, Councilman
District 2                                  District 3

_____          _____
Linda Folcarelli, Councilwoman              Robert V. Russo, President
District 1                                  District 4

_____
Robert J. Civetti, Councilman
District 5

Attest:_____
Vincent P. Baccari, Jr., Town Clerk

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCLS REALTY, LLC; SIXTY THREE JOHNSTON, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as Members of the Town Council of the Town of Johnston; and VINCENT P. BACCARI, JR., in his official capacity as Town Clerk of the Town of Johnston,<br><br>    Defendants. | **No. 1:25-cv-00088-MRD-PAS** |

## ORDER CONVERTING TEMPORARY RESTRAINING ORDER
## TO PRELIMINARY INJUNCTION

On March 19, 2025, this Court granted Plaintiffs SCLS Realty, LLC, and Sixty Three Johnston, LLC (jointly, "Santoro Family"), motion for a temporary restraining order ("TRO"). ECF No. 14.

The parties, by and through their respective counsel, have agreed to request that the Court convert the existing TRO into a Preliminary Injunction, effective immediately, and to remain in full force and effect until further order of the Court.

**ACCORDINGLY, this Court hereby CONVERTS the TRO issued on March 19, 2025, into a Preliminary Injunction, and ORDERS as follows:**

A Preliminary Injunction is entered in this case until further order of this Court. The Court hereby ORDERS the following persons bound by this, who shall receive actual notice of the Preliminary Injunction by personal service: Defendants TOWN OF JOHNSTON, RHODE ISLAND; JOSEPH M. POLISENA, JR., in his official capacity as Mayor of the Town of Johnston; LINDA L. FOLCARELLI, LAUREN GARZONE, ALFRED T. CARNEVALE, ROBERT V. RUSSO, ROBERT J. CIVETTI, in their official capacities as members of the Johnston Town Council, VINCENT P. BACCARI, Jr., in his official capacity as the Town Clerk for the Town of Johnston, and their officers, agents servants, employees, and attorneys, and other persons who are in active concert or participation with the Defendants.

The Court orders such persons to be restrained from taking any action to implement, carry out, enable, execute, or perform under the purported authority of Resolution 2025-10, Resolution 2025-17, Resolution 2025-18, or to undertake any other actions to condemn or use the power of eminent domain to seize the Plaintiff's property located at 178 and 200 George Waterman Road, Johnston, Rhode Island, also known as Assessor's Plat 37, Lots 63, 193 (formerly recognized as Lots 1-10, and 193) and Assessor's Plat 35, Lot 2 (together "Santoro Property"), including but not limited to:

1.     Taking any action to prevent or otherwise interfere with the Santoro Family entering, using, and occupying the Santoro Property, or taking any action

2

which is inconsistent with the Santoro Family's rights as the lawful owners of the Santoro Property; and

2.      Taking any action to enter, use, occupy, transfer, convey, encumber, or trespass upon the Santoro Property; and taking any action inconsistent with or in contravention of the Santoro Family's rights as the lawful owners of the Santoro Property; and

3.      Taking any action to further alter, substitute, amend, change, or otherwise affect the registered or title ownership of the subject property from the Santoro Family, or taking any action in contravention of or inconsistent with the Santoro Family's rights as the lawful title owners and owners of record; and

4.      Undertaking any other action that alters the status quo as of the date and time this Court enters this Preliminary Injunction, until further order of this Court.

This Preliminary Injunction shall remain in full force and affect until further order of the Court.

IT IS SO ORDERED.


_____          _4/2/2025_____
Hon. Melissa A. DuBose                  DATE
United States District Judge

3